1               UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                 SAN JOSE DIVISION

4

5

6  IN RE EX PARTE APPLICATION OF   )  16-MC-80002 PSG
    QUALCOMM INCORPORATED,        )  AND RELATED CASES
                           )

7             APPLICANT,    )  SAN JOSE, CALIFORNIA
                           )

8                         )  FEBRUARY 9, 2016
                           )

9  _____  )  PAGES 1-93

10

11              TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE PAUL S. GREWAL
           UNITED STATES MAGISTRATE JUDGE

12

13

14  A P P E A R A N C E S:

15  FOR APPLICANT        CRAVATH, SWAINE & MOORE
    QUALCOMM:           BY:  GARY A. BORNSTEIN

16                      BRENT BYARS
                   825 EIGHTH AVENUE

17                   NEW YORK, NEW YORK  10019

18                   MORGAN, FRANICH, FREDKIN
                   SIAMAS & KAYS

19                   BY:  DAVID A. KAYS
                   333 WEST SAN CARLOS STREET, SUITE 1050

20                   SAN JOSE, CALIFORNIA  95110

21          APPEARANCES CONTINUED ON NEXT PAGE

22

23  OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                        CERTIFICATE NUMBER 9595

24

25     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
        TRANSCRIPT PRODUCED WITH COMPUTER

APPEARANCES (CONTINUED)

| | |
|---|---|
| FOR APPLE AND MEDIATEK: | WILMER, CUTLER, PICKERING, HALE & DORR<br>BY:  MARK D. SELWYN<br>950 PAGE MILL ROAD<br>PALO ALTO, CALIFORNIA  94304<br><br>BY:  JOSEPH J. MUELLER<br>60 STATE STREET<br>BOSTON, MASSACHUSETTS  02109 |
| FOR SAMSUNG: | O'MELVENY & MYERS<br>BY:  IAN SIMMONS<br>     BENJAMIN J. HENDRICKS<br>1625 EYE STREET, NW<br>WASHINGTON, D.C.  20006 |
| FOR INTEL: | WILLIAMS & CONNOLLY<br>BY:  KEVIN HARDY<br>725 TWELFTH STREET, NN<br>WASHINGTON, D.C.  20005 |
| FOR TEXAS INSTRUMENTS: | BOIES, SCHILLER & FLEXNER<br>BY:  STEVEN C. HOLTZMAN<br>1999 HARRISON STREET, SUITE 900<br>OAKLAND, CALIFORNIA  94612 |

```
1    SAN JOSE, CALIFORNIA                    FEBRUARY 9, 2016

2                    P R O C E E D I N G S

3        (COURT CONVENED AT 2:23 P.M.)

4            THE COURT:  MR. RIVERA, WOULD YOU PLEASE CALL THE

5    MATTER THAT'S BEEN SPECIALLY SET.

6            THE CLERK:  YES, YOUR HONOR.

7        CALLING IN RE: EX PARTE APPLICATION OF QUALCOMM

8    INCORPORATED, CASE NUMBER 16-MC-80002 PSG, AND RELATED CASES.

9        COUNSEL, PLEASE STATE YOUR APPEARANCES.

10           THE COURT:  WHERE TO BEGIN?  WHY DON'T I START OVER

11   HERE?

12           MR. BORNSTEIN:  GOOD AFTERNOON, YOUR HONOR.

13   GARY BORNSTEIN FOR APPLICANT QUALCOMM.

14           THE COURT:  WELCOME.

15           MR. BYARS:  GOOD MORNING, YOUR HONOR.  BRENT BYARS

16   FOR APPLICANT QUALCOMM.

17           MR. KAYS:  DAVID KAYS FOR APPLICANT QUALCOMM.

18           THE COURT:  GOOD AFTERNOON TO EACH OF YOU.

19           MR. SELWYN:  GOOD AFTERNOON, YOUR HONOR.

20   MARK SELWYN, AND WITH ME IS MY PARTNER, JOSEPH MUELLER, ON

21   BEHALF OF APPLE AND MEDIATEK.

22           THE COURT:  GOOD AFTERNOON.

23           MR. MUELLER:  GOOD AFTERNOON, YOUR HONOR.

24           MR. SIMMONS:  GOOD AFTERNOON, YOUR HONOR.

25   IAN SIMMONS, O'MELVENY & MYERS, FOR SAMSUNG ELECTRONICS
```

1    CORPORATION, SAMSUNG ELECTRONICS OF AMERICA AND S.T.A., AND

2    WITH ME IS MY COLLEAGUE, BEN HENDRICKS.

3            THE COURT:  GOOD AFTERNOON TO EACH OF YOU.  WELCOME.

4            MR. HARDY:  KEVIN HARDY, YOUR HONOR, ON BEHALF OF

5    INTEL.

6            THE COURT:  MR. HARDY.

7            MR. HOLTZMAN:  STEVE HOLTZMAN, BOIES, SCHILLER &

8    FLEXNER, FOR TEXAS INSTRUMENTS, INCORPORATED.

9            THE COURT:  MR. HOLTZMAN, GOOD AFTERNOON AND WELCOME

10   TO YOU AS WELL.

11       WELL, I THOUGHT I WOULD JUST BEGIN BY SHARING A COUPLE

12   THOUGHTS.  ONE THOUGHT, PERHAPS LESS RELEVANT TO THE RESOLUTION

13   OF THE APPLICATIONS THAT ARE BEFORE THE COURT, IS THAT I CANNOT

14   HELP BUT OBSERVE THAT IN THIS COURTROOM ARE MANY PARTIES THAT

15   HAVE BEEN GOING AT EACH OTHER LIKE CATS AND DOGS FOR YEARS, AND

16   IT BRINGS A CERTAIN SMILE TO MY FACE TO SEE THAT WILE E. COYOTE

17   AND THE ROAD RUNNER CAN SIT DOWN AND GO FOR A JOG TOGETHER

18   AROUND THE DESERT.

19       (LAUGHTER.)

20           THE COURT:  SO WITH THAT, WHY DON'T WE TURN PERHAPS

21    TO SOME MORE SERIOUS ISSUES.

22       I'M HAPPY AND EAGER TO SPEND WHATEVER TIME THAT'S REQUIRED

23   TO GIVE YOU ALL A FAIR HEARING, BUT IT OCCURS TO ME THAT WITH

24   THE NUMBER OF PARTIES HERE, WE COULD BE HERE ALL NIGHT.

25           HAVE YOU ALL HAD A CHANCE -- I'LL START WITH THE

1    DEFENDANTS, OBVIOUSLY, SINCE THIS IS MOST RELEVANT TO YOU -- TO

2    TALK ABOUT HOW YOU WANT TO STRUCTURE YOUR ARGUMENTS OR SEQUENCE

3    THEM THIS AFTERNOON?

4         MR. SELWYN:  YOUR HONOR, THE OPPOSING PARTIES HAVE

5    DISCUSSED THIS AND THERE ARE A NUMBER OF COMMON ARGUMENTS, AND

6    WITH THE COURT'S PERMISSION, I'LL BEGIN BY ADDRESSING THE

7    COMMON ARGUMENTS ON BEHALF OF THE OPPOSING PARTIES, WHICH

8    ADDRESS THE INTEL FACTORS; THEN, WITH THE COURT'S PERMISSION,

9    THERE ARE SOME SPECIFIC ARGUMENTS THAT PARTICULAR OPPOSING

10   PARTIES WOULD LIKE TO MAKE.

11        THE COURT:  THAT STRIKES ME AS ENTIRELY REASONABLE.

12        WELL, BEFORE WE GET TO THE ARGUMENTS FROM THE DEFENDANTS,

13   WHY DON'T I START WITH THE PARTY THAT KICKED ALL THIS OFF,

14   WHICH IS QUALCOMM.

15        MR. BORNSTEIN, YOU MAY PROCEED WITH YOUR ARGUMENT.

16        MR. BORNSTEIN:  THANK YOU, YOUR HONOR.

17        WOULD YOUR HONOR PREFER THAT I COME TO THE PODIUM?

18        THE COURT:  IF YOU WOULD.  I THINK IT WOULD MAKE IT

19   EASIER FOR OUR COURT REPORTER.

20        MR. BORNSTEIN:  SO THANK YOU FOR HEARING US, YOUR

21   HONOR.

22        THE COURT:  HAPPY TO HAVE YOU.

23        MR. BORNSTEIN:  I THOUGHT IT WOULD BE -- I'M SURE

24   YOUR HONOR IS FAMILIAR WITH THE PAPERS AND HAS GOTTEN UP TO

25   SPEED.

 1          THE COURT:  YOU ALL HAVE GIVEN ME PLENTY TO STUDY.  I

 2    CAN ASSURE YOU I'VE READ EVERY WORD, AND AS YOU ALL I THINK

 3    HIGHLIGHTED IN YOUR PAPERS, I HAVE SOME FAMILIARITY WITH THE

 4    APPLICATION OF SECTION 1782.

 5          SO WITH THAT AS BACKGROUND, PERHAPS YOU MIGHT FOCUS ON

 6    WHAT YOU THINK I REALLY NEED TO BETTER UNDERSTAND IN ORDER TO

 7    RESOLVE THIS.

 8          MR. BORNSTEIN:  THAT WAS MY INTENT, AND I APPRECIATE

 9    THE DILIGENCE THAT THE COURT HAS SPENT GETTING READY FOR TODAY.

10          THE COURT:  SURE.

11          MR. BORNSTEIN:  WHAT I THOUGHT MIGHT BE USEFUL TO

12    YOUR HONOR IS A LITTLE BIT OF CONTEXT ABOUT WHY IT IS THAT

13    WE'RE ALL HERE FOR THIS DISPUTE.

14          AND IT -- THE PLACE WHERE IT REALLY BEGINS IS THE

15    INVESTIGATION THAT'S HAPPENING IN KOREA, WHICH HAS BEEN

16    HAPPENING FOR QUITE SOME TIME, WHERE THE EXAMINER, WHO IS THE

17    PART OF THE KFTC RESPONSIBLE FOR DOING THE INVESTIGATION,

18    TOGETHER WITH THE EXAMINER'S CASE TEAM, HAS BEEN GETTING

19    DOCUMENTS FROM QUALCOMM, HAS BEEN GETTING DOCUMENTS FROM

20    OTHERS.

21          THE COURT:  MAY I ASK, MR. BORNSTEIN, WHEN DID ALL OF

22    THIS KICK OFF AND GET STARTED IN EARNEST, AT LEAST FROM

23    QUALCOMM'S PERSPECTIVE?

24          MR. BORNSTEIN:  THE OFFICIAL NOTIFICATION OF THE

25    INVESTIGATION WAS IN MARCH OF 2015, AND THERE WERE PROCEEDINGS

1    THAT BEGAN BEFORE THAT, BEFORE IT WAS AN OFFICIAL

2    NOTIFICATION -- THE OFFICIAL NOTIFICATION OF THE INVESTIGATION

3    CAME DOWN.

4              THE COURT:  SO IS IT FAIR FOR ME TO UNDERSTAND THEN,

5    AT LEAST AT SOME POINT IN TIME, AT SOME POINT IN TIME BEFORE

6    THE OFFICIAL NOTICE OF INVESTIGATION WAS ISSUED, QUALCOMM WAS

7    IN SOME KIND OF COMMUNICATION OR CONTACT WITH THE OFFICIALS AT

8    THE KFTC?

9              MR. BORNSTEIN:  THAT'S CORRECT.

10             THE COURT:  OKAY.  GO AHEAD.

11             MR. BORNSTEIN:  YES.  AND SO IT'S BEEN QUITE SOME

12   TIME THAT THIS HAS BEEN GOING ON WHERE THE INVESTIGATORS, UNDER

13   THE EXAMINER, HAVE BEEN DOING THEIR JOB AND COLLECTING THE

14   MATERIALS THAT THEY'VE BEEN COLLECTING.

15        AND THAT PROCESS CULMINATES WITH THE ISSUANCE OF THEIR

16   REPORT ON THE MATTER, WHICH IS THE EXAMINER'S REPORT.  AT SOME

17   POINT DURING THE ARGUMENT, I MAY SLIP INTO CALLING IT THE E.R.,

18   WHICH IS HOW WE'VE ABBREVIATED IT INTERNALLY.  I'M QUITE SURE

19   I'LL MAKE THAT MISTAKE, SO YOUR HONOR WILL KNOW WHAT I'M

20   TALKING ABOUT.

21             THE COURT:  I UNDERSTAND WHAT YOU'RE REFERRING TO.

22   GO AHEAD.

23             MR. BORNSTEIN:  THE E.R. IS JUST A RECOMMENDATION.

24   IT DOESN'T ACTUALLY HAVE ANY BINDING FORCE.  QUALCOMM DOESN'T

25   HAVE TO CHANGE ITS BEHAVIOR AT THIS POINT IN TIME.  THERE'S NO

1    FINE PAYABLE AT THIS POINT IN TIME.

2        IT'S THE CONCLUSION OF THE INVESTIGATION TEAM THAT THEN

3    GETS SUBMITTED TO THE DECISION MAKERS, TO THE COMMITTEE.

4        THE COURT:  MAY I JUST ASK, FOR MY OWN EDUCATION IF

5    NOTHING ELSE, IN A SITUATION LIKE THIS WHEN, AS FAR AS YOU

6    KNOW, IF THE CONCLUSION OF THE EXAMINING TEAM, AND OF THE

7    EXAMINER HIMSELF, IS THAT NO VIOLATION COULD BE SUBSTANTIATED,

8    OR OUGHT TO BE PURSUED, IS IT -- IN THAT INSTANCE, IS A REPORT

9    SIMILARLY PREPARED?

10       OR IS THE FACT OF THE REPORT ITSELF LIKE WHAT WE SEE IN

11   THIS COURTROOM ALL THE TIME, AN INFORMATION AND/OR INDICTMENT?

12       MR. BORNSTEIN:  MY UNDERSTANDING IS THAT IT'S THE

13   LATTER.

14       THE COURT:  OKAY.

15       MR. BORNSTEIN:  THAT THERE'S NOT A, A FORMAL

16   EXAMINER'S REPORT THAT'S ULTIMATELY ISSUED IF THE CASE IS --

17       THE COURT:  YOU'RE NEVER GOING TO GET A REPORT FROM

18   THE EXAMINER THAT SAYS HOW WONDERFUL QUALCOMM IS AND HOW

19   COMPLIANT IT IS WITH ALL OF ITS COMPETITION LAW REQUIREMENTS,

20   RIGHT?

21       MR. BORNSTEIN:  I THINK THAT'S A SAFE ASSUMPTION.

22       THE COURT:  OKAY.

23       MR. BORNSTEIN:  NOT BECAUSE OF THE MERITS OF WHAT THE

24   CONDUCT AT ISSUE IS, JUST BECAUSE THAT'S NOT THE PROCEDURE.

25       THE COURT:  AND, FRANKLY, NOT ALL THAT DIFFERENT FROM

1    WHAT HAPPENS IN AMERICAN COURTS ALL THE TIME.

2         GO AHEAD.

3              MR. BORNSTEIN:  CORRECT.

4         SO THE -- WHEN THE EXAMINER'S REPORT GETS ISSUED, IT

5    TRIGGERS WHAT'S A NEW PHASE IN THE KOREAN PROCEDURE, WHICH IS

6    REFERRED TO AS THE HEARING, THE HEARING PHASE.

7         IF YOUR HONOR HAS SPENT ANY TIME LOOKING AT THE CASE

8    HANDLING PROCEDURES THAT THE PARTIES HAVE SUBMITTED, AT LEAST

9    WE ALL AGREE ON THE TRANSLATION, BUT ONE QUIRK OF THE

10   TRANSLATION, JUST I THOUGHT I WOULD POINT OUT TO THE COURT, IS

11   FOR REASONS I DON'T UNDERSTAND, THEY REFER TO IT AS THE

12   DELIBERATION PREPARATION PROCEEDINGS INSTEAD OF WHAT WE'VE ALL

13   BEEN CALLING THE HEARING.

14              THE COURT:  OKAY.

15              MR. BORNSTEIN:  IT'S A TERMINOLOGICAL CONFUSION.

16              THE COURT:  OKAY.

17              MR. BORNSTEIN:  THE HEARING PHASE IS BEFORE A WHOLE

18   NEW BODY, IT'S THE COMMISSIONERS, OR OFTEN CALLED THE

19   COMMITTEE, AND IT'S -- IT'S SORT OF LIKE THIS COURTROOM, TO

20   TAKE YOUR HONOR'S ANALOGY.  THERE IS THE EXAMINER ON ONE SIDE,

21   QUALCOMM IS ON THE OTHER SIDE, AND THERE IS A DECISION MAKER

22   WHO'S RESPONSIBLE FOR HEARING BOTH SIDES IN WRITING AND AT ORAL

23   HEARINGS.

24              THE COURT:  AND WHEN YOU REFER TO A DECISION MAKER,

25   ARE YOU REFERRING TO MULTIPLE COMMISSIONERS COLLECTIVELY?  OR

1    IS THERE, IN FACT, JUST A SINGLE OFFICER WHO SITS AS THE BENCH

2    OFFICER IN OUR LITTLE ANALOGY?

3          MR. BORNSTEIN:  THERE IS A FULL COMMITTEE, ALTHOUGH

4    ONE OF THE INDIVIDUALS ON THE COMMITTEE IS DESIGNATED AS THE

5    COMMISSIONER IN CHARGE.

6          THE COURT:  I SEE.

7          MR. BORNSTEIN:  AND THAT INDIVIDUAL HAS THAT TITLE

8    AND THE RESPONSIBILITIES OF REALLY SHEPHERDING THE CASE

9    THROUGH.  HE DOESN'T GET AN EXTRA VOTE OR ANYTHING LIKE THAT,

10   BUT HE IS THE PERSON WITH ADMINISTRATIVE RESPONSIBILITY TO MAKE

11   SURE THE PROCESS RUNS THE WAY IT SHOULD.

12         THE COURT:  ANALOGOUS PERHAPS TO A PRESIDING JUDGE IN

13   AN APPELLATE ARGUMENT?

14         MR. BORNSTEIN:  CORRECT.  CORRECT.

15      AND THEY HAVE A ROLE ACTUALLY DURING THE HEARING PROCESS

16   IN TERMS OF SETTING THE NUMBER OF HEARINGS THAT WILL HAPPEN AND

17   WHAT THE TOPICS WILL BE IN ANY GIVEN HEARING.  THAT ALL FALLS

18   TO THE COMMISSIONER IN CHARGE.

19         THE COURT:  OKAY.

20         MR. BORNSTEIN:  THE DECISION ULTIMATELY GETS MADE BY

21   THE FULL COMMITTEE, WHICH IS, I BELIEVE, NINE COMMISSIONERS.

22         THE COURT:  AND AT THE HEARING -- I APOLOGIZE IF I'M

23   JUMPING AHEAD.

24         MR. BORNSTEIN:  NO, NO, NO.  I'M HERE FOR YOU, YOUR

25   HONOR.

1    THE COURT:  I APPRECIATE THE EDUCATION THAT YOU ALL

2  ARE GIVING ME ON A PROCEDURE I KNOW NOTHING ABOUT.

3    AT THE HEARING, IS IT COMMON, OR EVEN PERMITTED, FOR THERE

4  TO BE ANYTHING OTHER THAN SKILLED ADVOCATES REFERRING TO AN

5  EVIDENTIARY RECORD AND PERHAPS THE APPLICABLE LAW?  IN OTHER

6  WORDS, IS THERE LIVE TESTIMONY IN SOME INSTANCES, EXPERTS?

7  WHAT'S THE LOOK AND FEEL OF THAT?

8    MR. BORNSTEIN:  IT'S VERY MUCH AT THE DISCRETION OF

9  THE COMMITTEE AND THE COMMISSIONER IN CHARGE.  BUT IT IS -- ONE

10  OF THE PROCEDURES THAT DOES HAPPEN, AND WHICH MAY VERY WELL

11  HAPPEN IN THIS CASE, IS TO HAVE EXPERTS COME IN AND DISCUSS THE

12  MATTER OF ECONOMICS OR OF THE TECHNOLOGY THAT MAY BE RELEVANT

13  TO THE ISSUES AT STAKE.

14    THE COURT:  I TAKE IT THAT THE COMMISSIONER IN CHARGE

15  REALLY HAS A LOT OF DISCRETION ON HOW TO STRUCTURE THAT

16  EXERCISE.

17    MR. BORNSTEIN:  THAT'S CORRECT.  THE NUMBER OF

18  HEARINGS IS AT -- HAPPENS TO BE AT HIS -- HIS DISCRETION.  THE

19  NUMBER -- THE CONTENT OF EACH OF THE HEARINGS IS AT HIS

20  DISCRETION.  THE LENGTH OF THE HEARING IS AT HIS DISCRETION.

21    THE PARTIES CAN MAKE REQUESTS TO SAY, "WE'D LIKE TO BRING

22  IN EXPERT, YOU KNOW, PROFESSOR X TO SPEAK ABOUT A PARTICULAR

23  SUBJECT," BUT IT IS AT THE DISCRETION OF THE COMMISSIONER IN

24  CHARGE.

25    THE COURT:  OKAY.

1          MR. BORNSTEIN:  SO REALLY WHAT WE'RE DOING IN THE

2     HEARING PHASE IS WE ARE TRYING TO EDUCATE THAT INDIVIDUAL AND

3     HIS COLLEAGUES ABOUT THE CASE, AND WHAT WE WANT TO DO IS

4     PRESENT EVIDENCE, JUST LIKE WE WOULD IN THIS COURTROOM, TO HAVE

5     MATERIAL THAT WE CAN PRESENT TO, TO PRESENT A DEFENSE.

6          THE COURT:  AND MORE SPECIFICALLY, PERHAPS, TO

7     RESPOND TO THE ALLEGATIONS IN THE EXAMINER'S REPORT THAT LED TO

8     THE HEARING BEING CONVENED IN THE FIRST PLACE.

9          MR. BORNSTEIN:  THAT'S EXACTLY RIGHT.  WE HAVE THE

10    OPPORTUNITY TO DO THAT IN WRITING, AND THEN WE HAVE AN

11    OPPORTUNITY TO DO THAT AT THE HEARING PHASE, AND BOTH OF THOSE

12    FORMS OF ADVOCACY ARE DIRECTED AT THE COMMITTEE WHO WILL MAKE

13    THE DECISION.

14         THE COURT:  GOING BACK TO THE HEARING ITSELF FOR A

15    MOMENT, IN THEORY, COULD THE COMMISSIONER SUMMON OR CALL AS

16    WITNESSES THIRD PARTIES WITH INFORMATION THAT'S RELEVANT?

17         MR. BORNSTEIN:  IT'S NOT MY UNDERSTANDING THAT THE

18    COMMISSION THEMSELVES HAS THE ABILITY TO DO THAT.

19         BUT I -- I NEED TO BE CAREFUL NOT TO OVERSTEP MY KNOWLEDGE

20    OF KOREAN LAW HERE.

21         THE COURT:  I CAN APPRECIATE THAT.

22         MR. BORNSTEIN:  I'M MUCH MORE EDUCATED ABOUT KOREAN

23    LAW THAN I EVER IMAGINED I WOULD BE, BUT THAT QUESTION I DON'T

24    FEEL 100 PERCENT CONFIDENT MAKING A REPRESENTATION TO YOUR

25    HONOR ABOUT.

1          THE COURT:  FAIR ENOUGH.

2      I INTERRUPTED YOU.  GO AHEAD.

3          MR. BORNSTEIN:  IF THAT IS OF INTEREST TO THE COURT,

4  WE CAN FIND THAT OUT AFTERWARDS.

5          THE COURT:  I SUSPECT YOU ALL CAN MARSHAL THOSE

6  RESOURCES PRETTY QUICKLY.

7          MR. BORNSTEIN:  I KNOW WHO I WOULD CALL.

8          THE COURT:  ALL RIGHT.  GO AHEAD.

9          MR. BORNSTEIN:  THE PROBLEM THAT WE FACE NOW IN

10  TRYING TO PRESENT OUR EVIDENCE TO THE COMMITTEE IS AN ASYMMETRY

11  OF RESOURCES AND AN ASYMMETRY OF INFORMATION.

12      THE EXAMINER WHO IS SITTING ON ONE SIDE OF THE COURTROOM,

13  THE HEARING ROOM, HAS ALL OF THE EVIDENCE THAT WE'VE SUBMITTED

14  TO IT, TO HIM.  THE EXAMINER ALSO HAS ALL OF THE INFORMATION

15  THAT HAS BEEN SUBMITTED BY THIRD PARTIES, INCLUDING THE FOLKS

16  IN THE ROOM, AND OTHERS.

17          THE COURT:  AND COULD YOU EXPLAIN, OF THAT UNIVERSE

18  OF DOCUMENTS, OR STARTING WITH THAT SET OF DATA THAT IS

19  AVAILABLE TO THE EXAMINER IN EVALUATING THE QUESTIONS THAT HE

20  OR SHE IS LOOKING AT, WHAT SUBSET IS MADE AVAILABLE TO QUALCOMM

21  AT WHAT PHASE?

22          MR. BORNSTEIN:  SO NOTHING IS MADE AVAILABLE TO

23  QUALCOMM DURING THE INVESTIGATION PHASE.

24      UPON THE ISSUANCE OF THE EXAMINER'S REPORT, THERE IS A

25  VERY LIMITED SET OF INFORMATION THAT IS MADE AVAILABLE.

1          THE COURT:  I SUPPOSE THAT JUST BEFORE THE EXAMINER'S

2     REPORT, QUALCOMM DOES HAVE INSIGHT INTO ONE DATA SET, WHICH IS

3     THE MATERIAL OR INFORMATION QUALCOMM ITSELF GAVE IN RESPONSE TO

4     THE REQUEST.

5          MR. BORNSTEIN:  ABSOLUTELY.

6          THE COURT:  OKAY.

7          MR. BORNSTEIN:  YEAH.  AND THAT'S BOTH DOCUMENTS THAT

8     WERE PROVIDED AND ANSWERS TO QUESTIONS.

9          THE COURT:  INTERVIEWS, THAT SORT OF THING?

10          MR. BORNSTEIN:  REQUESTS FOR INFORMATION.  PLEASE

11     TELL US THE FOLLOWING INFORMATION, AND WE WOULD WRITE SOMETHING

12     DOWN AND SUBMIT IT AS AN ANSWER.

13          THE COURT:  OKAY.  SO THE REPORT ISSUES AND YOU THEN

14     OBVIOUSLY GET A COPY OF THE REPORT.

15          MR. BORNSTEIN:  WE GET A COPY OF THE REPORT, RIGHT.

16          AND WE ALSO GET THE, WHAT'S CALLED -- AGAIN, IT'S A FUNNY

17     TRANSLATION -- BUT WHAT'S CALLED THE APPENDED DATA, AND WHAT

18     THAT IS REALLY, IN U.S.-SPEAK, IT'S THE EXHIBITS TO THE

19     EXAMINER'S REPORT.

20          AND I DON'T THINK THIS IS ACTUALLY IN THE PAPERS, BUT TO

21     GIVE YOUR HONOR A SENSE OF THE MAGNITUDE HERE, IT'S 90

22     DOCUMENTS.  SO WE GOT 90, 90 DOCUMENTS, ABOUT HALF OF WHICH

23     WERE OUR OWN DOCUMENTS.

24          THE COURT:  AND HALF OF WHICH WERE NOT?

25          MR. BORNSTEIN:  AND HALF OF WHICH WERE NOT.

1       AND WHILE THERE ARE 90 DOCUMENTS, WE DIDN'T GET ALL OF THE

2   OTHER HALF, RIGHT?  WE GOT OUR OWN DOCUMENTS AND WE GOT A

3   SUBSET OF THE ONES THAT WERE NOT OUR OWN DOCUMENTS, SOMETIMES

4   REDACTED, SOMETIMES NOT REDACTED.

5       AND THERE IS -- AS IS SPELLED OUT IN THE PAPERS, THERE IS

6   A REQUEST THAT IS STILL PENDING WITH RESPECT TO A SMALL NUMBER

7   OF THE DOCUMENTS THAT THE COMMISSION HAS NOT YET RULED ON ONE

8   WAY OR THE OTHER.

9           THE COURT:  AND IS THAT REQUEST MADE TO THE EXAMINER

10  OR IS THAT REQUEST MADE TO THE COMMISSIONER IN CHARGE OF THE

11  COMMITTEE?  OR SOMEONE ELSE ALTOGETHER?

12          MR. BORNSTEIN:  SO AS A FORMAL MATTER, THE REQUEST IS

13  SUBMITTED TO SOMETHING THAT'S CALLED THE GENERAL COUNSEL'S

14  OFFICE.

15          THE COURT:  OKAY.

16          MR. BORNSTEIN:  BUT IT GETS EASIER, I PROMISE.

17          THE COURT:  MY WORK CHART HERE ON MY PIECE OF PAPER

18  IS GETTING QUITE COMPLICATED.

19          MR. BORNSTEIN:  THE GENERAL COUNSEL'S OFFICE IS AN

20  ADMINISTRATIVE BODY THAT YOU CAN THINK OF A LITTLE BIT LIKE

21  YOUR HONOR'S CLERKS, ALTHOUGH THEY HAVE RESPONSIBILITIES

22  BROADER THAN THAT, BUT THEY HELP MOVE THE CASE THROUGH THE

23  PROCESS.  BUT THEY HAVE VERY SUBSTANTIVE RESPONSIBILITIES IN

24  TERMS OF INTERACTING WITH THE PARTIES AND UNDERSTANDING THINGS

25  AS WELL.

1        THE COURT:  PERHAPS THE BETTER ANALOGY THAT I SHOULD

2   HAVE STARTED WITH ISN'T REALLY THIS COURT, BUT PERHAPS OUR OWN

3   ITC OR SOMETHING LIKE THAT WHERE THERE ARE SIMILAR OFFICES FOR

4   THESE SIMILAR FUNCTIONS.

5        MR. BORNSTEIN:  THAT'S RIGHT.

6        JUST TO MAKE SURE THAT I FINISH THE ANSWER TO YOUR HONOR'S

7   QUESTION, THE ACTUAL DECISION AS TO WHAT GETS RELEASED OR NOT

8   RELEASED BELONGS TO THE COMMISSIONER IN CHARGE.

9        THE COURT:  OKAY.  WORKING WITH THE ADMINISTRATIVE

10  ASSISTANCE OF THE G.C.?

11       MR. BORNSTEIN:  EXACTLY RIGHT.

12       THE COURT:  OKAY.

13       MR. BORNSTEIN:  SO QUALCOMM'S INTERFACE WITH THE KFTC

14  DURING THE HEARING PHASE IS WITH THE GENERAL COUNSEL'S OFFICE.

15       THE COURT:  I TAKE IT THEN, AS AN INITIAL MATTER,

16  QUALCOMM HAS FORMALLY REQUESTED WHATEVER SUBSET OF THE APPENDED

17  DATA IT HAS NOT YET RECEIVED AND MADE THAT REQUEST TO THE G.C.

18  IS THAT FAIR?

19       MR. BORNSTEIN:  THAT'S CORRECT.

20       THE COURT:  AND HAS THAT REQUEST YET BEEN RULED UPON?

21       MR. BORNSTEIN:  PARTIALLY.  SO WE MADE THE REQUEST,

22  WE'VE GOTTEN TWO TRANCHES OF ANSWERS.  IN BOTH INSTANCE, WE

23  WERE GIVEN SOME OF THE DOCUMENTS, AND THEN IN THE NEXT TRANCHE

24  WE WERE GIVEN SOME MORE.

25       IN BOTH INSTANCES SOME OF THE DOCUMENTS WE RECEIVED HAD

1    REDACTIONS FOR CONFIDENTIALITY OR OTHER REASONS.

2          AND IN BOTH INSTANCES WE WERE TOLD A PARTICULAR DOCUMENT

3    THAT WAS THE SUBJECT OF THE REQUEST WE ACTUALLY WOULD NOT BE

4    RECEIVING.

5          THE COURT:  OKAY.  SO BETWEEN THE REDACTIONS AND THE

6    ENTIRE DOCUMENTS WHICH HAVE BEEN WITHHELD, IT'S CLEAR THAT

7    SOMETHING LESS THAN EVERYTHING QUALCOMM REQUESTED OF THE

8    APPENDED DATA HAS BEEN PRODUCED.

9          AM I CORRECT IN UNDERSTANDING THAT THE ENTIRE DELTA

10   BETWEEN WHAT QUALCOMM INITIALLY GOT AND THE APPENDED DATA AS A

11   WHOLE IS WHAT QUALCOMM ASKED FOR?  IN OTHER WORDS, WAS QUALCOMM

12   WILLING TO FORGO SEEING SOME SUBSET OF THAT APPENDED DATA AS IT

13   WAS ORIGINALLY COMPILED?

14         MR. BORNSTEIN:  YOUR ASSUMPTION IS RIGHT.  WE DIDN'T

15   CARVE SOMETHING OUT AND SAY GIVE US --

16         THE COURT:  I FIGURE YOU WANT TO SEE WHAT YOU'RE

17   BEING CHARGED WITH AND UNDERSTAND THE SOURCE OF THAT, SO YOU

18   ASKED FOR IT ALL.

19         MR. BORNSTEIN:  EXACTLY.

20         THE COURT:  OKAY.

21         MR. BORNSTEIN:  NOW THERE IS A LITTLE TAIL, THERE IS

22   SOME SINGLE DIGIT NUMBER OF DOCUMENTS ON WHICH THE KFTC HAS NOT

23   YET TOLD US YEA OR NAY.

24         THE COURT:  OKAY.  THAT REQUEST REMAINS PENDING?

25         MR. BORNSTEIN:  CORRECT.

1          THE COURT:  OKAY.

2          MR. BORNSTEIN:  SO THAT PROCESS IS GOING ON WITH

3     RESPECT TO THE 90 DOCUMENTS WHICH IS NOW WINNOWED DOWN TO A

4     SMALLER NUMBER.

5          THE NEXT IMPORTANT BUCKET OF DOCUMENTS TO THINK ABOUT, THE

6     EVIDENCE TO THINK ABOUT, IS ALL OF THE INFORMATION IN THE

7     EXAMINER'S FILE THAT WAS NOT ATTACHED TO THE EXAMINER'S REPORT.

8     SO, YOU KNOW, WHATEVER -- WHATEVER HE GOT MINUS 90 IS WHAT

9     WE'RE TALKING ABOUT NOW.

10          THE COURT:  AND IS IT FAIR FOR ME TO UNDERSTAND THAT

11     WHATEVER HE GOT IS A FAIRLY VOLUMINOUS SET OF MATERIALS,

12     SOMETHING MUCH -- PERHAPS MULTIPLES OF 90?

13          MR. BORNSTEIN:  I HAVE TO ASSUME SO.  CERTAINLY WHAT

14     HE GOT FROM QUALCOMM IS, BUT WE'RE NOT --

15          THE COURT:  RIGHT.

16          MR. BORNSTEIN:  WE'RE NOT COMING TO HIM OR TO YOU FOR

17     THAT.

18          THE COURT:  RIGHT, UNDERSTOOD.

19          MR. BORNSTEIN:  AND WE CAN ONLY ASSUME, BASED ON WHAT

20     WE'VE SEEN SO FAR, AND BASED ON PRACTICE IN THE KFTC IN PRIOR

21     MATTERS, THAT THERE IS QUITE A BIT OF INFORMATION THAT'S BEEN

22     COLLECTED FROM THIRD PARTIES.

23          AND THERE ARE A NUMBER OF THIRD PARTIES, OBVIOUSLY, WHO

24     HAVE DEMONSTRATED INTEREST IN THIS MATTER AND WHO HAVE BEEN

25     COOPERATING WITH THE EXAMINER.

1          THE COURT:  AND, AGAIN, WITH APOLOGIES FOR JUMPING

2     AROUND A BIT, BUT I HAD UNDERSTOOD, AND PERHAPS BASED ON

3     NOTHING MORE THAN AN ASSUMPTION I WAS MAKING, THAT QUALCOMM'S

4     TARGETS, FOR LACK OF A BETTER WORD, IN THIS DISTRICT WITH THESE

5     PROPOSED SUBPOENAS WERE THE ENTIRE UNIVERSE OF THIRD PARTIES

6     THAT QUALCOMM KNEW ABOUT THAT PERHAPS HAD RELEVANT INFORMATION

7     THAT WERE OF INTEREST TO QUALCOMM AT THIS PART OF THE, OR THIS

8     PHASE OF THE PROCESS.

9          ARE THERE NON-U.S. OTHER PARTIES THAT QUALCOMM IS PURSUING

10    AS WELL USING OTHER MECHANISMS UNDER WHATEVER LAW APPLIES?

11          MR. BORNSTEIN:  WELL, THERE ARE OTHER PARTIES WHO WE

12    ARE AWARE OF JUST BASED ON THE CONTENT OF THE EXAMINER'S

13    REPORT.

14          THE COURT:  SURE.  I FIGURE THAT'S YOUR FIRST PLACE

15    TO START, RIGHT?

16          MR. BORNSTEIN:  YES.  SO THERE ARE OTHERS WHO ARE NOT

17    THE SUBJECT OF APPLICATIONS IN THIS COURT.

18          THE COURT:  OKAY.

19          MR. BORNSTEIN:  AND FOR THE REASON THAT YOUR HONOR

20    FLAGGED, WHICH IS THEY'RE NOT HERE.

21          THE COURT:  RIGHT.  AND AM I RIGHT IN UNDERSTANDING

22    THAT WHATEVER SECTION 1782 APPLICATIONS QUALCOMM IS PURSUING AT

23    THIS TIME RELATED TO THIS INVESTIGATION ARE BEFORE THIS COURT

24    AND BEFORE ME?  OR ARE THERE OTHER DISTRICTS WHERE THERE ARE

25    SIMILAR ISSUES BEING LITIGATED?

```
 1              MR. BORNSTEIN:  YOUR HONOR HAS THE PLEASURE OF HAVING

 2    EVERYTHING.

 3              THE COURT:  ALL RIGHT.  I THANK YOU FOR THAT.

 4        ALL RIGHT.  NOW THAT I UNDERSTAND KIND OF I'VE GOT THE

 5    BALL, WHY DON'T WE MOVE FORWARD IN YOUR TIMELINE THEN IN TERMS

 6    OF WHAT IT IS THAT QUALCOMM IS SEEKING.

 7              MR. BORNSTEIN:  SURE.  SO THERE'S THE, THE X MINUS 90

 8    UNIVERSE --

 9              THE COURT:  YES.

10              MR. BORNSTEIN:  -- WHAT WE'VE BEEN CALLING THE CASE

11    FILE, WHICH IS REALLY TERMINOLOGY WE BORROWED FROM EUROPE WHERE

12    THERE IS A CASE FILE AND THERE'S A PROCEDURE THAT YOUR HONOR

13    WILL HAVE SEEN PERHAPS IN SOME OF THE CASES ABOUT GETTING

14    ACCESS TO THE FILE.

15              THE COURT:  OKAY.  YOU'RE REFERRING TO THE TYPES OF

16    INVESTIGATIONS THE D.G. COMP DOES, THOSE TYPES OF THINGS?

17              MR. BORNSTEIN:  CORRECT.  THAT'S EXACTLY RIGHT.

18        IN KOREA, THERE IS NO PROCEDURE LIKE THAT.  WHEN THE

19    EXAMINER'S REPORT GETS ISSUED, WE DON'T SUDDENLY GET TO SEE THE

20    INVESTIGATIVE FILE AND UNDERSTAND THE BASIS FOR ANYTHING, OTHER

21    THAN THE APPENDED DATA, THE 90 DOCUMENTS THAT WERE ATTACHED AS

22    EXHIBITS.

23              THE COURT:  OKAY.

24              MR. BORNSTEIN:  THERE'S NO PROCEDURE FOR US TO SERVE

25    SUBPOENAS OR COLLECT EVIDENCE DIRECTLY --
```

1          THE COURT:  UNDER KOREAN LAW?

2          MR. BORNSTEIN:  -- UNDER KOREAN LAW AS WELL.

3       SO WE WOULD HAVE TRIED THAT IF WE WERE ABLE TO, BUT THAT

4    WASN'T AN OPTION.

5       NOW, YOUR HONOR WILL HAVE SEEN THAT WE DID MAKE A REQUEST

6    IN KOREA FOR THE EXAMINER'S CASE FILE.  THIS IS NOVEL.

7          THE COURT:  I WAS GOING TO SAY UNUSUAL, BUT I TAKE IT

8    WE'RE SAYING THE SAME THING, THAT THIS IS NOT SOMETHING THAT

9    EITHER IS GRANTED REGULARLY OR EVEN, FRANKLY, REQUESTED OFTEN

10   UNDER KFTC PROCEDURE.

11         MR. BORNSTEIN:  SO AS FAR AS WE KNOW, THIS IS THE

12   FIRST TIME IT'S EVER BEEN REQUESTED.

13      THERE ARE TWO PRINCIPAL REASONS FOR THAT.  ONE IS THERE'S

14   NO PROCEDURE FOR IT.  I MEAN, IF YOU SPEND TIME AND GO THROUGH

15   THAT DOCUMENT THAT WE'VE SUBMITTED TO THE COURT, WHICH HAS THE

16   CASE HANDLING PROCEDURES, YOU WILL SEE IT THERE, THERE ARE

17   STATUTES THAT THE OPPOSING PARTIES HAVE REFERRED TO WHICH, TO

18   OUR UNDERSTANDING -- AND WE PUT IN AN AFFIDAVIT TO THIS EFFECT

19   FROM KOREAN COUNSEL -- ALSO DON'T PERMIT ACCESS TO ANYTHING

20   OTHER THAN THE APPENDED DATA.

21      SO THIS IS STUFF THAT, UNDER KOREAN LAW, THERE'S NO

22   PROCEDURE TO GET.  THERE'S NOTHING AFFIRMATIVELY PROHIBITING IT

23   UNDER KOREAN LAW, BUT THERE'S NO MECHANISM TO SAY, HEY, LET'S

24   MAKE A RULE 67 MOTION OR WHATEVER.

25         THE COURT:  I UNDERSTAND.

1          MR. BORNSTEIN:  HOWEVER YOU WANT TO PUT IT.

2          THE COURT:  SO HAVING CONFRONTED THIS ANOMALOUS

3     SITUATION, YOU HAVE MADE THE REQUEST, AND I TAKE IT THAT

4     REQUEST, TOO, REMAINS PENDING BEFORE THE KFTC.

5          MR. BORNSTEIN:  YES AND YES.  AND WE'VE MADE THAT

6     REQUEST, AS THE COURT WILL HAVE SEEN, PURSUANT TO WHAT WE

7     BELIEVE ARE TREATY OBLIGATIONS.

8          THE COURT:  I SEE.  AND IS THAT REQUEST A REQUEST

9     THAT'S ALSO MADE TO THE GENERAL COUNSEL'S OFFICE?

10         MR. BORNSTEIN:  WE HAVE MADE IT TO THE GENERAL

11    COUNSEL'S OFFICE, YES.

12         THE COURT:  OKAY.

13         MR. BORNSTEIN:  AND PRESUMABLY THAT WILL GO TO THE

14    COMMISSIONER IN CHARGE FOR CONSIDERATION AS WELL.

15         THE COURT:  SO THE COMMISSIONER IN CHARGE WILL

16    PRESUMABLY LOOK TO, AMONG OTHER THINGS, THE TREATIES THAT ARE

17    CITED, INCLUDING THE MOST RECENT TREATY EXECUTED BETWEEN THE

18    COUNTRIES --

19         MR. BORNSTEIN:  CORRECT.

20         THE COURT:  -- IN RULING?

21         MR. BORNSTEIN:  CORRECT.

22         THE COURT:  OKAY.

23         MR. BORNSTEIN:  SO THIS IS IN THE WAY THAT WE HAVE

24    TRIED TO OPERATE WITHIN THE KOREAN SYSTEM.  THERE'S NO

25    PROCEDURE FOR IT, BUT THERE IS A TREATY.  IT'S A KOREAN LEGAL

1    OBLIGATION UNDER INTERNATIONAL LAW, AND WE'VE ATTEMPTED TO TAKE

2    ADVANTAGE OF THAT.

3         THE TREATY SPECIFICALLY REFERS TO COMPETITION PROCEEDINGS,

4    AND I DON'T WANT TO ARGUE THE TREATY ISSUE WITH YOUR HONOR,

5    EXCEPT TO SAY WE'RE TRYING TO TAKE ADVANTAGE OF THE PROCEDURES

6    THAT ARE AVAILABLE IN KOREA AND NOT JUST COMING HERE AND

7    CIRCUMVENTING WHAT MIGHT BE AVAILABLE OVER THERE.

8         IN FACT, WE'VE TAKEN THE EXTRA STEP OF TRYING TO GET

9    SOMETHING THAT THEY DON'T HAVE A PROCEDURE FOR.

10        THE COURT:  SO, MR. BORNSTEIN, ALL THIS IS HAPPENING,

11   OF COURSE, AGAINST A CLOCK THAT CONTINUES TO TICK.  YOU HAVE A

12   DEADLINE, PRESUMABLY, FOR FILING YOUR RESPONSE.

13        MR. BORNSTEIN:  WE DO, AND THERE WILL BE HEARINGS

14   THAT FOLLOW ON AFTER THAT.

15        THE COURT:  OKAY.  AND YOUR PAPERS SPEAK TO THIS, BUT

16   COULD YOU REMIND ME WHEN, ROUGHLY, IS YOUR RESPONSIVE PLEADING

17   DUE?

18        MR. BORNSTEIN:  THE CURRENT DEADLINE IS THE MIDDLE OF

19   MARCH.

20        THE COURT:  AND IS THAT -- IS THERE A MECHANISM,

21   UNDER THE PROCEDURE IN KOREA, THAT WOULD ALLOW YOU TO MAKE

22   REQUESTS FOR EXTENSIONS OR THINGS LIKE THAT?

23        MR. BORNSTEIN:  YES, YES.

24        AND THEN THE HEARINGS THEMSELVES ARE SUPPOSED TO BEGIN

25   WITHIN 30 DAYS OF THE SUBMISSION OF THE WRITTEN RESPONSE.

1        THE COURT:  AND IS THAT, TO YOUR KNOWLEDGE ANYWAY,

2   LIKELY TO HOLD?  IS THAT SOMETHING QUALCOMM EXPECTS TO BE A

3   PART OF WITHIN 30 DAYS?

4        MR. BORNSTEIN:  WELL, THAT, TOO, IS AT THE DISCRETION

5   OF THE COMMISSIONER IN CHARGE.

6        THE COURT:  RIGHT.

7        MR. BORNSTEIN:  AS YOU CAN IMAGINE, THIS CASE IS NOT

8   TYPICAL GRIST FOR THE KFTC MILL, AND SO THERE WILL BE --

9        THE COURT:  THERE'S A LOT TO DIGEST HERE.

10        MR. BORNSTEIN:  THERE'S A LOT TO DIGEST.  THE TIMING

11   IS ENTIRELY AT THEIR DISCRETION, INCLUDING WHETHER WE GET AN

12   EXTENSION BEYOND THE CURRENT DATE OR NOT.  WE REALLY HAVE NO

13   WAY OF GUARANTEEING THAT ONE WAY OR ANOTHER, AND THERE ARE A

14   LOT OF PEOPLE IN THE UNITED STATES AND IN KOREA WORKING VERY

15   HARD TO MAKE SURE THAT WE HAVE A SUBMISSION THAT CAN GO IN ON

16   TIME.

17        THE COURT:  I UNDERSTAND.

18      OKAY.  SO EVEN AS YOUR CLOCK CONTINUES TO TICK AND AS THAT

19   SUBMISSION PRESUMABLY IS UNDERWAY, THE DRAFTING AND ALL OF THAT

20   IS UNDERWAY, YOU HAVE MADE THESE, WHAT I -- IF I UNDERSTAND

21   THIS RIGHT, TWO REQUESTS THROUGH THE GENERAL COUNSEL'S OFFICE

22   OF THE COMMISSION.  ONE IS FOR THE CASE FILE, RIGHT?  AND THE

23   OTHER IS FOR -- WELL, IS THE CASE FILE EVERYTHING?  OR IS THERE

24   SOMETHING ELSE?

25        MR. BORNSTEIN:  THE CASE FILE -- WHAT WE'VE REQUESTED

```
 1      IS EVERYTHING THAT THE EXAMINER HAS COLLECTED.

 2              THE COURT:  OKAY.  WHICH WOULD INCLUDE --

 3              MR. BORNSTEIN:  WE'VE REFERRED TO IT AS THE CASE

 4      FILE.

 5              THE COURT:  I SEE.  SO THERE'S THE CASE FILE, AND

 6      THAT PRESUMABLY WOULD INCLUDE THE NON-DISCLOSED APPENDED DATA

 7      THAT WAS THE SUBJECT OF THE SEPARATE REQUEST?

 8              MR. BORNSTEIN:  THAT'S CORRECT.

 9              THE COURT:  OKAY.

10              MR. BORNSTEIN:  AS A TECHNICAL MATTER, THAT'S RIGHT.

11      I FULLY EXPECT, THOUGH, THAT HAVING ONCE RULED ON NOT

12      GIVING US CERTAIN MATTERS, THAT THAT RULING WILL HOLD WITH

13      RESPECT TO THAT SMALL SUBSET OF DOCUMENTS.

14              THE COURT:  OKAY.  ALL RIGHT.  SO THOSE REQUESTS ARE

15      WHERE THEY ARE AND YOU MAY BE PLEASANTLY SURPRISED, BUT AT

16      LEAST FOR THE TIME BEING, YOU'VE NOT YET RECEIVED THOSE

17      MATERIALS.

18      IN THE MEANTIME, AFTER THE NEW YEAR, YOU FILE YOUR

19      APPLICATIONS WITH THIS COURT; CORRECT?

20              MR. BORNSTEIN:  CORRECT.

21              THE COURT:  OKAY.  WELL, IT WOULD SEEM TO ME NOW

22      WOULD BE AS GOOD A TIME AS ANY TO START TALKING ABOUT WHAT I DO

23      WITH THAT UNDER INTEL AND THE REST, SO UNLESS YOU HAVE ANYTHING

24      ELSE YOU WANT TO TELL ME ABOUT THE CHRONOLOGY, WHY DON'T WE

25      TURN TO THOSE ISSUES?
```

1          MR. BORNSTEIN:  NO.  I THINK THAT'S FINE.

2          THE COURT:  OKAY.

3          MR. BORNSTEIN:  AND IN WALKING THROUGH THE <u>INTEL</u>

4    ISSUES, I THINK IT IS, THOUGH, IMPORTANT JUST TO KEEP IN MIND

5    THE DIFFERENT BUCKETS OF DOCUMENTS BECAUSE THEY DO GET BLURRED

6    IN SOME OF THE PAPERS, ONE BUCKET BEING THE CASE FILE, AND THEN

7    THE OTHER BUCKET BEING SOMETHING WE HAVEN'T TALKED ABOUT AT ALL

8    YET THIS AFTERNOON, WHICH IS THE SET OF DOCUMENTS THAT WE'VE

9    REQUESTED FROM THE OPPOSING PARTIES THAT THE EXAMINER DOESN'T

10   HAVE, THE OTHER MATERIALS THAT, FOR WHATEVER REASON, WERE NOT

11   PROVIDED, EITHER THEY WEREN'T ASKED FOR OR THEY WERE ASKED FOR

12   AND NOT DEEMED RESPONSIVE OR WHATEVER IT IS --

13         THE COURT:  RIGHT.

14         MR. BORNSTEIN:  -- BUT WHICH WE DEEM RELEVANT TO OUR

15   DEFENSE.

16         THE COURT:  UNDERSTOOD.  OKAY.

17         MR. BORNSTEIN:  SO WITH RESPECT TO <u>INTEL</u> ITSELF, THE

18   ONLY OVERARCHING POINT I WOULD MAKE IS THAT IT'S NOT A

19   YOU-MUST-MEET-EVERY-ONE TYPE TEST.  IT'S A BALANCING TEST.

20   THERE'S NO ACROSS THE BOARD CATEGORICAL RULES, AS THE SUPREME

21   COURT PUT IT.  BUT EACH OF THE FACTORS GET WEIGHED AND IN THE

22   COURT'S DISCRETION FIGURE OUT HOW THE BALANCING ULTIMATELY

23   SHAKES OUT.

24         THE COURT:  SO WE WERE TALKING JUST A MINUTE OR TWO

25   AGO ABOUT SOME RATHER UNIQUE FEATURES OF QUALCOMM'S POSTURE IN

1    SEOUL, OR IN KOREA.

2          ONE OF THE THINGS THAT STRUCK ME AS RATHER UNIQUE HERE IN

3    SAN JOSE WITH THESE APPLICATIONS IS THAT IT'S NOT EVERY DAY

4    THAT I GET AN AMICUS BRIEF FROM A FOREIGN ADMINISTRATIVE AGENCY

5    IN WHICH IT ESSENTIALLY TELLS ME, "DON'T GIVE US INFORMATION."

6          SO AT SOME POINT, HOPEFULLY SOONER RATHER THAN LATER, I'D

7    LIKE TO GET YOUR THOUGHTS ABOUT HOW I SQUARE YOUR REQUEST WITH

8    WHAT SEEMS TO BE A FAIRLY CLEAR AND DIRECT, "WE DON'T WANT

9    THIS."

10          MR. BORNSTEIN:  RIGHT.

11          THE COURT:  SO GO AHEAD.

12          MR. BORNSTEIN:  LET ME JUMP RIGHT TO THAT THEN.

13          THE COURT:  PLEASE.

14          MR. BORNSTEIN:  IT'S REALLY SOMETHING THAT PROBABLY

15    GETS ANALYZED UNDER THE SECOND AND THIRD INTEL FACTORS.

16          THE COURT:  I THINK THAT'S FAIR, YEAH.

17          MR. BORNSTEIN:  THE FIRST POINT TO MAKE, SINCE WE'VE

18    BEEN DOING, YOU KNOW, THE KOREAN LEGAL PROCEDURE CLASS THIS

19    AFTERNOON, I'LL DO ONE MORE PART OF THE SYLLABUS --

20          THE COURT:  SURE.

21          MR. BORNSTEIN:  -- WHICH IS THAT THE GENTLEMAN WHO IS

22    THE SIGNATORY TO THE LETTER THAT THE COURT GOT, HE IS THE

23    EXAMINER.

24          THE COURT:  YES.

25          MR. BORNSTEIN:  SO --

1    THE COURT:  AND IN SOME SENSE, HIS INVESTIGATION WORK

2    IS DONE.  AM I RIGHT THAT AT THIS POINT HE IS ESSENTIALLY

3    PROSECUTING THE CASE BEFORE THE COMMISSION BASED ON WHAT HE HAS

4    ASSEMBLED?

5    MR. BORNSTEIN:  THAT'S THE POSTURE THAT WE'RE IN,

6    THAT'S CORRECT.

7    THE COURT:  OKAY.

8    MR. BORNSTEIN:  AND I THINK THAT THE LETTER THAT THE

9    COURT HAS RECEIVED NEEDS TO BE VIEWED IN THE CONTEXT OF -- THAT

10   YOUR HONOR JUST ARTICULATED.

11   THE COURT:  OKAY.

12   MR. BORNSTEIN:  IT'S NOT, FOR EXAMPLE, A SITUATION

13   THAT WE'VE SEEN IN SOME OF THE D.G. COMP RELATED CASES FROM

14   MICROSOFT WHERE THE COMMISSION ITSELF HAS WEIGHED IN IN ONE

15   FORM OR ANOTHER.

16   AND IT'S ALSO NOT A SITUATION, LIKE IN THE MICROSOFT CASE,

17   WHERE D.G. COMP, WHO HAS -- HAS WEIGHED IN AND THE COURT HAS

18   SAID, "WELL, I HAVE TO TREAT D.G. COMP AS NEUTRAL AND NOT AS AN

19   ADVERSARY."

20   BUT THE PROCEDURE WE'RE IN IN KOREA IS DIFFERENT.  WE'RE

21   NOT IN EUROPE.  THE FACTS ARE JUST A DIFFERENT SITUATION.

22   AMONG OTHER THINGS, WE DON'T HAVE ACCESS TO ALL OF THE

23   MATERIALS THAT ARE OVER THERE, WHEREAS IN EUROPE, THERE IS THIS

24   ACCESS TO FILE PROCESS.

25   THE COURT:  RIGHT.  AND CAN I ASK, IN TERMS OF YOUR

1    OWN VERY THOROUGH RESEARCH I MUST SAY AS REFLECTED IN YOUR

2    BRIEF, WERE YOU ABLE TO IDENTIFY ANY SITUATION WHERE EITHER THE

3    EXAMINER OR ANYONE ELSE AT THE KFTC HAD SUBMITTED THEIR

4    POSITION ON THE 1782 REQUEST BEFORE A DISTRICT COURT?

5        MR. BORNSTEIN:  THE ONLY INSTANCES WE'VE FOUND WHERE

6    A KOREAN AUTHORITY HAS WEIGHED IN ONE WAY OR ANOTHER ON A 1782

7    REQUEST WAS WHEN THE KOREAN AUTHORITIES THEMSELVES HAVE TAKEN

8    ADVANTAGE --

9        THE COURT:  WHICH, OF COURSE, THEY HAVE THE

10    OPPORTUNITY TO DO UNDER OUR STATUTE.

11        MR. BORNSTEIN:  CORRECT, CORRECT.  SO THERE ARE A FEW

12    INSTANCES THAT WE'VE IDENTIFIED, SOME IN THE PAPERS.

13    THERE'S ACTUALLY ONE GOING BACK TO A NINTH CIRCUIT CASE

14    FROM 1977 --

15        THE COURT:  HMM.

16        MR. BORNSTEIN:  -- WHERE THE KOREAN COURTS HAVE TAKEN

17    ADVANTAGE OF THE PROCEDURE.

18    I'VE NOT SEEN A SITUATION WHERE THE KFTC HAS WEIGHED IN,

19    OR PART OF THE KFTC HAS WEIGHED IN AS HAS HAPPENED HERE.

20        THE COURT:  I MENTIONED EARLIER THAT I'VE HAD SOME

21    EXPERIENCE, WITTINGLY OR OTHERWISE, WITH THE STATUTE IN THE

22    PAST, AND I CERTAINLY CANNOT RECALL A SITUATION WHERE A FOREIGN

23    JURISDICTION HAS TAKEN THE TROUBLE TO TELL ME WHAT IT -- OR AT

24    LEAST SOME PART OF THAT JURISDICTION HAS TAKEN THE TROUBLE TO

25    TELL ME WHAT IT WANTS ME TO DO IN THIS SITUATION, SO THAT DID

1     STRIKE ME AS A BIT UNUSUAL.

2          IN ANY EVENT, YOU WERE ABOUT TO, I BELIEVE, ADDRESS, UNDER

3     EITHER THE SECOND OR THIRD FACTOR, WHAT I DO WITH THIS

4     SITUATION WHERE AT LEAST THE EXAMINER HAS SAID ONE THING.

5          I TAKE THE FACT THAT IT'S COMING FROM THE EXAMINER MATTERS

6     IN YOUR VIEW.

7               MR. BORNSTEIN:  IT DOES.  IT DOES.  PROCEDURALLY,

8     THIS IS NOT A -- I DON'T KNOW IF "REQUEST" IS THE RIGHT WORD --

9     A SUBMISSION THAT HAS COME TO THE COURT FROM THE DECISION

10    MAKER.

11              THE COURT:  SO PERHAPS YOU MIGHT VIEW THIS DISPUTE

12    DIFFERENTLY IF WHAT HAD COME FROM THE KFTC WAS A LETTER FROM

13    EITHER THE COMMISSIONER OR THE COMMITTEE AS A WHOLE.  WOULD YOU

14    PERHAPS CONCEDE THAT MUCH, THAT THAT MIGHT BE A VERY DIFFERENT

15    SITUATION?

16              MR. BORNSTEIN:  WELL, I THINK IT WOULD BE DIFFERENT.

17    I WON'T GO SO FAR AS TO SAY, YOUR HONOR, THAT THAT'S

18    DISPOSITIVE.

19              THE COURT:  I TRIED.

20         (LAUGHTER.)

21              MR. BORNSTEIN:  WELL, BUT THERE ARE CASES -- THERE

22    ARE CASES, YOUR HONOR, INCLUDING FROM THIS COURT -- NOT FROM

23    YOUR HONOR, BUT FROM ONE OF YOUR HONOR'S COLLEAGUES -- THAT SAY

24    THAT IT'S NOT DISPOSITIVE WHEN THE OTHER SIDE WEIGHS IN.  IT'S

25    THE MICROSOFT CASES HERE.

1    THE COURT:  I BELIEVE THAT WAS JUDGE TRUMBULL IN THIS

2    COURTROOM.

3    MR. BORNSTEIN:  THAT'S CORRECT.  THAT'S CORRECT.

4    AND INTEL ITSELF, THE SUPREME COURT DECISION.  THE

5    EUROPEAN COMMISSION HAS WEIGHED IN AND HAS SAID "THIS IS NOT

6    SOMETHING THAT WE ARE IN FAVOR OF."

7    BUT THE SUPREME COURT DIDN'T JUST SHUT IT DOWN RIGHT

8    THERE.  IT SENT IT BACK DOWN, IN FACT, BACK TO THIS DISTRICT

9    ULTIMATELY, FOR RESOLUTION UNDER THE FOUR FACTOR TEST THAT THE

10   COURT HAD LAID OUT INSTEAD OF JUST SAYING, "OH, THIS IS

11   DISPOSITIVE, WE'RE DONE, WE DON'T NEED TO LOOK AT THIS

12   ANYMORE."

13   AND THERE'S A DECISION FROM THE SOUTHERN DISTRICT OF

14   NEW YORK AS WELL.

15   THE COURT:  THEY DID SOME WORK OUT THERE, TOO, I'M

16   TOLD.

17   MR. BORNSTEIN:  YES.

18   THE COURT:  MAY I ASK, IN TERMS OF THE SIGNIFICANCE

19   OF THE EXAMINER MAKING HIS VIEWS KNOWN VERSUS THE COMMISSIONER

20   OR THE COMMITTEE AS A WHOLE, AM I RIGHT IN UNDERSTANDING THAT

21   NO U.S. COURT HAS LOOKED AT WHETHER OR NOT THE COMMISSION, OR

22   PERHAPS A COMMISSION LIKE IT IN ANOTHER JURISDICTION, STANDS IN

23   A DIFFERENT POSTURE OR DIFFERENT PLACE THAN THE ENTITY WITHIN

24   THAT IS ESSENTIALLY PROSECUTING THE CASE?  HAS ANYONE LOOKED AT

25   THIS DICHOTOMY, OR THIS DISTINCTION BETWEEN THOSE TWO PARTIES?

1        MR. BORNSTEIN:  SO THE ONLY CASE THAT I CAN THINK OF

2   WHERE THAT'S COME UP IS A CASE THAT ADDRESSED D.G. COMP.

3        THE COURT:  RIGHT.

4        MR. BORNSTEIN:  AND IT'S WHAT I WAS REFERRING TO A

5   LITTLE BIT EARLIER.

6        THE COURT:  BUT THE FILE ACCESS IS VERY DIFFERENT IN

7   THAT SITUATION.

8        MR. BORNSTEIN:  THAT'S EXACTLY RIGHT.

9        THE COURT:  YEAH.

10        MR. BORNSTEIN:  THAT'S EXACTLY RIGHT.  I'M NOT AWARE

11   OF A CASE THAT ADDRESSES THIS POINT WITH RESPECT TO ANY OTHER

12   AGENCY OF THIS SORT.

13        THE COURT:  OKAY.

14        MR. BORNSTEIN:  SO IF I COULD, MAYBE THE WAY TO DO

15   THIS IS TO THINK ABOUT THE KFTC LETTER UNDER THE TWO DIFFERENT

16   FACTORS.

17        THE COURT:  SURE.

18        MR. BORNSTEIN:  BECAUSE I CAN SEE IT BEING ARGUED OR

19   CONSIDERED BY THE COURT UNDER BOTH.

20       AND FACTOR 2, WHICH GETS TALKED ABOUT IN THE PAPERS AS THE

21   RECEPTIVITY OF THE JURISDICTION TO THE EVIDENCE, I THINK IT

22   MAKES SENSE, JUST BEFORE GETTING THERE, TO LOOK AT INTEL AGAIN.

23       FACTOR 2 IS ACTUALLY THREE SUBFACTORS KIND OF ROLLED

24   TOGETHER.

25        THE COURT:  UM-HUM.

1           MR. BORNSTEIN:  IT'S THE NATURE OF THE TRIBUNAL, THE

2     CHARACTER OF THE PROCEEDINGS, AND THE RECEPTIVITY OF THE

3     FOREIGN AUTHORITY TO THE ASSISTANCE.

4           THE FIRST TWO CAN'T BE IGNORED, AND I THINK THAT PLAYS A

5     ROLE IN HOW YOUR HONOR THINKS ABOUT WHO IT IS WHO SIGNED THE

6     LETTER THAT THE COURT GOT.

7           THE COURT:  UM-HUM.

8           MR. BORNSTEIN:  BECAUSE THE NATURE OF THE TRIBUNAL

9     IS, WELL, IT'S THE COMMITTEE.  IT'S A DECISION MAKER LIKE THIS

10    COURT WHO HAS NOT BEEN INVOLVED IN THE COLLECTION OF EVIDENCE

11    AND IS HEARING THE COLD RECORD FROM THE PARTIES.

12          AND THE CHARACTER OF THE PROCEEDINGS IS, AGAIN, IT'S AN

13    ADVERSARIAL ONE.  AND I DON'T MEAN TO SAY THAT IN A DISPARAGING

14    WAY TO THE COMMISSIONER.  IT'S JUST THAT NOW THE -- EXCUSE

15    ME -- TO THE EXAMINER.  IT'S JUST THAT NOW THE ROLE THE PARTIES

16    HAVE IS AS OPPOSING PARTIES IN A PROCEEDING BEFORE THAT

17    DECISION MAKER.

18          THE COURT:  RIGHT.  AND, AGAIN, TO BE CLEAR, HE --

19    I KEEP REFERRING TO THE EXAMINER AS A HE.

20          MR. BORNSTEIN:  IT IS A HE.

21          THE COURT:  OKAY.

22          -- HAS A NOW DEFINED RESPONSIBILITY UNDER PRESUMABLY HIS

23    AUTHORITY UNDER KOREAN LAW TO PURSUE THESE ALLEGATIONS TO HIS

24    FULL EXTENT, RIGHT?

25          MR. BORNSTEIN:  THAT'S MY UNDERSTANDING.

1          THE COURT:  AND I TAKE IT THAT, AGAIN, FOR ALL

2     PRACTICAL PURPOSES, AND PERHAPS EVEN UNDER KOREAN LAW, THE

3     EXAMINER NO LONGER HAS WHATEVER DISCRETION HE MIGHT HAVE ONCE

4     HAD.  HAVING CHOSEN TO LAUNCH THESE ALLEGATIONS AGAINST

5     QUALCOMM IN HIS REPORT, IT'S NOW HIS JOB TO PROVE THEM UP,

6     RIGHT?

7          MR. BORNSTEIN:  I BELIEVE THAT'S RIGHT.

8        AGAIN, THIS IS ONE PLACE WHERE I'M RIGHT AT THE EDGE OF MY

9     KOREAN LEGAL KNOWLEDGE.  I CAN'T SAY IF ALL OF A SUDDEN THERE

10    IS A --

11         THE COURT:  IF HE HAS A CHANGE OF HEART, FOR EXAMPLE,

12    AFTER HEARING FROM A WITNESS.

13         MR. BORNSTEIN:  YEAH.  OR, FOR EXAMPLE, IF WE GET

14    SOME DISCOVERY AND WE FIND SOME INFORMATION AND CALL IT TO HIS

15    ATTENTION THAT HE HASN'T PREVIOUSLY SEEN --

16         THE COURT:  PERHAPS HE MIGHT BE ABLE TO UNRING THE

17    BELL.  BUT I DON'T KNOW.

18         MR. BORNSTEIN:  I WOULD LIKE TO THINK AT LEAST HE

19    WOULD WANT TO MODIFY EVERYTHING HE -- YOU KNOW, THE RELEVANT

20    PIECES OF WHAT HE HAS SAID IF IT REQUIRES MODIFICATION.

21         THE COURT:  OKAY.  YOU WERE TALKING ABOUT THE NATURE

22    OF THE TRIBUNAL WHEN I INTERRUPTED YOU.  GO AHEAD.

23         MR. BORNSTEIN:  NO, LOOK, THIS WAS SUPPOSED TO BE A

24    DIALOGUE, YOUR HONOR, SO DON'T APOLOGIZE FOR INTERRUPTING ME,

25    PLEASE.

1     BUT THE THREE THINGS I THINK GO TOGETHER, THE NATURE OF

2     THE TRIBUNAL, THE CHARACTER OF THE PROCEEDINGS WHERE IT IS AN

3     ADVERSARIAL PROCESS WHERE EACH SIDE HAS ITS ROLE, AS THE COURT

4     SAYS, AND THEN THE RECEPTIVITY ISSUE.

5     BUT I THINK THE THREE POINTS, THEY ARE WRAPPED TOGETHER AS

6     A SINGLE FACTOR UNDER INTEL, AND THEY DO RELATE TO ONE ANOTHER.

7     SO IF THE COURT IS THINKING, YOU KNOW, I'VE NOW HEARD FROM

8     THE DECISION MAKER WHO DOESN'T WANT THE EVIDENCE, I THINK THAT

9     IT -- THAT WOULD BE DIFFERENT FROM A SITUATION THAT WE ACTUALLY

10    HAVE WHERE THE COURT HAS HEARD FROM THE EXAMINER WHO IS

11    INVOLVED IN A PROCEEDING OF THIS CHARACTER BEFORE A TRIBUNAL OF

12    THIS NATURE.

13    THE COURT:  OH, AND NOW THAT I THINK ABOUT IT, THE

14    CLEAR AND ADVERSARIAL POSITION TAKEN BY THE EXAMINER TO YOUR

15    REQUEST FOR THIS INFORMATION PERHAPS SHEDS A LITTLE BIT OF

16    LIGHT ON HOW OPEN AND RECEPTIVE THE EXAMINER IS TO GETTING NEW

17    INFORMATION THAT MIGHT CHANGE HIS OR HER PERSPECTIVE, RIGHT?

18    MR. BORNSTEIN:  THAT --

19    THE COURT:  I'M JUST SAYING.

20    MR. BORNSTEIN:  THAT MAY BE SO, YOUR HONOR.

21    THE COURT:  I'M JUST SAYING.

22    OKAY.  GO AHEAD.

23    MR. BORNSTEIN:  SO I'LL MOVE TO THE THIRD FACTOR

24    THEN --

25    THE COURT:  SURE.

1          MR. BORNSTEIN:  -- WHERE I THINK THIS ISSUE CAN ALSO

2     BE RELEVANT AND MAY BE IMPORTANT TO THE WAY THE COURT THINKS

3     ABOUT THIS, WHICH IS WHETHER OR NOT WE'RE CIRCUMVENTING

4     PROCEDURES.

5          AND THE EXAMINER'S LETTER DOES SAY, "HEY, LOOK, THERE ARE

6     PROCEDURES THAT WE HAVE UNDER KOREAN LAW TO GET THIS

7     INFORMATION."

8          AND HERE'S WHERE THAT DISTINCTION OF DIFFERENT BUCKETS OF

9     INFORMATION BECOMES, I THINK, VERY RELEVANT, BECAUSE WHAT THE

10    EXAMINER IS TALKING ABOUT IS THE APPENDED DATA.

11          THE COURT:  NOT THE CASE FILE AS A WHOLE?

12          MR. BORNSTEIN:  THAT'S CORRECT.  AND IT'S -- IF

13    YOU --

14          THE COURT:  AND CERTAINLY NOT INFORMATION THAT THE

15    EXAMINER HAS NEVER SEEN.

16          MR. BORNSTEIN:  WELL, EXACTLY.  EXACTLY.

17          BUT IF YOUR HONOR TAKES THE TIME TO LOOK BACK AT THE

18    EXAMINER'S LETTER, IT IS CLEAR -- IT'S AT THE TOP OF THE SECOND

19    PAGE -- IT SAYS THAT QUALCOMM IS ENTITLED TO OBTAIN COPIES OF

20    DOCUMENTS AND DATA SUPPORTING THE REPORT.

21          THE COURT:  RIGHT.  SO IF YOU WANT TO GIVE THEM STUFF

22    THAT HELPS THEM PROVE UP THEIR CASE AGAINST YOU, BY ALL MEANS,

23    FEEL FREE.

24          MR. BORNSTEIN:  YES.  AND THE MATERIALS THAT WE'RE

25    ENTITLED TO OBTAIN UNDER KOREAN LAW ARE THE ONES THAT ARE

1    ATTACHED TO THE REPORT, AND IT'S THE MATERIALS THAT WERE

2    SUBMITTED TO THE COMMITTEE BY THE EXAMINER TO SUPPORT THE

3    PRELIMINARY FINDING OF ANTICOMPETITIVE ACTIVITY.

4         SO HE'S -- HE'S VERY CLEAR THAT WHAT WE'RE ENTITLED TO IS

5    THE STUFF THAT'S ATTACHED TO THE REPORT.

6         THE COURT:  I SEE.  TO BE CLEAR, HE'S NOT TALKING

7    ABOUT YOU ARE SUBMITTING ADDITIONAL.

8         HE'S SAYING, IF YOU WANT TO SEE THE STUFF THAT HELPS PROVE

9    UP THESE CLAIMS, IN OUR VIEW, YOU MAY BE ENTITLED TO THAT UNDER

10   KOREAN LAW.

11        MR. BORNSTEIN:  WELL, MAYBE I'M --

12        THE COURT:  PLEASE.

13        MR. BORNSTEIN:  -- I'M NOT BEING CLEAR ABOUT THIS.

14        HE'S SAYING -- HE'S CITING SPECIFIC PROVISIONS OF KOREAN

15   LAW, AND HE'S SAYING UNDER KOREAN LAW, QUALCOMM IS ENTITLED TO,

16   AND THE THINGS THAT HE SAYS WE ARE ENTITLED TO ARE THE

17   DOCUMENTS AND DATA SUPPORTING THE KFTC EXAMINER'S REPORT AND

18   THE MATERIALS THAT WERE SUBMITTED TO THE KFTC COMMITTEE.

19        THE MATERIALS SUBMITTED TO THE COMMITTEE ARE THE SAME

20   SETS.  IT'S THE APPENDED DATA.  THEY GET THE SAME THINGS WE DO.

21   THEY DON'T HAVE THE FULL RECORD, EITHER.  THEY ARE OPERATING,

22   YOU KNOW, AT THE SAME INFORMATION DEFICIT THAT WE HAVE --

23        THE COURT:  RIGHT.

24        MR. BORNSTEIN:  -- WHICH -- THAT -- IT APPEARS IN

25   SAMSUNG'S BRIEF TO SAY THE COMMITTEE GETS WHAT THE EXAMINER

1    GIVES IT, AND THAT'S OUR UNDERSTANDING OF THE PROCEDURE AS

2    WELL.

3         SO WHAT WE'RE ENTITLED TO GET, AND WHAT WE'RE SUPPOSEDLY

4    CIRCUMVENTING, IS THE RIGHT TO GET THE APPENDED DATA.

5         WELL, WE'RE NOT HERE PRESSING YOUR HONOR TO ENTER AN ORDER

6    TO GIVE US THE THINGS THAT WE'VE ALREADY ASKED THE KOREANS FOR

7    IN TERMS OF APPENDED DATA.

8         WE DON'T HAVE A PROCEDURE, UNDER KOREAN LAW, TO ASK FOR

9    THE REST OF THE CASE FILE, AND AS YOUR HONOR SAYS, THERE'S

10   CERTAINLY NO PROCEDURE TO ASK FOR THE THINGS THAT AREN'T IN THE

11   CASE FILE WHICH ARE IN THE POSSESSION OF THE FOLKS WHO ARE

12   HERE.

13        THE COURT:  SO THAT'S REALLY, THEN, THE THRUST OF

14   WHAT YOU'RE FOCUSSING ON IN THIS REQUEST?

15        MR. BORNSTEIN:  WELL, THOSE LATTER TWO CATEGORIES.

16        THE COURT:  YES.

17        MR. BORNSTEIN:  ABSOLUTELY RIGHT.

18        THE COURT:  OKAY.

19        MR. BORNSTEIN:  AND BOTH OF THEM, BOTH OF THEM ARE

20   IMPORTANT, WHAT THE EXAMINER HAS AND WHAT THE EXAMINER DOESN'T

21   HAVE.

22        THE COURT:  WELL, IF WE COULD THEN PERHAPS FOCUS ON

23   THE MATERIALS THAT THE EXAMINER DOESN'T HAVE -- I FORGET IF

24   THIS IS FACTOR 2 OR FACTOR 3, IT MAY BE FACTOR 3, BUT IT'S

25   GETTING CLOSE TO THE END OF THE AFTERNOON FOR ME, SO I

1    APOLOGIZE FOR MY CONFUSION.

2         IT WOULD SEEM TO ME THERE IS A HEALTHY TENSION BETWEEN

3    PERMITTING THIS TYPE OF DISCOVERY ON THIRD PARTIES FOR

4    INFORMATION THAT IS NOWHERE TO BE FOUND WITHIN THE EXAMINER'S

5    FILES, OR ANY OTHER FILE IN THE KFTC, AND, YOU KNOW, WHATEVER

6    RESTRICTIONS THE KOREAN PEOPLE HAVE DECIDED TO IMPOSE ON THIS

7    PROCESS FOR THAT TYPE OF DISCOVERY.

8         HOW DO I WORK THROUGH THAT PROBLEM?

9              MR. BORNSTEIN:  SO THERE ARE TWO ASPECTS OF THE INTEL

10   CASE THAT I WILL DIRECT YOUR HONOR TO REVIEW ON THAT SCORE.

11             THE COURT:  OKAY.

12             MR. BORNSTEIN:  THE FIRST IS IT'S VERY CLEAR IN

13   INTEL, THE COURT REJECTED THE IDEA, OUTRIGHT, OF A FOREIGN

14   DISCOVERABILITY BAR.

15        SO THE FACT THAT THERE MAY NOT BE A PROCEDURE UNDER KOREAN

16   LAW FOR THIS KIND OF DISCOVERY DOESN'T MEAN THAT IT SHOULDN'T

17   BE SOMETHING THAT'S AVAILABLE UNDER 1782.

18             THE COURT:  I'M SORRY FOR INTERRUPTING YOU AGAIN.

19        SO ARE YOU SAYING THEN THAT THE RIGHT WAY TO READ THAT

20   PIECE OF THE INTEL DECISION IS TO SAY, WELL, IT WOULD BE ONE

21   THING IF THE KOREAN LAW WERE CLEAR THAT QUALCOMM DOES NOT GET

22   AND MAY NOT GET X, Y, OR Z; BUT IT'S ANOTHER THING ALTOGETHER

23   WHERE THE LAW IS ESSENTIALLY SILENT, LEAVING OPEN THE

24   POSSIBILITY OF AN ALTERNATIVE MECHANISM?

25             MR. BORNSTEIN:  THAT'S EXACTLY RIGHT, YOUR HONOR.

1          THE COURT:  OKAY.

2          MR. BORNSTEIN:  AND, YOU KNOW, THAT'S HOW WE THINK OF

3    THE DIFFERENCE IN SOME WAYS BETWEEN THIS CASE AND SOME OF THE

4    MICROSOFT CASES THAT HAVE BEEN CITED AS WELL, BECAUSE THERE

5    THERE WAS A, A SPECIAL PROCEDURE THAT HAD BEEN SET UP -- AND

6    JUDGE TRUMBULL TALKS ABOUT THIS -- WHERE THERE WAS A TRUSTEE

7    THAT WAS SET UP, IN LIGHT OF MICROSOFT'S VIOLATION OF THE

8    EUROPEAN ORDER, WHO HAD CERTAIN RESPONSIBILITIES, WHICH

9    INCLUDED NOT SHARING INFORMATION, AND JUDGE TRUMBULL WAS VERY

10   CAREFUL TO SAY THAT THIS IS NOT A QUESTION OF THE ORDINARY

11   APPLICATION OF THE JURISDICTION'S RULE, BUT THIS IS A SPECIFIC

12   ORDER THAT SHE DID NOT WANT TO BE IN VIOLATION OF, OR BE IN

13   TENSION WITH, RATHER THAN JUST THE ORDINARY COURSE.

14         SO WE HAVE -- HERE WE HAVE SILENCE IN TERMS OF WHETHER

15   WE'RE ENTITLED TO GET THE INFORMATION THAT'S IN THE EXAMINER'S

16   CASE FILE.

17         THE OTHER PART OF THE INTEL CASE THAT I THINK IS

18   RESPONSIVE TO YOUR HONOR'S QUESTION AND TO ONE THING THAT

19   APPEARS IN THE EXAMINER'S LETTER TO THE COURT IS THE ISSUE OF

20   PARITY AND WHETHER IT'S FAIR FOR US TO HAVE THINGS THAT THE

21   EXAMINER DOESN'T HAVE.

22         THE COURT:  UM-HUM.

23         MR. BORNSTEIN:  AND INTEL HAS A SOLUTION TO THAT

24   PROBLEM, WHICH IS YOUR HONOR CAN CONDITION THE PROVISION OF

25   DISCOVERY TO US ON OUR SHARING IT WITH THE COMMITTEE, WITH THE

1    EXAMINER.

2        THAT'S A -- THAT'S AN EASY FIX AND I'M EMPOWERED TO

3    REPRESENT THAT WE ARE PREPARED, WE ARE PREPARED TO DO THAT.

4        THE COURT:  SO YOU'RE SAYING YOU CERTAINLY WOULD NOT

5    OBJECT TO MY SIMPLY ORDERING THAT, RATHER THAN RELYING UPON

6    WHATEVER MECHANISMS UNDER KOREAN LAW WOULD OBLIGATE QUALCOMM TO

7    SHARE THAT INFORMATION, IF THERE EVEN ARE SUCH MECHANISMS?

8        MR. BORNSTEIN:  YES, THAT'S RIGHT.

9        THE COURT:  OKAY.

10       MR. BORNSTEIN:  THAT, I THINK, TAKES THAT PROBLEM

11   COMPLETELY OFF THE TABLE.

12       THE COURT:  OKAY.

13       MR. BORNSTEIN:  SO THOSE ARE THE THINGS THAT I THINK

14   ARE SIGNIFICANT WITH RESPECT TO THE EXAMINER'S LETTER.

15       I DON'T KNOW IF THE COURT HAS OTHER CONCERNS OR QUESTIONS

16   THAT RELATE TO THE LETTER ITSELF.

17       THE COURT:  WELL, NO, NO.  I THINK YOU'VE ANSWERED

18   THE QUESTIONS THAT I HAVE ABOUT THE LETTER ITSELF.

19       DO YOU WANT TO SPEAK AT ALL ABOUT ANY OF THE OTHER FACTORS

20   THAT WE DIDN'T DIG INTO UNDER INTEL?  I THINK YOUR PAPERS

21   EXHAUSTIVELY ADDRESS THOSE ISSUES.

22       MR. BORNSTEIN:  YEAH.  NO.  I'M HAPPY TO CEDE ON THAT

23   ISSUE UNLESS YOUR HONOR HAS FURTHER QUESTIONS, AND IF THERE ARE

24   THINGS THAT COUNSEL ADDRESSES WITH THE COURT, IF I CAN COME

25   BACK UP AND HAVE A MOMENT, I'D APPRECIATE THAT IF IT'S

1    NECESSARY.

2          THE COURT:  I'LL CERTAINLY GIVE YOU AN OPPORTUNITY

3    FOR REBUTTAL.

4       LET ME HEAR FROM THE DEFENDANTS AND THEN I'LL GIVE YOU

5    ANOTHER CHANCE.

6          MR. BORNSTEIN:  ALL RIGHT.

7          THE COURT:  THANK YOU, MR. BORNSTEIN.

8          MR. BORNSTEIN:  THANK YOU, YOUR HONOR.

9          THE COURT:  MR. SELWYN, IT LOOKS LIKE YOU'RE UP NEXT.

10         MR. SELWYN:  GOOD AFTERNOON, YOUR HONOR.

11         THE COURT:  GOOD AFTERNOON.

12         MR. SELWYN:  AS I SAID AT THE OUTSET, THE OPPOSING

13   PARTIES HAVE ENDEAVORED TO ORGANIZE OURSELVES SUCH THAT I'LL BE

14   PRESENTING THE COMMON ARGUMENTS, AND MY EXPECTATION IS THAT

15   WHEN I CONCLUDE, THERE WILL BE SOME SPECIFIC ARGUMENTS THAT

16   PARTICULAR OPPOSING PARTIES WISH TO CLARIFY.

17         THE COURT:  I APPRECIATE YOUR EFFORT IN COORDINATING

18   THAT.  THAT MAKES IT MUCH EASIER FOR ME.

19         MR. SELWYN:  YOUR HONOR, QUALCOMM'S APPLICATION SEEKS

20   TO USE SECTION 1782 FOR AN IMPROPER PURPOSE.  QUALCOMM SEEKS TO

21   CIRCUMVENT THE ESTABLISHED PROCEDURES OF A FOREIGN REGULATORY

22   AGENCY, THE KFTC, BY ASKING THIS COURT TO AUTHORIZE DISCOVERY

23   FOR USE IN THE KFTC WHERE THE KFTC HAS INFORMED THIS COURT THAT

24   IT DOESN'T WANT THAT DISCOVERY, IT DOESN'T NEED THAT DISCOVERY,

25   AND FURTHERMORE, THAT GRANTING QUALCOMM'S REQUEST WOULD BE

1  HARMFUL TO IT NOT ONLY IN ITS CURRENT INVESTIGATION, BUT IN

2  FUTURE INVESTIGATIONS.

3        THE COURT:  MR. SELWYN, DOES IT MATTER THAT THE

4  SIGNATORY OF THE LETTER IS NOT THE COMMISSIONER, BUT RATHER THE

5  DIRECTOR GENERAL OF THE ANTIMONOPOLY BUREAU?

6        MR. SELWYN:  NOT ONE BIT.

7        THE COURT:  OKAY.

8        MR. SELWYN:  AND TO BE CLEAR, THE KFTC HAS TAKEN WHAT

9  IS REALLY AN EXTRAORDINARY STEP OF SUBMITTING THAT LETTER TO

10  YOUR HONOR TO MAKE IT CLEAR TO THE COURT WHAT ITS VIEWS ARE AS

11  TO QUALCOMM'S APPLICATIONS.

12        NOW, QUALCOMM ATTEMPTS TO DOWNPLAY THE WEIGHT AND

13  SIGNIFICANCE OF THAT SUBMISSION BY SAYING IT WAS JUST SIGNED BY

14  THE EXAMINER AS IF IT DOESN'T REFLECT THE VIEWS OF THE KFTC AS

15  A WHOLE.

16        QUALCOMM DOESN'T CITE ANYTHING TO SUPPORT THAT ARGUMENT.

17        IF YOUR HONOR REVIEWS THE DECLARATION OF ITS OWN KOREAN

18  COUNSEL, THE KOREAN COUNSEL, MR. LEE, DOESN'T SUGGEST THAT IT

19  DOESN'T REFLECT THE VIEWS OF THE KFTC AS A WHOLE.

20        THE COURT:  WELL, AND OF COURSE THERE'S ALWAYS THE

21  POSSIBILITY THAT THE EXAMINER IS ACTING ULTRA VIRES.

22        BUT IN PARAGRAPH 1 OF THE LETTER ITSELF, HE CERTAINLY

23  PURPORTS TO BE ACTING ON BEHALF OF THE COMMISSIONER.

24        MR. SELWYN:  AND NOT ONLY IN PARAGRAPH 1.  THE LETTER

25  IS ON THE KOREAN FAIR TRADE COMMISSION'S LETTERHEAD.  THE FIRST

1    SENTENCE OF THE LETTER BEGINS, "THE KOREAN FAIR TRADE

2    COMMISSION RESPECTFULLY SUBMITS THIS LETTER TO THE COURT IN

3    CONNECTION WITH THE ABOVE REFERENCED MATTERS."

4        THE LETTER THEN PROCEEDS TO ARTICULATE THE VIEWS OF THE

5    KFTC IN DETAIL AND CLOSES BY STATING THAT, QUOTE, "THE KFTC

6    APPRECIATES THE COURT CONSIDERING ITS LETTER."

7        THE COURT:  SO SHORT OF THIS GENTLEMAN GOING ROGUE

8    AND ESSENTIALLY ACTING WITHOUT ANY AUTHORITY AT ALL, I HAVE TO

9    PRESUME THAT HE HAS THE AUTHORITY THAT HE REPRESENTS HERE

10   WITHOUT ANY OTHER EVIDENCE TO THE CONTRARY; CORRECT?

11       MR. SELWYN:  FOR SURE.  THERE'S NOTHING IN THE LETTER

12   TO SUGGEST THAT THE SIGNATORY HAS GONE ROGUE.  TO THE CONTRARY.

13   EVERYTHING IN THE LETTER SUGGESTS THAT IT EXPRESSES THE

14   CONSIDERED VIEWS OF THE COMMISSION, AND THERE'S NOTHING IN

15   QUALCOMM'S PAPERS TO SUGGEST OTHERWISE.

16       QUALCOMM IS EFFECTIVELY ASKING THE COURT TO TREAT THE

17   AMICUS BRIEF AS IF IT WERE NOT SUBMITTED BY THE KFTC, BUT

18   RATHER REFLECTING THE INDIVIDUAL VIEWS OF JUST ONE STAFF

19   MEMBER.

20       AND, AGAIN, THERE'S NO BASIS FOR DOING SO.  IT IS A KFTC

21   SUBMISSION ON BEHALF OF THE KFTC.

22       THAT AMICUS BRIEF ASKS THIS COURT TO DENY QUALCOMM'S

23   APPLICATIONS IN THEIR ENTIRETY AS A MATTER OF COMITY, AFFIRMS

24   THAT THE KFTC HAS NO NEED OR NO USE FOR THE REQUESTED

25   DISCOVERY, AND, SIGNIFICANTLY, WARNS THAT IF QUALCOMM'S

1   APPLICATIONS WERE ALLOWED, IT WOULD HARM THE KFTC'S

2   INVESTIGATIVE ABILITIES BECAUSE, QUOTE, "THIRD PARTIES WOULD BE

3   HESITANT TO PROVIDE INFORMATION TO THE KFTC FOR FEAR THAT IT

4   WOULD EXPOSE THEM TO THE BURDENS OF RESPONDING TO FAR REACHING

5   U.S. DISCOVERY."

6          THE COURT:  CAN I ASK YOU ABOUT THAT STATEMENT,

7   MR. SELWYN, BECAUSE I CERTAINLY WOULD NOT BE REASONABLE IN

8   EXPECTING YOU TO READ THE MIND OF A THIRD PARTY HERE, BUT WHEN

9   I READ THAT MYSELF, I CERTAINLY WAS STRUCK BY THE LANGUAGE

10  WHICH WAS CHOSEN.

11      IT WOULD SEEM TO SUGGEST, FOR EXAMPLE, THAT THIRD PARTIES

12  WERE NOT VOLUNTARILY, OR EAGER TO COME SHARE THIS INFORMATION

13  AND THAT THEY WERE ONLY DOING SO WITH A CERTAIN SET OF

14  ASSUMPTIONS OR UNDERSTANDINGS.

15      AM I OVER READING THAT SENTENCE, OR PERHAPS AM I SEEING

16  SOMETHING ACCURATELY THERE?

17          MR. SELWYN:  WELL, THE THIRD PARTIES ARE REQUIRED TO

18  RESPOND TO THE REQUESTS OF THE KFTC.

19          THE COURT:  YEAH, THEY DON'T HAVE A LOT OF CHOICE,

20  RIGHT?  I ASSUME THEY'RE SUBJECT TO JURISDICTION IN KOREA.

21          MR. SELWYN:  THAT'S RIGHT.

22      AND AS THE DECLARATION OF MR. LEE, QUALCOMM'S KOREAN

23  ATTORNEY, SAYS OF THESE THIRD PARTIES, THE EXAMINER HAS THE

24  AUTHORITY TO REQUIRE THIRD PARTIES TO RESPOND.

25          APPLE HAS SUBMITTED A DECLARATION FROM A KFTC EXPERT AND A

1    FORMER COMMISSIONER THAT AGREES, SAYS THE SAME THING, THIRD

2    PARTIES ARE OBLIGATED TO RESPOND.

3         BUT THE KFTC OBVIOUSLY WANTS COMPLETE RESPONSES.

4         AND OTHER COMPETITION AUTHORITIES HAVE EXPRESSED THE SAME

5    CONCERN WHEN FACED WITH SIMILAR 1782 APPLICATIONS, THAT IS,

6    THAT IT COULD HAVE A SIGNIFICANT CHILLING EFFECT ON THEIR

7    ABILITY TO INVESTIGATE AND THE ASSURANCES THAT THEY PROVIDED

8    THIRD PARTIES THAT THEIR PROCEDURES WILL BE RESPECTED IF A

9    PARTY CAN USE 1782 TO CIRCUMVENT THE PROCEDURES THAT THE

10   SOVEREIGNTY HAS SET.

11        THE COURT:  AND I TAKE IT THAT IN A SITUATION LIKE

12   THIS ONE, WHETHER OR NOT ANY COMPANY IS OBLIGATED TO COMPLY

13   WITH THE REGULATORY AGENCY, THE SPIRIT, OR THE ATTITUDE THEY

14   BRING TO THAT EXERCISE MATTERS, RIGHT?

15        IT'S ONE THING TO, UNDER PENALTY OF WHATEVER, TO HAVE TO

16   TURN OVER A LICENSE AGREEMENT OR SOME COMMUNICATIONS.  IT'S

17   ANOTHER THING TO COOPERATIVELY FIGURE OUT WHAT MAKES SENSE FOR

18   THE COMMISSION TO HAVE AS IT WEIGHS THESE ISSUES, RIGHT?

19        MR. SELWYN:  I THINK THAT'S EXACTLY WHAT THE KFTC'S

20   LETTER IS STATING TO THE COURT AND THE CONCERN THAT IT'S

21   EXPRESSING IF THIS DISCOVERY WERE TO BE ALLOWED.

22        QUALCOMM HASN'T IDENTIFIED ANY CASE WHERE ANY COURT

23   ALLOWED DISCOVERY UNDER SECTION 1782 FOR USE IN A FOREIGN

24   REGULATORY PROCEEDING WHERE THE RELEVANT REGULATOR WAS

25   EXPRESSLY AND, AS IS THE CASE HERE, UNEQUIVOCALLY OPPOSED TO

1    SUCH DISCOVERY.

2         AND IT'S FOR GOOD REASON THAT SUCH DISCOVERY IS NOT

3    ALLOWED.  QUALCOMM IS ASKING THE COURT TO IGNORE PRINCIPLES OF

4    COMITY, DISREGARD THE SUBMISSION OF THE KFTC, REJECT ITS

5    EXPRESS WISHES, AND INTERFERE WITH THE REGULATORY FRAMEWORK OF

6    A FOREIGN SOVEREIGNTY.

7         WHETHER THIS COURT ULTIMATELY THINKS THAT THE PROCEDURAL

8    FRAMEWORK OF THE KFTC IS A FAIR ONE, A PROPER ONE, A GOOD ONE,

9    WITH RESPECT, DOESN'T ULTIMATELY MATTER.

10        THE COURT:  I'M GLAD YOU BROUGHT THAT UP, BECAUSE

11   THAT IS AN ISSUE THAT I'VE BEEN STRUGGLING WITH AS I WORKED MY

12   WAY THROUGH THE PAPERS, AND REALLY WHAT I'VE BEEN STRUGGLING

13   WITH IS INTEL'S GUIDANCE ON THAT QUESTION WHICH IS, I THINK,

14   WHERE I NEED TO LOOK.

15        I DIDN'T SEE ANYWHERE ANY INSTRUCTION FROM THE SUPREME

16   COURT, OR ANYBODY ELSE, TO ME TO WEIGH THE EQUITIES AND THE

17   MERITS OF THE FOREIGN PROCEDURE, RIGHT?  I HAVE TO SORT OF TAKE

18   IT AS IT IS AND FIGURE, WELL, THAT'S THE COST OF DOING BUSINESS

19   IN THAT PART OF THE WORLD, RIGHT?

20        MR. SELWYN:  TO THE CONTRARY.  YOU'RE NOT SUPPOSED TO

21   WEIGH THE EQUITIES IN THAT SENSE.  YOU'RE NOT SUPPOSED TO

22   CONSIDER THE PROCEDURAL --

23        THE COURT:  IT WOULD BE ERROR FOR ME TO DO SO IS WHAT

24   YOU'RE SAYING?

25        MR. SELWYN:  YES, YOUR HONOR, IT WOULD.  IT'S NOT THE

1   ROLE OF THIS COURT TO SUBSTITUTE ITS JUDGMENT AS TO THE

2   APPROPRIATENESS OR FAIRNESS OF THE PROCEDURAL FRAMEWORK OF THE

3   KFTC FOR ITS OWN.

4          THE COURT:  AND ON THAT POINT, MR. SELWYN, JUST TO

5   EXPLORE IT A LITTLE FURTHER, LET'S PUT KOREA TO THE SIDE

6   BECAUSE I THINK ITS PROCEDURES ARE VERY WELL DEVELOPED AND

7   GENERALLY RECOGNIZED AS BEING EXTREMELY MATURE AND THOUGHTFUL.

8          LET'S ASSUME I HAVE A COMPLETELY DIFFERENT JURISDICTION

9   ALTOGETHER, ANOTHER COUNTRY -- I WON'T EVEN PICK ONE BECAUSE I

10  DON'T WANT TO INSULT ANYBODY -- WHERE, FOR LACK OF A BETTER

11  WORD, OR TERM, A KANGAROO COURT TYPE PROCESS WHERE THERE'S NO

12  DUE PROCESS WHATSOEVER, WHERE IT'S CLEAR ONE PARTY OR ANOTHER

13  IS BEING RAILROADED INTO SOME TYPE OF POSITION.

14         UNDER -- DO YOU READ INTEL SUCH THAT UNDER THAT SITUATION,

15  OR WITH THAT TYPE OF JURISDICTION, I SHOULD CONTINUE TO AVOID

16  LOOKING AT THE PROCESS OR THE EQUITIES OF THAT JURISDICTION'S

17  APPROACH TO THE PROBLEM AND SIMPLY CONSIDER ALL THE OTHER

18  THINGS THAT ARE LAID OUT?

19         MR. SELWYN:  THERE'S NOT A CASE THAT I KNOW OF THAT

20  CONSIDERS THAT SITUATION THAT HAS EVER LOOKED AT THE FOREIGN

21  REGULATORY BODY, THE COMPETITION AUTHORITY, AND SAID THEIR

22  PROCEDURES ARE NOT FAIR AND, THEREFORE --

23         THE COURT:  I CERTAINLY DIDN'T FIND ONE, BUT IT

24  SEEMED TO ME TO BE A USEFUL KIND OF THOUGHT EXERCISE, RIGHT?

25         BECAUSE AT SOME POINT WHILE THIS STATUTE THAT CONGRESS

1       PASSED IS ABOUT COMITY AND RESPECT AND EQUITY, IT'S A STATUTE

2       THAT THIS COURT AND THIS SYSTEM HAS TO FOLLOW, AND OF COURSE

3       THIS COURT AND THIS SYSTEM ARE SUBJECT TO OUR OWN CONSTITUTION

4       AND OTHER DUE PROCESS NORMS.

5           SO I WOULD JUST BE CURIOUS ABOUT YOUR THOUGHTS ON THAT.

6               MR. SELWYN:  I MEAN, ONE WONDERS, IN THAT TYPE OF

7       HYPOTHETICAL, WHETHER THE INFORMATION WOULD EVEN BE OF ANY

8       USE --

9               THE COURT:  THAT MAY BE TRUE.

10              MR. SELWYN:  -- OR CONSIDERATION IN THAT TYPE OF

11      ENVIRONMENT --

12              THE COURT:  THAT MAY BE RIGHT.

13              MR. SELWYN:  -- IN ANY EVENT.

14              THE COURT:  OKAY.  GO AHEAD.  I'M SORRY FOR

15      INTERRUPTING YOU.

16              MR. SELWYN:  YOUR HONOR, THE KFTC'S AMICUS BRIEF AND

17      ITS EXHIBITS DESCRIBE THE ESTABLISHED DISCOVERY PROCEDURES OF

18      THE KFTC.

19          IN ADDITION, APPLE HAS SUBMITTED, FOR THE COURT'S

20      CONSIDERATION, A DECLARATION FROM PROFESSOR JEONG, WHO SERVED

21      ON THE KFTC FOR 20 YEARS.  HIS LAST POSITION THERE WAS AS A

22      COMMISSIONER.

23          WE WISH TO CALL THE COURT'S ATTENTION TO A FEW POINTS IN

24      PARTICULAR ABOUT THOSE SUBMISSIONS.

25          FIRST, THE KFTC HAS SPECIFIC REQUIREMENTS RELATED TO

1     CONFIDENTIALITY OF INFORMATION PROVIDED BY THIRD PARTIES.

2     THOSE REQUIREMENTS ARE INTENDED BOTH TO ENCOURAGE THIRD PARTIES

3     TO SUPPLY COMPLETE INFORMATION, AND TO PROTECT THEIR SENSITIVE

4     INFORMATION.

5          SECOND, THE KFTC HAS A SPECIFIC WRITTEN ESTABLISHED

6     PROCEDURE FOR HOW THE EXAMINEE OF THE INVESTIGATION MAY OBTAIN

7     DISCOVERY RELATING TO THE EXAMINER'S REPORT.

8          THIRD, THE KFTC'S PROCEDURES REFLECT A CRITICAL ROLE THAT

9     THIRD PARTIES PLAY, JUST AS THEY DO IN REGULATORY

10    INVESTIGATIONS OF COMPETITION AUTHORITIES ALL OVER THE WORLD,

11    IN THE KFTC'S INVESTIGATIVE AND ENFORCEMENT EFFORTS.

12         AS THE KFTC NOTES IN PARTICULAR IN ITS AMICUS BRIEF, THE

13    KFTC, QUOTE, "RELIES HEAVILY ON THIRD PARTIES FOR THE

14    INFORMATION IT NEEDS TO INVESTIGATE POTENTIALLY ANTICOMPETITIVE

15    CONDUCT."

16              THE COURT:  SO, MR. SELWYN, TO THE EXTENT WE WERE

17     TALKING ABOUT A REQUEST FOR INFORMATION THAT IS OUTSIDE OF THE

18     APPENDED DATA, AND PERHAPS IN THE CASE FILE OR PERHAPS NOT EVEN

19     IN THE CASE FILE TO USE THE BUCKETS THAT MR. BORNSTEIN

20     SUGGESTED I CONSIDER EARLIER, IS THE RIGHT WAY TO THINK ABOUT

21     THE PROBLEM OF CONFLICT AND UNDERMINING -- AND THE CONCERN OR

22     GOAL OF AVOIDING UNDERMINING THE KOREAN PROCEDURE TO MAYBE

23     THINK ABOUT THIS AS SORT OF A CONFLICT PREEMPTION TYPE ANALYSIS

24     WHERE I'M LOOKING TO SEE WHETHER THE KOREAN PROCEDURE OCCUPIES

25     THE FIELD OR OTHERWISE LAYS OUT THOSE MECHANISMS THAT ARE

1    AUTHORIZED FOR INVESTIGATION AND DISCOVERY AND EVERYTHING ELSE

2    BEING UNAUTHORIZED OR NOT AUTHORIZED?  IS THAT A USEFUL WAY TO

3    THINK ABOUT THIS BUCKET?

4            MR. SELWYN:  I DON'T THINK EXACTLY SO.

5            THE COURT:  OKAY.  HELP ME OUT WITH THAT.

6            MR. SELWYN:  MR. BORNSTEIN SUGGESTED THAT WHERE THERE

7    WAS SILENCE IN THE KFTC'S PROCEDURE --

8            THE COURT:  RIGHT.

9            MR. SELWYN:  -- IT WOULD BE PROPER FOR THIS COURT TO

10   ESSENTIALLY STEP IN AND ALLOW THAT TYPE OF DISCOVERY BECAUSE

11   THE KFTC DIDN'T SAY ANYTHING EXPRESSLY TO THE CONTRARY.

12       I DON'T THINK THAT'S CORRECT.  THE KFTC HAS ITS

13   PROCEDURES, AFFIRMATIVE PROCEDURES FOR WHAT YOU GET AND HOW YOU

14   GET IT, AND YOU NEED TO GO THROUGH THOSE PROCEDURES.

15       TO THE EXTENT THAT THOSE PROCEDURES DON'T PERMIT A PARTY

16   TO GET INFORMATION OR DOCUMENTS, TO COME TO THIS COURT AND ASK

17   FOR THE SAME IS TO CIRCUMVENT THOSE PROCEDURES.

18           THE COURT:  I GUESS THE RIGHT FLAVOR OR SPECIES OF

19   PREEMPTION I SHOULD HAVE REFERRED TO IS REALLY FIELD PREEMPTION

20   IN THAT SENSE, THAT THE KOREANS HAVE SET OUT WHAT THEY THINK A

21   PARTY LIKE QUALCOMM SHOULD BE ABLE TO DO TO GET WHATEVER

22   INFORMATION THEY THINK A PARTY LIKE QUALCOMM SHOULD GET, AND

23   IT'S NOT FOR ME TO CREATE ADDITIONAL AVENUES OR VECTORS INTO

24   THAT DATA SET THAT I MIGHT THINK ARE A BETTER BALANCE BETWEEN

25   INTERESTS.

1          MR. SELWYN:  THAT IS CORRECT.

2          AND WE DON'T HAVE TO GUESS BECAUSE THE KFTC HAS SUBMITTED

3     A LETTER THAT --

4          THE COURT:  THEY TOLD ME WHAT THEY THINK.

5          MR. SELWYN:  -- MAKES CRYSTAL CLEAR THAT IT DOES NOT

6     NEED, IT DOES NOT WANT THAT OTHER BUCKET OF DOCUMENTS THAT

7     QUALCOMM'S APPLICATIONS SEEK.

8          LAST POINT ABOUT THE PROCEDURE, AND PERHAPS MOST

9     FUNDAMENTALLY, IT'S FOR THE KFTC, WHICH IS A REGULATORY AGENCY

10    IN ANOTHER SOVEREIGN STATE, TO DECIDE WHAT EVIDENCE IT NEEDS

11    AND WHAT EVIDENCE IT DOES NOT NEED FOR ITS INVESTIGATIONS.

12         THE PREMISE BEHIND QUALCOMM'S APPLICATIONS IS THAT THIS

13    COURT SHOULD SUBSTITUTE ITS JUDGMENT IN PLACE OF THE KFTC AND

14    HOLD THAT CERTAIN EVIDENCE THAT THE KFTC HAS SAID IT DOESN'T

15    WANT, IT REALLY SHOULD WANT.

16         AND THAT'S, YOUR HONOR, NOT A PROPER PURPOSE FOR

17    SECTION 1782.

18         TURNING BRIEFLY TO THE INTEL FACTORS SPECIFICALLY.

19         THE COURT:  GO AHEAD.

20         MR. SELWYN:  THE FIRST INTEL FACTOR, AND THIS ONE

21    RELATES TO WHETHER THE TARGET OF THE DISCOVERY SOUGHT IS WITHIN

22    THE TRIBUNAL'S REACH, WEIGHS STRONGLY HERE AGAINST QUALCOMM'S

23    APPLICATIONS.

24         THE KFTC HAS ALREADY REQUESTED AND RECEIVED THE

25    INFORMATION THAT IT BELIEVES TO BE RELEVANT.  IN FACT, THE KFTC

1       ALREADY POSSESSES ALL THE INFORMATION SOUGHT BY THE FIRST

2       REQUEST IN EACH OF THE APPLICATIONS AND, EQUALLY IMPORTANTLY,

3       THE KFTC HAS MADE CLEAR IT DOESN'T WANT THE REST.

4           THERE'S NO BASIS TO REQUIRE PRODUCTION OF DISCOVERY

5       OSTENSIBLY TO ASSIST A FOREIGN TRIBUNAL WHERE THAT FOREIGN

6       TRIBUNAL SAYS "IT'S NOT GOING TO ASSIST US."

7           IN ADDITION, AS THE NUMEROUS CASES THAT THE OPPOSING

8       PARTIES HAVE CITED SHOW, COURTS HAVE CONSISTENTLY FOUND THAT

9       THE FIRST INTEL FACTOR WEIGHS AGAINST 1782 DISCOVERY WHERE, AS

10      HERE, THE DISCOVERY SOUGHT IS OBTAINABLE DIRECTLY BY THE

11      FOREIGN TRIBUNAL.

12          THE COURT:  I.E., THEY COULD USE KOREAN PROCEDURE TO

13       GET WHATEVER INFORMATION IS THE SUBJECT OF THIS APPLICATION

14       FROM THE PARTIES, THIRD PARTIES.

15          MR. SELWYN:  EXACTLY.  AND I DON'T THINK THERE'S ANY

16       DISPUTE ABOUT THAT.  BOTH THE KFTC EXPERTS OF QUALCOMM AND

17       APPLE HAVE SAID THAT THE KFTC HAS AUTHORITY NOT ONLY TO REQUIRE

18       THE EXAMINEE TO PRODUCE DOCUMENTS, BUT TO REQUIRE THIRD PARTIES

19       TO PRODUCE DOCUMENTS AS WELL.

20          AND THEREFORE, BECAUSE THE DOCUMENTS SOUGHT ARE WITHIN THE

21       KFTC'S REACH, THE FIRST INTEL FACTOR WEIGHS STRONGLY AGAINST

22       QUALCOMM HERE.

23          THE FACT THAT THIRD PARTIES DO NOT HAVE THE ABILITY OR

24       RIGHT TO ATTEND THE EVENTUAL HEARING, THIS IS SOMETHING THAT

25       QUALCOMM MAKES MUCH OF IN ITS REPLY BRIEF, IN NO WAY DIMINISHES

1    THE FACT THAT THE KFTC CAN REQUIRE THESE THIRD PARTIES TO

2    PRODUCE DOCUMENTS AS IT, IN FACT, HAS.

3            THE COURT:  SO PERHAPS YOU ARE SUGGESTING THAT THIS

4    TAKES US BACK TO THIS NOTION OF WHOSE JOB IT IS TO FIGURE OUT

5    WHAT'S FAIR IN THIS KOREAN PROCEDURE.  WHILE I MAY NOT LIKE THE

6    FACT THAT QUALCOMM DOESN'T GET TO SEE THAT WHICH THE EXAMINER

7    CAN SEE OR SUBPOENA OR SECURE, THAT'S NOT REALLY MY CALL IS

8    WHAT YOU'RE SAYING.

9            MR. SELWYN:  WITH RESPECT, THAT'S CORRECT.

10           THE COURT:  OKAY.

11           MR. SELWYN:  QUALCOMM ALSO ARGUES THAT NONE OF THE

12   CASES CITED BY THE OPPOSING PARTIES INVOLVE A SITUATION WHERE

13   ONE PARTY TO A FOREIGN PROCEEDING HAS THE POWER TO REQUEST

14   DOCUMENTS, BUT THE OTHER DOES NOT.  QUALCOMM SAYS THAT'S THE

15   SITUATION THAT IT'S IN.

16       THAT'S NOT RIGHT.  THE IN RE: MICROSOFT DECISION, WHICH

17   INVOLVED PROCEEDINGS BEFORE THE E.C., THE EUROPEAN COMMISSION,

18   THE COURT CONSIDERED THE SITUATION WHERE, BECAUSE OF THE E.C.

19   SPECIFIC PROOF GATHERING RESTRICTIONS, MICROSOFT MIGHT NOT BE

20   ABLE TO OBTAIN ACCESS TO ALL THE SAME INFORMATION THAT THE E.C.

21   HAD, EXACTLY THE ISSUE THAT QUALCOMM IS POSITING HERE.

22           AND CONTRARY TO THE SUGGESTION IN QUALCOMM'S REPLY BRIEF

23   THAT THIS SHOULD BE REASON TO ALLOW DISCOVERY UNDER

24   SECTION 1782, THE COURT IN THAT CASE FOUND THAT, QUOTE, "THIS

25   ALONE WEIGHS HEAVILY AGAINST ALLOWING THE REQUESTED DISCOVERY."

1          QUALCOMM ALSO INCORRECTLY ARGUES IN ITS REPLY BRIEF THAT

2     THE FIRST INTEL FACTOR WEIGHS IN ITS FAVOR BECAUSE, QUOTE, "THE

3     EXAMINER'S AMICUS LETTER STATES THAT SECTION 1782 PROCEEDINGS

4     AFFORD ACCESS TO MORE INFORMATION THAN THE KFTC HAS THE ABILITY

5     TO OBTAIN."

6          THE AMICUS LETTER DOESN'T ACTUALLY SAY THAT.

7          BUT EVEN IF IT WERE THE CASE, IT WOULD NOT WEIGHT THE

8     INTEL FACTORS IN QUALCOMM'S FAVOR.

9          TO THE CONTRARY, AS THE COURT WROTE IN THE IN RE: KREKE

10    IMMOBILIEN CASE, QUOTE, "IT WOULD CREATE A PERVERSE SYSTEM OF

11    INCENTIVES -- ONE COUNTER TO EFFICIENCY AND COMITY GOALS OF

12    1782 -- TO ENCOURAGE FOREIGN LITIGANTS TO SCURRY TO U.S. COURTS

13    TO PREEMPT DISCOVERY DECISIONS FROM TRIBUNALS WITH CLEAR

14    JURISDICTIONAL AUTHORITY."

15         SECOND INTEL FACTOR, AND THIS AGAIN RELATES TO --

16              THE COURT:  WE ALL KNOW WHICH U.S. COURT BEARS THE

17     BRUNT OF THAT, RIGHT?

18              MR. SELWYN:  YES, YOUR HONOR.

19         THE SECOND INTEL FACTOR RELATES TO THE RECEPTIVITY OF THE

20    FOREIGN TRIBUNAL TO U.S. JUDICIAL ASSISTANCE AND THE NATURE OF

21    THAT TRIBUNAL.

22         AGAIN, HERE WE DON'T HAVE TO SPECULATE WHETHER THE

23    REQUESTED DISCOVERY WILL AID THE KFTC.  THE KFTC SAYS IT WILL

24    NOT.  THAT DECISION SHOULD BE RESPECTED.

25         U.S. COURTS HAVE CONSISTENTLY DENIED 1782 REQUESTS WHERE,

1    AS HERE, THE FOREIGN REGULATORY AUTHORITY HAS DISCLAIMED ANY

2    INTEREST AND ASSISTANCE FROM THE U.S. COURT.

3         IN EFFECT, QUALCOMM IS ASKING THIS COURT TO SUBSTITUTE ITS

4    JUDGMENT FOR THE KFTC WITH RESPECT TO PROCEDURES TO FOLLOW IN

5    DETERMINING WHETHER A VIOLATION OF KOREAN LAW HAS OCCURRED.

6         DISREGARDING THE KFTC'S VIEW IN THIS RESPECT WOULD UPSET

7    COMMERCIAL COMITY, AND AS THE KFTC WARNS, MAKE IT MORE

8    DIFFICULT FOR THE KFTC TO DO ITS JOB BY ENFORCING KOREAN

9    ANTITRUST LAWS.

10        STATED ANOTHER WAY, ALLOWING THE DISCOVERY THAT QUALCOMM

11   HAS SOUGHT WOULD PIT THIS COURT AGAINST THE KFTC.

12        IN ITS REPLY BRIEF, QUALCOMM ARGUES THAT SECTION 1782 IS

13   INTENDED TO ASSIST LITIGANTS BEFORE FOREIGN TRIBUNALS, AS WELL

14   AS THE TRIBUNALS THEMSELVES.

15        WITH RESPECT, THAT MISAPPREHENDS THE INTEL FACTORS.  THE

16   FIRST INTEL FACTOR FOCUSES ON THE AVAILABILITY OF THE EVIDENCE

17   TO THE FOREIGN TRIBUNAL, NOT TO THE LITIGANT.

18        THE SECOND --

19            THE COURT:  THAT IS AN ISSUE -- MR. SELWYN, I MUST

20    CONFESS, I AGREE WITH YOUR RECITATION OF THE HOLDING IN INTEL

21    ON THAT POINT.

22        I'VE JUST NEVER UNDERSTOOD IT, BECAUSE IT WOULD SEEM TO ME

23   THAT IN ALMOST, IF NOT EVERY SITUATION LIKE THIS, THE

24   INVESTIGATING AGENCY IN THE FOREIGN JURISDICTION HAS ALL SORTS

25   OF TOOLS AT ITS DISPOSAL TO GET AT THE INFORMATION IT WANTS.

1        IT'S ALWAYS GOING TO BE, ISN'T IT, THE TARGET OF THE

2   INVESTIGATION THAT PERHAPS HAS A MORE SIGNIFICANT INTEREST IN

3   PURSUING OTHER INFORMATION THAT EITHER IS BEFORE THE AGENCY,

4   BUT NOT PRESENTED, OR NOT BEFORE THE AGENCY AT ALL.

5        SO DOES THAT FACTOR -- DARE I SAY IT? -- MAKE MUCH SENSE

6   AS CRAFTED?

7            MR. SELWYN:  IT DOESN'T IN THE CONTEXT OF THE FOREIGN

8   REGULATORY INVESTIGATION.

9        AND IN THE CONTEXT OF THE FOREIGN REGULATORY

10  INVESTIGATION, WHEN YOU APPLY THE INTEL FACTORS, IT REALLY

11  DOESN'T MATTER WHAT THE LITIGANT WANTS BECAUSE THE LITIGANT IS

12  ALWAYS GOING TO BE COMING TO THE COURT SAYING THAT THEY NEED

13  THE INFORMATION, THEY WANT THE INFORMATION BECAUSE THEY CAN'T

14  GET IT --

15          THE COURT:  RIGHT.

16          MR. SELWYN:  -- IN THE FOREIGN JURISDICTION.

17          THE COURT:  WE WOULDN'T BE HERE IF, FOR EXAMPLE, A

18  PARTY LIKE QUALCOMM COULD GET THIS INFORMATION FROM KOREA

19  THROUGH THE KOREAN PROCESS, RIGHT?

20          MR. SELWYN:  PRECISELY.

21      THIRD INTEL FACTOR, THIS RELATES TO WHETHER DISCOVERY

22  SOUGHT WILL CIRCUMVENT THE FOREIGN PROOF GATHERING LIMITS OR

23  OTHER POLICIES.

24      THAT, TOO, WE BELIEVE COMPELS DENIAL OF THE APPLICATIONS.

25      QUALCOMM'S REQUEST FOR PRODUCTION NUMBER 1 SEEKING

1    COMMUNICATIONS WITH THE KFTC IS, YOUR HONOR, A DIRECT ATTEMPT

2    TO MAKE AN END RUN AROUND THE ESTABLISHED PROCEDURES OF THE

3    KFTC.

4         THE KFTC HAS RULES REGARDING HOW SUCH REQUESTS ARE HANDLED

5    AND THIS COURT SHOULD RESPECT THOSE RULES.

6         THE SAME CONCERNS RELATE TO QUALCOMM'S OTHER DISCOVERY

7    REQUESTS WHICH GO FAR BEYOND WHAT THE KFTC HAS DEEMED RELEVANT.

8         THE CRITICAL POINT, AGAIN, IS THAT IT'S FOR THE KFTC

9    ITSELF TO DECIDE WHAT IS RELEVANT.

10        THEREFORE, THESE OTHER DISCOVERY REQUESTS ARE LIKEWISE AN

11   ATTEMPT TO MAKE AN END RUN AROUND THE KFTC PROCEDURES.

12        IN ITS REPLY BRIEF, QUALCOMM SEEMS TO SUGGEST THAT THE

13   OPPOSING PARTIES ARE BEING CONTRADICTORY IN SUGGESTING THAT, ON

14   THE ONE HAND, QUALCOMM SHOULD PURSUE THE PROCEDURES OF THE

15   KFTC, WHILE AT THE SAME TIME ACKNOWLEDGING THAT THOSE

16   PROCEDURES MAY NOT SUPPLY QUALCOMM EVERYTHING IT WANTS.

17        THERE IS NO CONTRADICTION.  TO THE CONTRARY.  IF THE KFTC

18   PROCEDURES DO NOT ALLOW QUALCOMM TO OBTAIN THE DISCOVERY IT

19   WANTS, QUALCOMM SHOULD NOT BE ABLE TO CIRCUMVENT THAT THROUGH

20   SECTION 1782.

21        THE COURT:  PUT ANOTHER WAY PERHAPS, ULTIMATELY

22    THAT'S QUALCOMM'S PROBLEM?

23        MR. SELWYN:  EXACTLY.

24        THE COURT:  OKAY.

25        MR. SELWYN:  SO QUALCOMM'S APPLICATIONS, 1782

1    APPLICATIONS WOULD CREATE PRECISELY THE KIND OF INTERFERENCE

2    WITH THE KFTC PROCEDURES THAT THE UNITED STATES AND KOREA HAVE

3    BEEN WORKING ACTIVELY TO AVOID.

4        WE CITED IN OUR PAPERS THE MEMORANDUM OF UNDERSTANDING

5    THAT THE U.S. DEPARTMENT OF JUSTICE AND THE FEDERAL TRADE

6    COMMISSION SIGNED LAST SEPTEMBER WITH THE KFTC IN WHICH THE

7    U.S. AND KOREAN COMPETITION AUTHORITIES AGREED TO GIVE, QUOTE,

8    "CAREFUL CONSIDERATION TO THE ENFORCEMENT OBJECTIVES AND

9    IMPORTANT INTERESTS OF THE OTHER COUNTRY'S COMPETITION

10    AUTHORITY OR AUTHORITIES IN CONDUCTING ITS ENFORCEMENT

11    EFFORTS."

12        GRANTING QUALCOMM'S APPLICATION HERE WOULD BE A CLEAR BLOW

13    TO THOSE OBJECTIVES.

14        THIS COURT'S OBSERVATION, WHEN CONSIDERING THE THIRD

15    FACTOR IN THE IN RE: SAMSUNG ELECTRONICS 1782 CASE IS ALSO

16    INSTRUCTIVE.  THERE THE COURT FOUND THAT THE THIRD INTEL FACTOR

17    WEIGHED AGAINST THE 1782 APPLICATION BECAUSE OTHERWISE THE

18    COURT WOULD BE IN THE, QUOTE, "AWKWARD POSITION OF POTENTIALLY

19    UNDERMINING A FOREIGN COURT'S MANAGEMENT OF A CASE."

20        THAT CASE INVOLVED A COURT, NOT A COMPETITION AUTHORITY.

21    THE CONCERN IS CONSIDERABLY HEIGHTENED IN THE SITUATION OF A

22    COMPETITION AUTHORITY.

23        LAST, THE FOURTH INTEL FACTOR, THAT RELATES TO WHETHER THE

24    REQUESTS ARE UNDULY INTRUSIVE AND BURDENSOME.  I ALMOST

25    HESITATE TO ADDRESS THIS FACTOR BECAUSE IT'S NOT ONE THE COURT

1    NEEDS TO CONSIDER AT ALL SHOULD IT FIND THAT THE FIRST THREE

2    INTEL FACTORS WEIGH AGAINST THE 1782 APPLICATION.

3           BUT JUST BRIEFLY, IN CONSIDERING THE FOURTH FACTOR, THE

4    COURT CONSIDERS WHETHER REQUESTS ARE UNDULY INTRUSIVE OR

5    BURDENSOME, WHETHER THEY'RE NARROWLY TAILORED, WHETHER THEY

6    REQUEST CONFIDENTIAL INFORMATION, OR APPEAR TO BE A BROAD

7    FISHING EXPEDITION.

8             THE COURT:  MR. SELWYN, I DID HAVE ONE QUESTION ABOUT

9    THAT FACTOR, WHICH IS THIS:  AS I UNDERSTAND IT, WHEN THE

10   SUPREME COURT ISSUED ITS DECISION IN INTEL, WE WERE OPERATING

11   UNDER A DIFFERENT REGIME IN TERMS OF THE FEDERAL RULES OF CIVIL

12   PROCEDURE AND THE ANALYSIS OF BENEFIT AND BURDEN THAT A

13   DISTRICT COURT MUST UNDERTAKE WHEN PRESENTED WITH AN

14   APPROPRIATE MOTION.

15          SINCE AT LEAST DECEMBER 1ST, ANYWAY, WE NOW HAVE A NEW

16   REGIME UNDER THE FEDERAL RULES FOR CONSIDERING PROPORTIONALITY

17   IN BOTH THE REQUESTS THEMSELVES AND IN ANY ORDER GRANTING

18   RELIEF ON THOSE REQUESTS.

19          WOULD YOU SUGGEST PERHAPS THAT IN 2016, POST-AMENDMENTS,

20   THAT IN ARTICULATING OR EXPLAINING MY REASONING, PERHAPS I

21   OUGHT TO UPDATE THAT FACTOR TO REFLECT WHAT'S NOW THE RULE

22   ACROSS THE BOARD IN ALL CASES?

23             MR. SELWYN:  SO CANDIDLY, WE DID LOOK TO SEE WHETHER

24   THERE ARE ANY CASES THAT APPLIED.

25             THE COURT:  I TRIED.  I COULD NOT FIND ANY.

1          MR. SELWYN:  AND WE COULD NOT FIND ANY, EITHER.

2          THE COURTS OFTEN DO LOOK TO THE RULE 34 STANDARD IN

3     ASSESSING THE INTEL FACTOR 4.  AGAIN, WE DON'T THINK YOU NEED

4     TO REACH THE INTEL FACTOR 4 BECAUSE CONSIDERATIONS WOULD, WE

5     THINK, APPLY.

6          THE COURT:  AND I TAKE IT WHETHER OR NOT I EXPRESSLY

7     APPLY THOSE CONSIDERATIONS UNDER RULE 34, OR I THINK PROBABLY

8     PERHAPS MORE IMPORTANTLY RULE 26, IN YOUR VIEW, I SHOULD GET TO

9     THE SAME PLACE, THAT THE ANALYSIS ULTIMATELY TAKES ME TO THE

10    SAME CONCLUSION.

11         MR. SELWYN:  ABSOLUTELY.  ABSOLUTELY.

12         IN DISCUSSING THE FOURTH INTEL FACTOR, QUALCOMM REPEATEDLY

13    SUGGESTS THAT THE PARTIES SHOULD RESOLVE THE ISSUES OF BURDEN,

14    OVERBREADTH, AND CONFIDENTIALITY.  AFTER THE SUBPOENAS ISSUE,

15    THERE CAN BE A MEET AND CONFER AND SO FORTH.

16         THAT'S AN ARGUMENT THAT THIS COURT HAS CORRECTLY REJECTED

17    IN THE PAST IN THE IN RE: EX PARTE APPLICATION OF NOKIA

18    DECISION, A 2013 DECISION.  YOUR HONOR CORRECTLY WROTE, "WHILE

19    NOKIA SUGGESTS THAT ANY UNDUE BURDEN CAN BE MITIGATED IN MEET

20    AND CONFER OR ADDRESSED IN A MOTION TO QUASH, NOKIA'S POSITION

21    OVERLOOKS ITS BURDEN TO COME TO THE COURT WITH NARROWLY

22    TAILORED REQUESTS IN THE FIRST INSTANCE.  IT IS NO SUBSTITUTE

23    TO KICK THE CAN DOWN THE ROAD."

24         THE COURT:  THAT SOUNDS LIKE SOMETHING I WOULD SAY.

25     SO YOU'RE SAYING I SHOULD CONTINUE TO REASON IN THAT SAME

1  FASHION?

2       MR. SELWYN:  THAT'S RIGHT, YOUR HONOR.

3       AND I'LL LET THE OPPOSING PARTIES ADDRESS THIS FACTOR IF

4  THEY WANT WITH RESPECT TO THEIR PARTICULAR CIRCUMSTANCES.

5       IN BRIEF WITH RESPECT TO APPLE, REQUESTS FOR PRODUCTION 2

6  AND 3 SEEK COMMUNICATIONS BETWEEN APPLE AND QUALCOMM OVER THE

7  LAST 11 YEARS.  THOSE ARE COMMUNICATIONS, TO THE EXTENT THERE

8  ARE ANY, THAT QUALCOMM SHOULD, OF COURSE, ITSELF HAVE.

9       REQUEST FOR PRODUCTION NUMBER 4 SEEKS FROM APPLE

10  CONFIDENTIAL DOCUMENTS FILED OR SERVED BY SAMSUNG IN MULTIPLE

11  LITIGATIONS BETWEEN THE PARTIES.  YOUR HONOR IS OBVIOUSLY VERY

12  FAMILIAR WITH THOSE LITIGATIONS.

13       RESPONDING TO THAT REQUEST WITH ITS BREADTH WOULD BE A

14  VERY ONEROUS TASK.  I HAVE PUT BEFORE YOUR HONOR A DECLARATION

15  IDENTIFYING SOME OF THE STEPS THAT WOULD BE INVOLVED, AND YOUR

16  HONOR IS OBVIOUSLY VERY, VERY FAMILIAR WITH THE PROTECTIVE

17  ORDER ISSUES THAT WOULD BE INVOLVED AS WELL.

18       THERE ARE ADDITIONAL REASONS THAT QUALCOMM'S REQUESTS ARE

19  UNDULY INTRUSIVE AND BURDENSOME AS SET FORTH IN OUR PAPERS, AND

20  WE'LL REST ON THE PAPERS.

21       AND WITH THE COURT'S PERMISSION, LET ME TURN TO COUNSEL

22  FOR THE OTHER PARTIES TO ADDRESS ARGUMENTS PARTICULAR TO THEM.

23       THE COURT:  THANK YOU.  PERMISSION GRANTED.  LET'S

24  HEAR FROM OTHERS.

25       GOOD AFTERNOON.  WELCOME.

1          MR. SIMMONS:  GOOD AFTERNOON, YOUR HONOR.

2     IAN SIMMONS, O'MELVENY & MYERS, FOR THE SAMSUNG ENTITIES.

3          WITH THE COURTS'S INDULGENCE, I'D LIKE TO ADDRESS INTEL

4     FACTORS 2 AND 4 BEFORE I MOVE TO THE OTHERS.

5          THE COURT:  GO AHEAD.

6          MR. SIMMONS:  THE REASON I DO SO, YOUR HONOR, IS NOT

7     TO MAKE THIS AN OVERLY LONG AFTERNOON -- AND THANK YOU TO THE

8     COURT AND MR. RIVERA FOR HELPING THE PARTIES GET ORGANIZED BY

9     THE STIPULATION.

10          THE REASON I WANT TO AMPLIFY SOME OF THE INTEL FACTORS IS

11     THAT THIS IS CLEARLY AN IMPORTANT MATTER FOR ALL THE PARTIES.

12          BUT MAYBE IT'S THE FACT THAT I COME FROM CANADA AND I'M A

13     NATURALIZED CITIZEN, I DO WANT TO IMPRESS UPON THE COURT THAT,

14     YOU KNOW, THE KFTC -- THIS IS A LETTER FROM THE KFTC, A

15     GOVERNMENT AGENCY OF A SOVEREIGN NATION WHICH HAS SAID WHAT IS

16     HAPPENING HERE IS CIRCUMVENTION.

17          AND I JUST WANT, ON THE RECEPTIVITY POINT, I WANT TO SAY A

18     FEW WORDS ABOUT RECEPTIVITY AND THEN MOVE TO THE THIRD INTEL

19     FACTOR, THE CIRCUMVENTION.

20          ON RECEPTIVITY, YOUR HONOR, THE KFTC ITSELF HAS SPOKEN

21     VERY CLEARLY.  WHEN YOU LOOK AT THE HISTORY OF THE KFTC, IT WAS

22     MODELED AFTER NOT THE DEPARTMENT OF JUSTICE IN THE

23     UNITED STATES WHERE I WORKED FOR FOUR YEARS, IT WAS MODELED

24     AFTER THE E.U. WHERE THERE'S AN INVESTIGATORY -- IT'S BOTH, YOU

25     KNOW, AN INVESTIGATORY BODY AND AN ADJUDICATORY, BUT IT IS A

1     SOVEREIGN AGENCY OF A SOVEREIGN NATION.

2          THE MICROSOFT CASES THAT THE PARTIES HAVE CITED TO THE

3     COURT WHERE THE E.C. INTERVENED AND OBJECTED ARE PLAINLY ON

4     POINT.

5          A COUPLE OF QUICK QUESTIONS -- A COUPLE OF QUICK

6     OBSERVATIONS FOR EVERYBODY IN THE ROOM.

7          WE ARE NOT AWARE OF A SINGLE CASE WHERE, IN THE FACE OF A

8     GOVERNMENT, A FOREIGN GOVERNMENT OBJECTION, WHERE DISCOVERY HAS

9     BEEN GRANTED.  WE'RE JUST SIMPLY NOT AWARE OF IT.

10         JUDGE WARE ON THE REMAND POINT IN AMD VERSUS INTEL MAKES

11    CLEAR THAT THE GOVERNMENT BODY HAS SAID IT'S NOT RELEVANT, IT

12    DOESN'T WANT IT, AND BY THE WAY, THEIR PROVISIONS DO NOT ALLOW

13    FOR IT.

14         ON THE -- STILL ON RECEPTIVITY.  THE CONFIDENTIALITY

15    PROVISIONS THAT ARE CITED BY THE KFTC IN THE LETTER IN I

16    BELIEVE ATTACHMENT A, EXHIBIT A, THOSE CONFIDENTIALITY

17    OBLIGATIONS ARE STATUTORY LAW UNDER KOREAN LAW.  THE KFTC IS

18    REQUIRED BY STATUTE UNDER KOREAN LAW TO WITHHOLD CERTAIN

19    BUSINESS INFORMATION, INCLUDING TRADE SECRETS.  IT CAN'T, UNDER

20    KOREAN SOVEREIGN LAW, COMPLY WITH THAT REQUEST.  IT IS ENTITLED

21    TO MAKE THE DECISION ON HOW IT'S COMPLYING WITH KOREAN LAW.

22              THE COURT:  WELL, OF COURSE, IF I WERE TO GRANT THE

23    REQUEST, THAT WOULD NOT NECESSARILY MEAN THAT ANY KOREAN LAW

24    WAS VIOLATED.  IT WOULD SIMPLY MEAN THAT, IN OBLIGATION OR

25    COMPLIANCE WITH U.S. LAW, DOCUMENTS WERE PRODUCED, RIGHT?  NO

1    ONE IS GOING TO JAIL IN KOREA IF I ORDER THESE DOCUMENTS

2    PRODUCED, RIGHT?

3            MR. SIMMONS:  WELL, BUT -- BUT REALLY THAT TAKES US

4    THEN TO THE CIRCUMVENTION POINT.

5            THE COURT:  OKAY.  THAT MAY BE TRUE, BUT JUST TO BE

6    CLEAR, I'M NOT SENDING ANYBODY AWAY.

7            MR. SIMMONS:  RIGHT.  YOUR HONOR, YEAH.  I'LL EXCUSE

8    MYSELF.  BUT -- WE'LL TAKE A BATHROOM BREAK.

9            THE COURT:  GO AHEAD.

10            MR. SIMMONS:  JUST GOING TO THE RECEPTIVITY POINT ON

11    WHETHER THE KFTC, AS A BODY OF A SOVEREIGN NATION, IS ALLOWED

12    TO BE THE GATEKEEPER ON WHAT IT CAN AND CANNOT DISCLOSE.

13        BUT THE SOURCE OF THAT OBLIGATION IS STATUTORY.  THERE

14    IS -- THERE IS AN ARGUMENT MADE, AND OBVIOUSLY WE'VE NOT HAD A

15    CHANCE TO RESPOND TO THE REPLY IN WRITING, YOUR HONOR, AND

16    COUNSEL WILL CORRECT ME IF I'M WRONG, BUT I SEE A THRUST IN THE

17    PAPERS THAT CAME IN THE OTHER DAY, INCLUDING THE STATEMENT IN

18    THE LEE REPLY DECLARATION, PARAGRAPH 9, WHICH IS THAT WE'RE

19    ENTITLED TO DISCOVER WHETHER THE PARTIES THAT HAVE RESPONDED TO

20    KOREAN -- TO KFTC DISCOVERY ARE ENGAGED IN SIMILAR PRACTICES TO

21    WHAT QUALCOMM IS.  I WANT TO SEE YOUR LICENSING AGREEMENTS.

22        MY -- WHAT I'M HEARING FROM THEIR PAPERS IS THAT, LOOK,

23    QUALCOMM'S BEING CONDEMNED FOR DOING WHAT EVERYBODY ELSE DOES.

24    THAT'S THE THRUST OF WHAT I'M HEARING.

25            THE COURT:  UM-HUM.

1          MR. SIMMONS:  BUT LET ME SUGGEST TO THE COURT -- AND

2     WE MAKE THIS POINT IN OUR SAMSUNG PAPERS -- ASSUMING KOREAN LAW

3     IS ANYTHING LIKE THE UNITED STATES LAW OF MONOPOLIZATION -- AND

4     LIKE MR. BORNSTEIN, I'M NOT AN EXPERT IN KOREAN LAW -- IT'S

5     WELL ESTABLISHED UNDER U.S. LAW THAT CONDUCT THAT MAY BE LAWFUL

6     FOR A NON-MONOPOLIST MAY BE UNLAWFUL FOR A MONOPOLIST.  THAT'S

7     BEEN AN IRONCLAD RULE.

8          AND SO IT TAKES US BACK TO WHERE THE KFTC ITSELF IS

9     ALLOWED TO SAY WHAT'S RELEVANT AND NOT RELEVANT.

10          ONE OTHER POINT ABOUT THAT STATEMENT BY MR. LEE.  MR. LEE

11     SAYS -- HE CITES THE ARTICLE 3.2 OF THE MONOPOLY REGULATION AND

12     FAIR TRADE ACT, THE MRFTA, SO I'M -- JUST FOR PURPOSES OF THE

13     RECORD, I'M REFERRING TO LEE REPLY DECLARATION, PARAGRAPH 9 --

14     AND HE CITES THE STATUTE WHICH IS ATTACHED AS EXHIBIT A TO THE

15     KFTC LETTER.

16          THERE IS NOTHING IN THAT PROVISION, YOUR HONOR,

17     SECTION 3.2, WHICH SUPPORTS THIS NOTION THAT IF A PRACTICE IS

18     COMMONPLACE, THE MONOPOLIST CONDUCT SHOULD BE VIEWED FROM THAT

19     COMMON PLACE.  IT DOESN'T SAY THAT.

20          THE -- IN FACT, THE REGULATIONS WHICH HAVE BEEN

21     PROPOUNDED -- AND I'D LIKE TO HAND THE COURT, IF I MAY, AND

22     HAND TO COUNSEL, THE REGULATIONS THAT CORRESPOND TO THIS

23     PROVISION IN THE STATUTE.  WE HAVE FLAGGED THEM FOR THE COURT

24     AND YOU CAN GO THROUGH THEM IN CHAMBERS.

25          BUT WHEN YOU SEE -- WHEN YOU WALK THROUGH THE FACTORS THAT

1    THE REGULATIONS TALK ABOUT, NOWHERE DOES IT SAY THAT A

2    MONOPOLIST IS ALLOWED TO DEFEND ITSELF BECAUSE NON-MONOPOLISTS

3    DO SIMILAR THINGS.  THE PROVISIONS SIMPLY DON'T SAY THAT, AND

4    YOU'VE GOT THE REGULATIONS THERE.

5        LET ME MOVE OFF RECEPTIVITY AND GO TO, YOUR HONOR, GO TO

6    THE CIRCUMVENTION POINT.

7        IT'S ALWAYS -- YOU KNOW, I HAD A GREAT LAW PROFESSOR, HE

8    SAID TO ME, "IAN, NEVER TRY TO MEMORIZE THE STATUTE," LIKE, GO

9    TO THE STATUTE AND REREAD IT.

10       WHEN WE GO TO THE LANGUAGE OF THE SUPREME COURT IN INTEL

11   VERSUS AMD -- AND WE SEE THE DISTRICT COURTS PICK UP ON THIS IN

12   CATHODE RAY TUBE, JUDGE RAKOFF IN THE GODFREY CASE -- WHEN WE

13   GO BACK, OKAY, LET'S GO AND GO BACK TO THE SUPREME COURT,

14   FACTOR 3 SPECIFICALLY, A DISTRICT COURT COULD CONSIDER WHETHER

15   THE 1782 REQUEST CONCEALS AN ATTEMPT TO CIRCUMVENT FOREIGN

16   PROOF GATHERING RESTRICTIONS.  FULL STOP.

17       THE WHOLE POINT -- THESE INTEL FACTORS ARE REALLY A COMITY

18   ISSUE.  IF THE FOREIGN JURISDICTION, WHATEVER WE MAY THINK

19   ABOUT IT, SAYS THE ONLY MATERIAL ELEMENTS, YOU KNOW, THAT

20   MATTER IN OUR SOVEREIGN NATION ARE ONE, TWO, AND THREE, AND

21   YOU'RE NOT ALLOWED TO DISCOVER FOUR AND FIVE, REGRETTABLY, SO

22   BE IT.

23       AGAIN, I COME FROM CANADA.  IF CANADA HAS SOME DIFFERENT

24   LAW, A WAY OF LOOKING AT THE LAW OF DOMINANCE OR MONOPOLIZATION

25   AND UNDER CANADIAN PROCEDURES YOU'RE ALLOWED TO ISSUE ONE,

1    ISSUE TWO, AND ISSUE THREE, THAT'S WHAT YOU GET DISCOVERY ON.

2    YOU DON'T GET FOUR AND FIVE.

3         TO COME TO THIS UNITED STATES COURT AND TO SAY, "I WANT TO

4    DISCOVER ISSUES FOUR AND FIVE," I JUST -- THAT IS PLAIN

5    CIRCUMVENTION.  JUDGE CONTI RECOGNIZED THAT IN CATHODE RAY

6    TUBE.  JUDGE WARE DID ON THE REMAND OPINION.

7         THE IMMOBILIEN OPINION --

8              THE COURT:  SO PERHAPS TO PUT THIS A SLIGHTLY

9    DIFFERENT WAY, MR. SIMMONS, IF THE FOOTBALL FIELD IS JUST

10   REALLY WIDE IN MANITOBA, DEAL WITH IT.  THAT'S WHAT YOU'RE

11   SAYING?

12             MR. SIMMONS:  WELL, YOUR HONOR, I'M A BIG SOCCER FAN,

13   AND I'M A MANCHESTER UNITED FAN.  OLD TRAFFORD HAS A BIG -- IT

14   ACTUALLY -- ITS PITCH -- YOU KNOW, IT'S FUNNY.  A LOT OF

15   PEOPLE -- IN THE PREMIER LEAGUE, PITCHES ARE NOT ALL THE SAME

16   SIZE.  THE STANFORD PITCH IS NARROW.

17        THAT'S YOUR -- AS A UNITED STATES JUDICIAL OFFICER, THAT'S

18   WHAT WE MEAN BY COMITY.  I THINK WE ALWAYS TALK ABOUT THESE

19   INTEL FACTORS, BUT IT'S REALLY A COMITY ANALYSIS.

20        AND NO -- AND MR. BORNSTEIN IS CORRECT.  IT'S NOT A --

21   IT'S NOT A (SLAPPING).

22        BUT THAT'S A PRETTY POWERFUL ISSUE.

23        I THINK, YOUR HONOR, IN THINKING ABOUT THIS PROBLEM, YOUR

24   OPINION IN THE GLOBAL ENERGY HORIZONS CORP. CASE, IT'S AN

25   OPINION FROM YOU IN 2015, AND WHEN YOU GO BACK AND LOOK AT THE

1    FACTS OF THAT, BASICALLY THE FACTS WERE I WANT DISCOVERY FROM

2    IAN, WHO'S IN GERMANY, IAN IS NOT A PARTY TO THE FOREIGN

3    PROCEEDING, THEY DON'T HAVE JURISDICTION OVER HIM, INTEL FACTOR

4    NUMBER 1.

5        THE FOREIGN JURISDICTION DOESN'T CARE WHETHER YOU GET THE

6    STUFF OR NOT.  IT DOESN'T HAVE A PROSCRIPTION AGAINST YOU

7    GETTING IT, SO THERE'S NO CIRCUMVENTION, AND YOU'RE ASKING FOR

8    IAN'S BANK ACCOUNT RECORD FROM JULY OF 2011.

9        NO ISSUE, YOUR HONOR.

10       THAT'S NOT THIS SITUATION.  THAT'S NOT THIS SITUATION.

11       QUICKLY, A KEY CASE I THINK ON THIS, YOUR HONOR -- AND I

12   KNOW YOU'VE GOT THEM ALL IN THE PAPERS, AGAIN, WE'RE SORRY TO

13   DROWN YOU IN PAPERS -- THE ASTRONICS VS. LUFTHANSA CASE,

14   561 FED.APP 605, NINTH CIRCUIT 2009, THE GERMAN COURT SAID THAT

15   THE MATERIAL WAS IRRELEVANT, AND THE NINTH CIRCUIT SAID, YOU

16   CAN'T -- YOU'VE GOT TO LISTEN TO THE -- WE TAKE OUR CUE FROM

17   THAT FOREIGN BODY.  CATHODE RAY TUBE USED THE PHRASE

18   "SIDESTEPPING THE FOREIGN DISCOVERY RULES."

19       AND IT ACTUALLY SAID, "IT IS AN ATTEMPT TO CIRCUMVENT THE

20   PROOF GATHERING POLICIES IN KOREA," PROOF GATHERING POLICIES,

21   "IF DIFFERENT SCOPES ARE PERMITTED OF DISCOVERY."

22       THE IMMOBILIEN CASE, SAME THING, AN ATTEMPT TO EVADE THE

23   GERMAN FORUM'S PROOF GATHERING RESTRICTIONS.

24       AND OF COURSE YOU'VE GOT THE MICROSOFT CASES BEFORE YOU.

25       LET ME MOVE OFF INTEL, AND I'M NOT GOING TO TALK ABOUT THE

1    BURDENS AS TO SAMSUNG, <u>INTEL</u> FACTOR NUMBER 4.  THEY'RE IN OUR

2    PAPERS.  THE JUDGE IS -- I'M NOT AT THAT LITIGATION, BUT JUST

3    LOOKING AT IT AS A NOVICE, MY GOD, ALL THESE LITIGATION

4    MATERIALS AND WE HAVE TO GIVE NOTICE --

5            THE COURT:  I STILL AM IN MANY OF THOSE LITIGATIONS,

6    SO I CERTAINLY APPRECIATE YOUR EMPATHY.

7        (LAUGHTER.)

8            MR. SIMMONS:  AND YOU'RE STILL SMILING, SO I COMMEND

9    HOW YOU'VE DONE IT.

10           BUT MY POINT IS THOSE BURDENS ARE EXTREME.

11           THERE ARE SEVERAL CASES OUT THERE, YOUR HONOR, THAT WE

12   HAVE CITED WHICH SAY, YOU KNOW, THE WHOLE CONCEPT OF A 1782,

13   AGAIN, LIKE YOUR <u>HORIZON</u> CASE, I WANT YOUR BANK ACCOUNT RECORD

14   FROM THE MONTH OF JULY OF 2011, THAT'S NOT THIS ANIMAL.

15           LET ME GO TO THE SAMSUNG-SPECIFIC ISSUES, YOUR HONOR, IF

16   YOU'LL LET ME QUICKLY -- I'LL MOVE QUICKLY HERE.

17           A PREDICATE OF THE STATUTE IS THAT THE ENTITY FROM WHOM

18   THE DISCOVERY IS BEING SOUGHT IS FOUND IN THE DISTRICT, IS

19   FOUND IN THE DISTRICT, AND JUDGE RAKOFF IN <u>GODFREY</u> -- YOU KNOW,

20   THE VAST WEIGHT OF CASES SAY THAT WHAT THAT MEANS IS WHETHER

21   YOUR PRINCIPAL PLACE OF BUSINESS IS INCORPORATED OR CONTINUOUS

22   AND SYSTEMATIC CONTACTS WITH THE FORUM.

23           THE COURT:  SO YOU WOULD SUGGEST THAT MY PERSONAL

24   EXPERIENCE WITH SAMSUNG OVER THE LAST 5.25 YEARS IN THIS VERY

25   COURTROOM DOES NOT -- IS NOT SUFFICIENT TO ESTABLISH A

1    SYSTEMATIC OR CONTINUOUS PRESENCE IN THIS DISTRICT?

2         MR. SIMMONS:  THAT'S RIGHT, YOUR HONOR.

3         THE COURT:  OKAY.  TELL ME WHY.  THIS IS A SERIOUS

4    ISSUE.

5         MR. SIMMONS:  NO, IT'S -- LET ME GO TO THAT.

6    WE HAVE -- ENGAGING IN LITIGATION IS DEEMED INSUFFICIENT

7    TO BE CONTINUOUS AND SYSTEMATIC.  HERE'S A TENTH CIRCUIT CASE,

8    GRYNBERG VERSUS IVANHOE, 490 FED.APP 86 AT 96.  "DOMESTIC

9    LITIGATION DETOURS INTO COLORADO DO NOT AMOUNT TO CONTINUOUS

10   AND SYSTEMATIC BUSINESS CONTACTS."  THAT'S THE TENTH CIRCUIT.

11   THE TENTH CIRCUIT AGAIN, SOMA, S-O-M-A, MED INTERNATIONAL

12   VERSUS STANDARD CHARTER BANK.  QUOTE, "FILING FIVE CIVIL

13   CASES," CLOSED QUOTE, IN THE FORUM STATE IS NOT, QUOTE,

14   "CONTINUOUS AND SYSTEMATIC LOCAL ACTIVITY."

15   ASTRAZENECA PHARMACEUTICALS VERSUS MYLAN PHARMACEUTICAL,

16   INC., 2009, PARTICIPATION IN 13 LAWSUITS IN THE DISTRICT DID

17   NOT CONSTITUTE CONTINUOUS AND SYSTEMATIC CONTACTS.

18        THE COURT:  BUT DON'T EACH OF THOSE CASES SUGGEST

19   THAT IN EVALUATING THAT ISSUE, I SHOULD MEASURE IN SOME

20   QUANTITATIVE WAY HOW MUCH THE PARTY AT ISSUE IS IN THIS

21   DISTRICT, AND AT SOME POINT THERE -- ONE CAN HAVE SO MUCH OF A

22   PRESENCE THAT, IN FACT, ONE CAN BE SAID TO BE FOUND IN THE

23   DISTRICT?

24   IF I'M RIGHT ABOUT THAT -- AND YOU'RE FREE TO DISAGREE AND

25   I'D LIKE TO HEAR IT IF YOU DO DISAGREE -- I CAN THINK OF FEW

1    OTHER PARTIES -- I MEAN, MAYBE OTHERS AT THAT TABLE -- WHO HAVE

2    HAD MORE OF A PRESENCE IN THIS DISTRICT ALONG THAT QUANTITATIVE

3    METRIC.

4        SO AM I JUST MISREADING OR MISUNDERSTANDING WHAT THOSE

5    CASES ARE TEACHING?  OR IS THERE SOME OTHER WAY TO SQUARE THAT?

6            MR. SIMMONS:  I THINK, YOUR HONOR, THE DIFFERENCE IS

7    THE SUPREME COURT IN THE DAIMLER CASE, 2014, WHICH WE CITED IN

8    OUR PAPERS, REMINDS US TO MAKE THE DISTINCTION BETWEEN SPECIFIC

9    JURISDICTION AND GENERAL JURISDICTION.

10       I THINK THE VAST WEIGHT OF AUTHORITY SAYS FILING LAWSUITS,

11   AND EVEN LOTS OF THEM -- REMEMBER SAMSUNG ELECTRONICS OF

12   AMERICA, OTHER SAMSUNG ENTITIES, MAY HAVE BEEN PARTIES TO THOSE

13   CASES.

14       THAT DOES NOT CONSTITUTE THE LEVEL OF CONTINUOUS AND

15   SYSTEMATIC CONTACTS WITH THE STATE SUCH THAT YOU ARE AT HOME

16   THERE.

17           THE COURT:  OKAY.  LET'S ASSUME I'M PERSUADED BY THAT

18   POINT.

19       IT WOULD SEEM, THOUGH, THAT THE FACT THAT THERE IS SO MUCH

20   LITIGATION INVOLVING THE PARTY OF INTEREST MIGHT BE USED AS A

21   PROXY OR AS A BLAZE MARK TOWARDS THE PRESENCE WHICH IS

22   REQUIRED, THAT IS, IF UNDER THE PATENT LAWS, FOR EXAMPLE, UNDER

23   TITLE 35, THAT PRESENCE IS SATISFIED BY THE SALE OR MANUFACTURE

24   OF EVEN ONE ACCUSED DEVICE.

25           MR. SIMMONS:  RIGHT.

1          THE COURT:  WOULDN'T THAT SUGGEST THAT IN THIS

2     ANALYSIS, RIGHT OR WRONG, THAT PARTY HAS MAINTAINED SUCH A

3     PRESENCE THAT IT WOULD BE REASONABLE TO NOT RESOLVE THE ENTIRE

4     MOTION AGAINST THEM AS A RESULT OF THAT, BUT CONSIDER THAT

5     FACTOR PERHAPS AS BEING AT LEAST NEUTRAL, IF NOT TIPPING

6     AGAINST THEM?

7          MR. SIMMONS:  WELL, YOUR HONOR, THE FACT IS I CAN'T

8     DENY THAT SAMSUNG ELECTRONICS HAS FILED SUIT.  THOSE SUITS

9     RELATE TO SPECIFIC DEVICES, SPECIFIC --

10          THE COURT:  AND BEEN SUED NOT OF ITS OWN ACCORD,

11     RIGHT?

12          MR. SIMMONS:  AND HAS BEEN HAULED INTO COURT AND HAS

13     ACCEPTED A SERVICE OF LAWSUIT.

14          THE COURT:  RIGHT.

15          MR. SIMMONS:  MY POINT IS IF YOU LIKEN THAT TO THE --

16     IF YOU ACCEPT THE PROPOSITION, AS I URGE THE COURT TO, THAT THE

17     FOUND IN IS BASICALLY AN ANALOGY FOR GENERAL JURISDICTION, IF

18     YOU ACCEPT THAT PROPOSITION, AND I WOULD URGE THE COURT TO DO

19     THAT BECAUSE I THINK THAT'S WHAT THE LAW IS, THEN WE THEN HAVE

20     TO ANALOGIZE.

21          SO THE FACT THAT IT HAS PERIODICALLY FILED, THAT'S NO

22     DIFFERENT THAN WHAT THE SUPREME COURT SAID IN BURGER KING OF

23     PUTTING THINGS IN THE STREAM OF COMMERCE.  THAT HAS NEVER BEEN

24     ENOUGH FOR GENERAL JURISDICTION.

25          MAYBE SPECIFIC.  I PUT A CAR IN THE STREAM OF COMMERCE AND

1    THE CAR BROKE DOWN.

2            THE COURT:  THAT'S VOLKSWAGON, RIGHT?

3            MR. SIMMONS:  EXACTLY, YOUR HONOR.

4        SO WITH ALL DUE RESPECT, THIS IS A GENERAL JURISDICTION

5    STATUTE.  WE CITED THE HAN SMIT ARTICLE WHICH SAID -- THE

6    AUTHOR OF THE REVISIONS TO 1782 WHERE HE SAID, IF YOU WANT

7    MATERIALS OF A PERSON IN THE DISTRICT AND IT'S IN THE

8    UNITED STATES, YOU GO THERE.

9        IF YOU WANT THE MATERIALS OF THAT PERSON IN SPAIN, YOU GO

10   THERE.

11       IF YOU WANT THE MATERIALS OF THE PERSON IN GREAT BRITAIN,

12   YOU GO TO GREAT BRITAIN.

13           THE COURT:  AND I THINK YOU ALLUDED TO THIS, OR YOU

14   SAID THIS EXPLICITLY JUST A MINUTE AGO, JUDGE RAKOFF CERTAINLY

15   SUBSCRIBES TO THAT VIEW.

16           MR. SIMMONS:  CORRECT, YOUR HONOR, IN THE GODFREY

17   CASE.

18       I'M GOING TO REST WITH JUST ONE OTHER EXHIBIT I'D LIKE TO

19   HAND THE COURT --

20           THE COURT:  ALL RIGHT.

21           MR. SIMMONS:  -- BECAUSE I'VE JUST BLED INTO THE

22   CONCEPT OF, WELL, WHERE ARE THE DOCUMENTS LOCATED?

23       SO SAMSUNG ELECTRONICS IS A KOREAN COMPANY WITH NO

24   PRINCIPAL PLACE OF BUSINESS IN THIS DISTRICT.

25           AS IS CLEAR FROM OUR DISCUSSION TODAY, THE APPLICANT IS

1      SEEKING MATERIALS THAT ARE -- THAT ARE NOT RESIDENT IN THE

2      UNITED STATES, OTHER THAN THE LITIGATION MATERIALS THAT MAY BE

3      HERE IN THE NORTHERN DISTRICT.

4          WE HAVE LOOKED -- YOU KNOW, WE'VE LOOKED AT CASES IN THE

5      NORTHERN DISTRICT OF CALIFORNIA -- AND I'M JUST HANDING YOU A

6      GRID -- WE HAVE NOT FOUND ONE CASE WHICH ORDERS -- WHERE

7      SOMEONE WAS ASKING FOR THIS WORLDWIDE REACH.

8          SO A LOT OF THESE ARE NO BECAUSE THEY DIDN'T ASK.  WHEN

9      YOU LOOK AT THE CASES, YOU'LL SAY, WELL, THEY DIDN'T ASK.

10         OR A LOT OF THEM THEY ARE ASKING AND THE ANSWER IS NO, YOU

11     DON'T GET IT.

12         SO THAT'S -- I WOULD REST WITH ALL OF THAT.

13         YOUR HONOR, I DON'T HAVE ANYTHING FURTHER AT THIS POINT.

14         THE COURT:  I APPRECIATE YOUR COMMENTS, MR. SIMMONS.

15     WHY DON'T I TURN TO OTHERS WHO MAY WISH TO BE HEARD?

16         MR. SIMMONS:  THANK YOU.

17     NEXT UP.  ALL RIGHT.

18         THE COURT:  ALL RIGHT.  THANK YOU.

19     WHO'S NEXT?

20         MR. HARDY:  GOOD AFTERNOON, YOUR HONOR.  KEVIN HARDY

21     FROM WILLIAMS & CONNOLLY ON BEHALF OF INTEL.

22         THE COURT:  GOOD AFTERNOON, MR. HARDY.

23         MR. HARDY:  I'LL BE VERY, VERY BRIEF AND I WON'T

24     TOUCH ON THE ARGUMENTS MR. SELWYN AND MR. SIMMONS MADE.

25         I JUST WANTED TO FOLLOW UP ON ONE POINT, WHICH IS THE

```
1       EQUITIES.  AND YOUR HONOR OBSERVED, WHAT ARE COURTS TO DO WHEN

2       YOU LOOK AT A SET OF PROCEDURES AND MAYBE IN OUR AMERICAN

3       SENSIBILITIES, OUR CONCEPTS OF DUE PROCESS, WE BELIEVE THAT THE

4       PROCEDURES IN A FOREIGN COUNTRY DON'T LIVE UP TO WHAT WE WOULD

5       WANT HERE, AND YOUR HONOR USED THE EXTREME CASE OF A TRUE

6       KANGAROO COURT WHERE SOMEONE WAS RAILROADED.

7            AND I GUESS THE THING THAT OCCURRED TO ME WHEN I WAS

8       LISTENING TO THAT QUESTION AND THINKING ABOUT IT IS I DON'T

9       THINK THAT AN AMERICAN COMPANY, PUT INTO THOSE CIRCUMSTANCES,

10      IS WITHOUT REMEDY.  THE STATE DEPARTMENT, THE COMMERCE

11      DEPARTMENT, THERE ARE OTHER AVENUES THAT A COMPANY, A VICTIM IN

12      THAT SET OF CIRCUMSTANCES HAS.

13           BUT I THINK WHEN YOU READ --

14                THE COURT:  OF COURSE, YOU CAN ALWAYS PULL OUT OF THE

15      MARKET ALTOGETHER.

16                MR. HARDY:  YOU CAN DO THAT AS WELL.

17                THE COURT:  THAT MIGHT ALSO OFFEND OUR AMERICAN

18      SENSIBILITIES OF JUSTICE, RIGHT?

19                MR. HARDY:  YES.  BUT I THINK WHEN YOU READ 1782 AND

20      YOU LOOK AT WHAT THE SUPREME COURT SAID IN INTEL WHERE THERE

21      WAS A DISSENT IN THE INTEL CASE AND THERE WAS A DEBATE BETWEEN

22      THE JUSTICES ABOUT SHOULD WE GET INVOLVED IN SORT OF REALLY

23      ASSESSING THE MERITS OF A FOREIGN SYSTEM, AND THE COURT SAID

24      NO, AND I THINK THAT WAS THE COURT'S WAY OF SAYING WHEN THERE

25      ARE THESE TYPES OF DISAGREEMENTS, IT'S JUST NOT A FUNCTION OF
```

1      THE FEDERAL COURT SYSTEM UNDER 1782, WE SHOULD LEAVE THAT TO

2      OTHER BRANCHES OF THE GOVERNMENT.

3           THE COURT:  WELL, I MAY BE -- OBVIOUSLY I ALMOST

4      CERTAINLY AM BOUND BY THE SUPREME COURT ON THAT PARTICULAR

5      POINT.

6           BUT IT DOES STRIKE ME THAT WHAT THAT ANALYSIS IN INTEL

7      PERHAPS, PERHAPS, OVERLOOKED WAS THE POSSIBILITY, EVER SO

8      SLIGHT, THAT THE JURISDICTION IS NOT WITHOUT SELF-HELP THERE,

9      RIGHT?  IN OTHER WORDS, THEY CAN ALWAYS JUST TELL QUALCOMM, "I

10     DON'T CARE, FORGET IT.  YOU MIGHT HAVE GOTTEN IT FROM THAT

11     ROGUE MAGISTRATE JUDGE IN SAN JOSE, BUT WE'RE NOT LISTENING TO

12     IT."

13          THEY HAVE A WAY OF PROTECTING THEMSELVES THAT SEEMS TO ME

14     TO BE PERHAPS OVERLOOKED IN INTEL, OR AT LEAST IN THE CASES

15     THAT FOLLOW IT.

16          MR. HARDY:  I THINK THAT'S RIGHT.  I GUESS READING

17     THE DECISION, I THINK THE ONLY ANSWER THEY GAVE -- OR THE

18     CONCERN THEY EXPRESSED THERE WAS JUST WHEN THE U.S. IS ON THE

19     FLIP SIDE OF THESE REQUESTS.

20          THE COURT:  WELL, CERTAINLY THE RECIPROCAL SITUATION

21     OR POSTURE WAS TOP OF MIND.  I THINK IF YOU GO BACK AND READ

22     SOME OF THE BRIEFS, AS I ATTEMPTED TO DO, THAT WAS A BIG PART

23     OF THE POLICY DEBATE AROUND THAT, RIGHT, WHICH IS THAT WHATEVER

24     YOU DECIDE, SUPREME COURT, WE'RE GOING TO HAVE TO LIVE WITH ON

25     THE OTHER SIDE.

1          SO I TAKE YOUR POINT.

2               MR. HARDY:  THAT WAS ALL I HAD.  THANK YOU, YOUR

3     HONOR.

4               THE COURT:  OKAY.  THANK YOU.  I APPRECIATE IT.

5               MR. MUELLER:  VERY BRIEFLY, YOUR HONOR, JOE MUELLER

6     ON BEHALF OF APPLE AND MEDIATEK.

7          MR. SELWYN ABLY COVERED THE APPLE ARGUMENTS.  I'M GOING

8     TO, WITH THE COURT'S PERMISSION, BRIEFLY ADDRESS A COUPLE

9     MEDIATEK-SPECIFIC ISSUES.

10              THE COURT:  SURE, GO AHEAD.

11              MR. MUELLER:  YOUR HONOR, MEDIATEK U.S.A. IS THE

12    TARGET OF THE MEDIATEK APPLICATION BEFORE YOUR HONOR, AND AS WE

13    SUBMITTED BY WAY OF DECLARATION FROM THE PRESIDENT OF

14    MEDIATEK U.S.A., MEDIATEK U.S.A. IS NOT THE SAME COMPANY AS

15    MEDIATEK, INC.

16         MEDIATEK U.S.A. IS AN INDIRECTLY HELD SUBSIDIARY OF

17    MEDIATEK, INC., AND MEDIATEK U.S.A. FOCUSES ON RESEARCH AND

18    DEVELOPMENT IN THE SEMICONDUCTOR FIELD.

19         THAT'S SIGNIFICANT BECAUSE THE RESEARCH AND DEVELOPMENT

20    DOES NOT INVOLVE -- I SHOULD SAY BEYOND RESEARCH AND

21    DEVELOPMENT, MEDIATEK U.S.A. DOES NOT INVOLVE SALES TO

22    COMPANIES OR THE SUPPLY OF ACTUAL PRODUCTS.

23         THE REQUESTS THAT QUALCOMM HAS ASKED YOUR HONOR TO

24    AUTHORIZE BY WAY OF SUBPOENA ARE DIRECTED TO, FIRST, THE

25    COMMUNICATIONS WITH THE KFTC WHICH WERE NOT COMMUNICATIONS THAT

1    MEDIATEK U.S.A. WAS PART OF.

2          THE COURT:  OF COURSE, THAT WOULD MAKE YOUR

3    COMPLIANCE VERY SIMPLE AND STRAIGHTFORWARD, RIGHT?  THERE'S

4    NOTHING TO PRODUCE.

5          MR. MUELLER:  PERHAPS SO, YOUR HONOR.

6          BUT IT'S ALSO A PREDICATE REQUIREMENT, FOR THE ISSUANCE OF

7    THE SUBPOENA IN THE FIRST INSTANCE, THAT QUALCOMM MAKE A

8    THRESHOLD SHOWING THAT IT'S CHOSEN THE APPROPRIATE TARGET, AND

9    IN THIS CASE IT HAS NOT.

10         AND THAT'S EQUALLY TRUE WITH RESPECT TO CATEGORIES TWO AND

11   THREE OF THE PROPOSED SUBPOENA WITH RESPECT TO MEDIATEK.  AS

12   DR. KOU-HUNG LOH, THE PRESIDENT OF MEDIATEK U.S.A. DESCRIBES IN

13   HIS DECLARATION, THE NATURE OF THE BUSINESS MAKES IT HIGHLY

14   UNLIKELY THAT THERE WILL BE ANY DOCUMENTS HELD BY MEDIATEK

15   U.S.A. WITH RESPECT TO THOSE TWO CATEGORIES.

16         I WON'T REPEAT THE ARGUMENT OF MR. SIMMONS WITH RESPECT TO

17   THE REACH OF 1782, AND IN PARTICULAR THE EXTRATERRITORIAL

18   REACH, BUT I WILL NOTE THAT IN QUALCOMM'S REPLY BRIEF, THERE'S

19   AN ARGUMENT MADE ABOUT THE WEIGHT OF AUTHORITY SUPPORTING

20   EXTRATERRITORIALITY.

21         WE RESPECTFULLY THINK THAT'S INCORRECT FOR THE REASONS

22   MR. SIMMONS EXPLAINED.

23         BUT IN ANY EVENT, IT'S BESIDE THE POINT WITH RESPECT TO

24   MEDIATEK U.S.A.  THERE'S NO SUGGESTION THAT MEDIATEK U.S.A. HAS

25   SOME CACHE OF DOCUMENTS HELD OVERSEAS THAT WOULD BE REACHED.

1          THE COURT:  RIGHT.  I HAD PRESUMED -- AGAIN, PERHAPS

2    WITHOUT ANY FOUNDATION -- BUT THAT WHATEVER DOCUMENTS MIGHT BE

3    IN HSINCHU WERE PART OF THE PARENT CORPORATION, RIGHT?

4          MR. MUELLER:  THAT'S CORRECT, YOUR HONOR, WHICH IS

5    NOT THE TARGET OF THE SUBPOENA.  THAT'S A TAIWANESE CORPORATION

6    HEADQUARTERED IN TAIWAN, AND THE TARGET THAT THEY'VE CHOSEN IS

7    MEDIATEK U.S.A., WHICH IS RESIDENT IN THE DISTRICT, BUT IS NOT

8    AN APPROPRIATE TARGET FOR THE CATEGORIES THEY'RE SEEKING.

9          AND AGAIN, YOUR HONOR, I THINK I'LL JUST CLOSE BY SAYING

10   THAT WITH ALL OF THE BURDEN ARGUMENTS, AND CERTAINLY WITH

11   RESPECT TO THESE JURISDICTIONAL CONSIDERATIONS AS WELL, YOUR

12   HONOR NEED NOT REACH THEM IN LIGHT OF THE THRESHOLD PROBLEM OF

13   THE REQUESTS TO ALL THE TARGETS EFFECTIVELY BEING A REQUEST TO

14   SUPPLANT THE SOVEREIGN CHOICE OF KOREA IN STRUCTURING ITS

15   REGULATORY SCHEME.

16         THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH,

17   MR. MUELLER.

18      MR. HOLTZMAN.

19         MR. HOLTZMAN:  LAST UP, YOUR HONOR.

20         THE COURT:  GO AHEAD.

21         MR. HOLTZMAN:  VERY, VERY BRIEFLY.  STEVE HOLTZMAN

22   FOR TEXAS INSTRUMENTS.

23         I DO THINK THAT ALL THE ARGUMENTS HAVE BEEN ABLY COVERED.

24         JUST TO GO BACK TO THE BUCKETS OF DOCUMENTS WE'RE TALKING

25   ABOUT HERE.

1        THE COURT:  YES.

2        MR. HOLTZMAN:  JUST TO PUT A FINER POINT ON IT, THE

3    FIRST BUCKET, THE MATERIALS THAT THE KFTC HAS THAT MAY HAVE

4    BEEN PRODUCED, WE'RE NOT ACTUALLY SURE WHAT HAS BEEN PRODUCED

5    AT THIS POINT.  YOU KNOW, THEY'RE -- TO ME, YOU KNOW, ALL THE

6    FACTORS, YOU KNOW, REALLY APPLY VERY, VERY CLEARLY HERE.  YOU

7    KNOW, WE ARE PARTICIPANTS, THE MATERIALS ARE WITHIN THE

8    TRIBUNAL'S REACH UNDER THE FIRST FACTOR.

9        AND QUALCOMM'S EFFORT TO USE SECTION 1782 TO GET THEM HERE

10   IS A CLEAR CIRCUMVENTION OF THE VERY CLEAR PREFERENCE AND THE

11   RULES OF THE KFTC THAT IT HAS DELIBERATELY PROSCRIBED IT,

12   KOREAN LAW HAS DELIBERATELY PROSCRIBED TO GOVERN ACCESS, OR NOT

13   ACCESS AS THE CASE MAY BE, TO THE CASE FILE, AND THAT INCLUDES

14   FOR THE PROTECTION OF CONFIDENTIALITY AND SO FORTH.  SO THAT'S

15   THAT BUCKET.

16       AS TO THE MATERIALS IN THE OTHER BUCKET, MATERIALS THAT

17   MAY NOT HAVE BEEN PRODUCED TO THE KFTC, THE ONE THING -- AGAIN,

18   I THINK IT'S BEEN VERY CLEARLY COVERED -- IS CERTAINLY

19   CIRCUMVENTION AND THE PREFERENCE OF THE KFTC.

20       THE ONE THING I DO WANT TO PUT A FINER POINT ON IS THIS

21   ISSUE OF THE CHILLING EFFECT, THE INCENTIVES THAT THIRD PARTIES

22   HAVE TO PARTICIPATE IN THE KFTC'S ENFORCEMENT ACTIVITY IN THIS

23   CASE AND IN FUTURE CASES.

24       THE KFTC IS VERY CLEAR IN ITS LETTER ABOUT THIS, THAT IT

25   HAS GRAVE CONCERNS FOR ITS ABILITY TO, TO INVESTIGATE AND

1  PURSUE ANTITRUST VIOLATIONS IN THE FUTURE IF THIRD PARTIES SEE

2  THAT, AS A RESULT OF THAT, THEY'RE GOING TO BE EXPOSED TO WHAT,

3  IN THIS CASE, CERTAINLY WITH REGARD TO MY CLIENT, WHICH IS OUT

4  OF BUSINESS, EXPANSIVE DISCOVERY GOING BACK 11 YEARS IN OUR

5  CASE.

6      THAT'S GOING TO HAVE A SIGNIFICANT CHILLING EFFECT WHERE

7  THERE IS, AS YOUR HONOR POINTED OUT, SOME DIFFERENCE BETWEEN

8  DOING THE ABSOLUTE MINIMUM TO COMPLY WITH WHAT THEY CAN, WHAT

9  THE KFTC CAN ISSUE IN THE WAY OF REQUESTS, AND THEN DOING WHAT

10  MAYBE MORE COULD BE DONE TO ENCOURAGE VIGOROUS ENFORCEMENT.

11      THE COURT:  MR. HOLTZMAN, THERE MAY, HOWEVER, BE AN

12  ADDITIONAL DIFFERENCE, WHICH YOU HAVE NOT TOUCHED UPON, BETWEEN

13  YOUR CLIENT'S SITUATION AS SOMEONE WHO HAS EXITED THIS

14  BUSINESS, AND PERHAPS OTHERS, AND IN PARTICULAR AS THAT RELATES

15  TO THE CHILLING EFFECT THAT YOU HAVE HIGHLIGHTED.

16      I'M NOT IMPUGNING ANYONE'S MOTIVES HERE, BUT I'M ALSO NOT

17  SO NAIVE AS TO NOT UNDERSTAND HOW THESE INVESTIGATIONS GET

18  LAUNCHED.  THESE COMPANIES ARE NOT SITTING AROUND ONE DAY

19  LEARNING SUDDENLY THAT THE REGULATORS ARE INTERESTED IN A

20  COMPETITOR, RIGHT?  THEY ARE OFTEN HIGHLY INVOLVED IN THE

21  INSTIGATION OF THE INVESTIGATION IN THE FIRST INSTANCE.

22      MR. HOLTZMAN:  WELL, YOUR HONOR, CONSUMERS AND

23  COMPETITORS AND EXCLUDED COMPETITORS CERTAINLY DO HAVE AN

24  INTEREST IN SEEING THE ANTITRUST LAWS --

25      THE COURT:  A VERY LEGITIMATE ONE, ABSOLUTELY.

1     I'M JUST POINTING OUT THAT IN MEASURING WHAT INCENTIVES

2     PARTIES HAVE TO EITHER PARTICIPATE FULLY AND WITH AN OPEN HEAD

3     AND OPEN HEART ON THESE ISSUES OR NOT, IT WOULD SEEM TO ME TO

4     BE IMPORTANT TO BE AWARE OF THE REALITY OF HOW THESE THINGS

5     OFTEN WORK.

6          MR. HOLTZMAN:  THAT IS TRUE, YOUR HONOR.

7     THERE ARE, HOWEVER, SOMETIMES RESTRICTIONS ON OUR ABILITY

8     TO VOLUNTARILY COME FORWARD.  I'M NOT AT LIBERTY TO ACTUALLY

9     DESCRIBE ALL OF THOSE.

10     I WILL POINT OUT THAT QUALCOMM HAS BEEN VIGOROUS IN

11     PROTECTING THE CONFIDENTIALITY OF LICENSE AGREEMENTS AND SO

12     FORTH.  THERE IS A CHILLING EFFECT THERE AS WELL, IN ADDITION

13     WITH REGARD TO -- NOT SO MUCH WITH REGARD TO A COMPANY LIKE

14     TEXAS INSTRUMENTS, BUT TO COMPANIES WHO ARE LICENSEES AND

15     CUSTOMERS OF QUALCOMM IN CONCERN ABOUT RETALIATION.  THAT'S A

16     VERY REAL FACTOR FROM A BUSINESS PERSPECTIVE THAT HAS TO BE

17     THOUGHT ABOUT.

18          THE COURT:  CUSTOMERS CARE ABOUT THIS STUFF,

19     OBVIOUSLY.

20          MR. HOLTZMAN:  ABSOLUTELY.

21          THE COURT:  YEAH.

22          MR. HOLTZMAN:  I THINK THAT'S ALL I HAVE, YOUR HONOR.

23          THE COURT:  ALL RIGHT.  THANK YOU, MR. HOLTZMAN.

24     MR. BORNSTEIN, ANY REBUTTAL, HOWEVER BRIEF YOU MAY WISH TO

25     MAKE IT?

1          (LAUGHTER.)

2               MR. BORNSTEIN:  I'M GOING TO DO MY BEST, YOUR HONOR.

3     I APPRECIATE THAT --

4               THE COURT:  GO AHEAD.  THIS IS IMPORTANT.  IT'S

5     IMPORTANT THAT YOU GET A FULL OPPORTUNITY.  I'M ONLY JOKING.

6               MR. BORNSTEIN:  OKAY.  WELL, I DO GENUINELY

7     APPRECIATE THAT.

8               THE COURT:  OKAY.

9               MR. BORNSTEIN:  SO I'M GOING TO TRY AND FOCUS ON THE

10    THINGS THAT SEEMED TO ME, FROM THE CHAIR BACK THERE, TO BE OF

11    INTEREST TO THE COURT.

12              THE COURT:  I APPRECIATE THAT.

13              MR. BORNSTEIN:  AND JUST A FEW THINGS THAT, FRANKLY,

14    WERE OF INTEREST TO ME AND THAT I HOPE WILL BE OF INTEREST TO

15    THE COURT.

16         ONE IS THE DISCUSSION ABOUT CIRCUMVENTION, WHICH IS

17    CLEARLY AN ISSUE THAT'S ON THE COURT'S MIND, AND UNDERSTANDABLY

18    HAVING RECEIVED THIS LETTER.

19         AND I THINK THE CLEAREST WAY TO PUT THIS, YOUR HONOR, IS

20    THERE'S NOTHING TO CIRCUMVENT WHEN THERE'S NO PROCEDURE.

21    RIGHT?

22         WE'RE -- IN THE CASES THAT HAVE BEEN CITED TO THE COURT,

23    THE CATHODE RAY CASE, THE MICROSOFT CASES, THERE WAS A CLEARLY

24    ESTABLISHED PROCEDURE IN ANOTHER JURISDICTION TO GET A

25    PARTICULAR SET OF MATERIALS.  IN A CASE THAT YOUR HONOR HANDLED

WHERE, I BELIEVE IT WAS APPLE -- EXCUSE ME -- SAMSUNG COMING TO

GET INFORMATION FROM APPLE FOR A JAPANESE PATENT PROCEEDING,

THERE WAS A PROCEDURE IN THE JAPANESE COURT TO GET --

THE COURT:  THAT WAS A TOKYO DISTRICT COURT CASE IF

I'M NOT MISTAKEN.  I REMEMBER THAT.

MR. BORNSTEIN:  THAT'S MY RECOLLECTION, YES.

AND YOUR HONOR SAID, LOOK, THERE'S A PROCEDURE OVER THERE.

YOU CAN -- YOU CAN GO TO THE TOKYO COURT AND GET FROM THEM WHAT

YOU'RE TRYING TO GET FROM ME.

AND THIS IS THE MATERIAL, I THINK IT WAS -- I'VE LOST

TRACK.  I THINK IT WAS MR. SIMMONS WHO READ TO YOU FROM THIS

ONE, BUT IT -- THAT WAS YOUR HONOR'S TAKE ON IT.  WELL, THERE'S

A PROCEDURE FOR IT, AND I DON'T WANT TO CIRCUMVENT THAT OTHER

JURISDICTION.

WE DON'T HAVE A PROCEDURE.  AND YOUR HONOR WILL NOT BE

STEPPING ON TOES ELSEWHERE IN TERMS OF WE SHOULD HAVE GONE

THERE AND GOTTEN IT IF YOUR HONOR GRANTS THE APPLICATIONS HERE.

TO THE ISSUE OF FIELD PREEMPTION, TO USE THE ANALOGY,

WHICH I THINK IS RELEVANT, IT CAN'T BE THAT, WELL, IF THERE'S A

PROCEDURE, YOU GO GET IT FROM THE KOREAN AUTHORITIES USING THAT

PROCEDURE AND PLEASE DON'T USE 1782.

BUT ON THE OTHER HAND, IF THERE'S NO PROCEDURE, THAT MEANS

THAT THERE'S NO SCOPE FOR 1782, BECAUSE IF THAT WERE THE LAW --

THE COURT:  IT WOULD RENDER THE STATUTE A NULLITY

ESSENTIALLY.

1           MR. BORNSTEIN:  YEAH.  WE COULD ALL GO HOME IF THAT

2      WERE THE LAW.  THERE WOULD BE NO POINT IN HAVING THIS

3      PROCEDURE.

4           AND THAT CAN'T BE THE CASE.  WE HAVE A STATUTE.  THE

5      SUPREME COURT HAS MADE VERY CLEAR THAT THE STATUTE DOES APPLY

6      TO TRIBUNALS LIKE THIS.

7           SO THE IDEA, WELL, IT'S DIFFERENT FOR A COURT AS OPPOSED

8      TO HERE, NO.  INTEL SAID THIS IS A TRIBUNAL.  D.G. COMP WAS A

9      TRIBUNAL.  INTEL WAS A CASE WHERE THE EUROPEAN AUTHORITY WAS IN

10     THERE SAYING, "NO, WE DON'T APPROVE OF THIS," AND THE SUPREME

11     COURT DIDN'T JUST GET RID OF IT.  IT EVENTUALLY CAME BACK HERE

12     AND, BASED ON THE FACTS AND CIRCUMSTANCES, THE COURT HERE

13     DETERMINED THAT AMD --

14          THE COURT:  I SEE.  SO YOUR POINT IS THE OPPOSITION

15     OF THE COMMISSION ITSELF WAS MADE KNOWN TO THE SUPREME COURT

16     AND, ON THAT BASIS ALONE, IT COULD HAVE SIMPLY RESOLVED THE

17     ENTIRE ISSUE ALTOGETHER, RIGHT?

18          MR. BORNSTEIN:  ABSOLUTELY RIGHT.

19          AND THAT SHOWS UP IN -- IT SHOWS UP IN THE OPINION.  THE

20     EUROPEAN COMMISSION HAD STATED IN AMICUS BRIEFS TO THIS COURT

21     THAT IT DOES NOT NEED OR WANT THE DISTRICT COURT'S ASSISTANCE.

22     COULD NOT -- COULD NOT BE MORE CLEAR.

23          THE SUPREME COURT DID NOT SAY, "OH, SHOOT, THIS JUST

24     BECAME A REALLY EASY CASE."

25          INSTEAD, WE HAVE A CASE THAT WE'RE ALL STRUGGLING TO

1    INTERPRET, BUT IT DIDN'T SAY THAT'S THE END OF THE MATTER.

2         AND JUDGE TRUMBULL SAID THE SAME THING.  SHE SAID THAT

3    THIS FACTOR IN AND OF ITSELF IS NOT DISPOSITIVE.  IT'S ONE

4    THING THAT I WEIGH.

5         I DIDN'T GET A CHANCE TO TALK ABOUT THE FIRST FACTOR AND

6    SO I'LL JUST ADDRESS IT BRIEFLY.

7              THE COURT:  GO AHEAD.

8              MR. BORNSTEIN:  THE PARTIES WHO ARE HERE ARE PARTIES

9    WHO VOLUNTARILY WERE INVOLVED -- AND YOUR HONOR OBSERVED SOME

10   OF THE COMMERCIAL REALITIES THAT MAY HAVE LED TO THAT

11   INVOLVEMENT -- THAT WERE VOLUNTARILY INVOLVED IN PROVIDING

12   MATERIALS.

13        THEY ARE NOT -- AND I HAVEN'T HEARD ANY PARTY SAY THAT

14   THEY ARE ACTUALLY, WITH THE EXCEPTION OF SAMSUNG, WITHIN THE

15   KFTC'S JURISDICTION TO BE ORDERED TO PROVIDE MATERIALS.

16        THERE MAY BE SUBSIDIARIES THAT ARE IN KOREA THAT MAY BE

17   WITHIN REACH.  BUT I WOULD BE SURPRISED IF APPLE, INC., AND THE

18   OTHER COMPANIES OUTSIDE OF KOREA ARE GOING TO COMMIT TO YOU

19   THAT THEY'RE WITHIN THE AUTHORITY OF THE KOREAN -- OF A KOREAN

20   BODY.

21        SO THIS IS NOT A SITUATION WHERE THE ENTITY FROM WHOM THE

22   INFORMATION IS BEING SOUGHT IS WITHIN THE REACH OF THE

23   JURISDICTION THAT IS CONDUCTING THE PROCEEDING FOR WHICH THE

24   INFORMATION IS NEEDED.  IT'S A VERY DIFFERENT CIRCUMSTANCE.

25        AND WITH RESPECT TO WHETHER OR NOT, IN CONSIDERING THE

1    FIRST FACTOR, THE COURT SHOULD CONSIDER ASSISTANCE TO THE

2    LITIGANT AS OPPOSED TO ASSISTANCE TO THE TRIBUNAL, ALL I NEED

3    TO DO IS DIRECT YOUR HONOR TO THE TITLE OF THE STATUTE WHICH

4    SAYS IT IS FOR ASSISTANCE TO LITIGANTS AND TRIBUNALS, TO BOTH.

5    IT'S A TWO-PART STATUTE.  AND, IN FACT, INTEL SAYS THERE ARE

6    TWIN AIMS TO THE STATUTE, AND ONE OF THEM IS ASSISTING

7    PARTICIPANTS IN THE FOREIGN PROCEEDING.

8         THE COURT:  WELL, THAT MIGHT SUGGEST THAT YOU -- IF I

9    WERE TO READ THE STATUTE AS NARROWLY AS HAS BEEN URGED, YOU

10   DON'T EVEN HAVE STANDING TO FILE THE APPLICATION, LET ALONE

11   PURSUE IT, RIGHT?

12        MR. BORNSTEIN:  WELL, WE HAVE STANDING TO FILE THE

13   APPLICATION BECAUSE IT -- YOU MEAN, IF YOU FOLLOW THEIR --

14        THE COURT:  YEAH.

15        MR. BORNSTEIN:  ABSOLUTELY.  ABSOLUTELY.

16    BUT IT SAYS THAT AN INTERESTED PERSON IS THE PARTY THAT

17   HAS STANDING.  AND ACTUALLY, NO ONE HAS CONTESTED THAT

18   STATUTORY FACTOR, THAT QUALCOMM IS AN INTERESTED PERSON WHO IS

19   ENTITLED TO BRING THIS APPLICATION.

20    ON THE ISSUES OF CONFIDENTIALITY AND CHILLING INCENTIVES,

21   I DON'T THINK I NEED TO SPEND ANY MORE TIME THAN MAYBE THE

22   SENTENCE THAT I'M ABOUT TO FINISH TO SAY THAT YOUR HONOR IS

23   WELL ACQUAINTED WITH HOW TO HANDLE ISSUES OF CONFIDENTIALITY

24   AND BURDEN, AND THERE ARE A LOT OF TOOLS AT THIS COURT'S

25   DISPOSAL TO BE ABLE TO ADDRESS THOSE CONCERNS, AND MR. SELWYN'S

1    AFFIDAVIT DEMONSTRATES THAT THE PARTIES ARE VERY FAMILIAR WITH

2    THOSE TOOLS AS WELL AND IF THERE'S ANY ISSUE WITH RESPECT TO

3    CONFIDENTIAL INFORMATION BEING SHARED, WE CAN DEAL WITH THAT.

4    THERE ARE EXPERIENCED PEOPLE IN THE ROOM, INCLUDING YOUR HONOR,

5    WHO HAVE DEALT WITH THIS PROBLEM BEFORE.

6          AND THE SAME GOES FOR THE CHILLING INCENTIVES.  WE'RE NOT

7    TALKING ABOUT, YOU KNOW, BABES IN WOODS.  THESE ARE NOT

8    SHRINKING VIOLETS WHO ARE NOT GOING TO PURSUE A PARTICULAR

9    COMMERCIAL OBJECTIVE BECAUSE OF THE POSSIBILITY THAT THEY MIGHT

10   NEED TO UNDERGO DISCOVERY.  THAT'S JUST NOT THE SITUATION HERE.

11   IT'S NOT THE REALITY.

12         A FEW QUICK OTHER POINTS THAT ARE A LITTLE MORE TARGETED

13   TO SOME OF THE SPECIFIC APPLICANTS.

14         SO I SAID EARLIER THAT I DID MY BEST TO ANSWER YOUR

15   HONOR'S QUESTIONS ABOUT KOREAN LAW.  ONE AREA WHERE I ACTUALLY

16   AM VERY CONFIDENT IN MY KOREAN LEGAL ABILITIES, HAVING SPENT

17   SOME TIME ON THIS, IS ON THE SUBSTANTIVE ANTITRUST LAW.

18         MR. SIMMONS PASSED UP TO YOU REGULATIONS.

19              THE COURT:  YES.

20              MR. BORNSTEIN:  I WOULD LIKE TO DIRECT THE COURT TO

21   THE RELEVANT REGULATION WHICH DOES MAKE THE INDUSTRY PRACTICE

22   ISSUE ESSENTIAL TO THE ANALYSIS UNDER KOREAN LAW.  IT'S --

23   UNFORTUNATELY, THE DOCUMENT THAT WE GOT DOESN'T HAVE PAGE

24   NUMBERS ON IT.  I COUNTED -- ACTUALLY, MY ASSOCIATE COUNTED --

25   IT'S THE NINTH PAGE.

1          THE COURT:  OKAY.  I CAN COUNT, TOO, SO LET ME SEE IF

2     I CAN CATCH UP.

3          OKAY.  I'M THERE.

4          MR. BORNSTEIN:  IT HAS THE BOLD NUMBER 4 ON THE

5     BOTTOM.

6          THE COURT:  YES, I HAVE IT.

7          MR. BORNSTEIN:  SO RIGHT IN THE MIDDLE OF THE PAGE,

8     D(2), "UNJUSTLY DISCRIMINATING PRICE OR THE TRADING CONDITIONS

9     OR OFFERING TO A COUNTERPART UNREASONABLE CONDITIONS COMPARED

10    TO THE NORMAL TRADING PRACTICE."  RIGHT?

11         THAT IS ONE OF THE PROVISIONS OF THE KOREAN ANTITRUST LAW

12    THAT IS AT ISSUE IN THE E.R.  THAT IS THE INFORMATION THAT WE

13    WANT, THE INFORMATION FROM SAMSUNG WHERE SAMSUNG, IN THIS

14    COURT, HAS TAKEN POSITIONS THAT ARE DIRECTLY CONTRARY TO THE

15    POSITIONS WE BELIEVE IT HAS TAKEN IN FRONT OF THE KFTC IN ORDER

16    TO PURSUE THIS INVESTIGATION.

17         AND THAT IS ESSENTIAL FOR US TO UNDERSTAND AND PRESENT TO

18    THE KFTC COMMITTEE, THE DECISION MAKING BODY, WHO WILL ASSESS

19    THE CREDIBILITY OF THE PARTIES AND WHO WILL ALSO ASSESS THE

20    QUESTIONS OF INDUSTRY PRACTICE.

21         THAT IS CRITICAL.

22         THE COURT:  GOING BACK TO THE POINT WE'VE NOW

23    DISCUSSED AT SOME LENGTH, IT'S, IN YOUR VIEW, THE COMMITTEE OR

24    THE COMMISSIONER'S ABILITY TO WEIGH AND ASSESS THE EXAMINER'S

25    ARGUMENTS AND EVIDENCE ON THAT POINT THAT IS ULTIMATELY MOST

1      CRITICAL HERE, THAT WHATEVER THE EXAMINER MAYBE WANTS OR NOT

2      WANTS AS PART OF THIS PROCESS, OR IN THIS PROCESS, I HAVE TO

3      THINK ABOUT THE COMMISSIONER.

4           MR. BORNSTEIN:  THAT'S EXACTLY RIGHT, YOUR HONOR.

5           AND YOU'VE, FRANKLY, STOLEN WHERE I WAS HOPING TO END, SO

6      MAYBE I SHOULD JUST END.

7           BUT I WILL SAY JUST VERY QUICKLY, ON THE SUBJECT OF THE

8      INDIVIDUAL OBJECTIONS FROM SAMSUNG AND MEDIATEK, WITH RESPECT

9      TO MEDIATEK, I JUST OBSERVED THAT THE AFFIDAVIT THAT WE

10     RECEIVED FROM THE INDIVIDUAL AT MEDIATEK U.S.A. SAYS ONLY THAT

11     IT IS HIGHLY UNLIKELY THAT WE HAVE DOCUMENTS.  IT DOES NOT SAY

12     WE'VE DONE A CHECK.  MR. LOH, DR. LOH, DOES NOT INDICATE THAT

13     THE WORK HAS BEEN DONE TO FIND OUT WHAT'S THERE.

14          THE COURT:  I TAKE IT YOU WOULD NOT QUIBBLE WITH MY

15     OBSERVATION THAT IF, IN FACT, THERE ARE NO DOCUMENTS RESPONSIVE

16     TO THESE REQUESTS WITHIN THE POSSESSION, CUSTODY, OR CONTROL OF

17     THE SUBPOENAED ENTITY, THAT'S ALL THEY HAVE TO SAY AND WE'RE

18     DONE.

19          MR. BORNSTEIN:  THAT'S CORRECT.

20          AND YOUR HONOR ASKED ME EARLIER TODAY -- I ALMOST SAID

21     THIS MORNING BECAUSE IT HAS BEEN A WHILE -- BUT YOUR HONOR

22     ASKED ME EARLIER TODAY WHETHER THERE WERE OTHER PARTIES WHO

23     COOPERATED WITH THE KFTC WHO WE DID NOT FILE 1782 APPLICATIONS

24     WITH RESPECT TO.

25          THE COURT:  RIGHT.

1          MR. BORNSTEIN:  WELL, THERE ARE, BECAUSE THEY'RE NOT

2     HERE.  THE MEDIATEK PARENT ENTITY, WE RECOGNIZED, WAS NOT HERE.

3          BUT WE DO BELIEVE IN GOOD FAITH THAT THERE MAY VERY WELL

4     BE RELEVANT DOCUMENTS THAT ARE HERE WITH THE ENTITY THAT IS

5     HERE.

6          AND WITH RESPECT TO SAMSUNG, I DON'T HAVE MUCH MORE TO SAY

7     BEYOND WHAT YOUR HONOR HAS ALREADY SAID ABOUT ITS PRESENCE IN

8     THE JURISDICTION CERTAINLY BEING A FACTOR IN ANALYZING WHETHER

9     OR NOT IT IS HERE.

10          SO I'LL JUST MAKE TWO ADDITIONAL OBSERVATIONS, ONE BEING

11     IT HAS TAKEN ADVANTAGE VOLUNTARILY OF THE JURISDICTION BY BEING

12     A PLAINTIFF, AND ALSO, WHEN BEING SUED, AGREEING TO BE HERE.

13     IT HAS DETERMINED THAT THIS IS A JURISDICTION WHERE IT WANTS TO

14     BE.

15          AND, FRANKLY, IT'S A REASONABLY GOOD CHOICE, I DON'T BLAME

16     THEM, BUT IT'S A DECISION THAT THEY HAVE MADE.

17          THE COURT:  WITH ATTENDING CONSEQUENCES.

18          MR. BORNSTEIN:  WITH ATTENDING CONSEQUENCES.

19          THERE ALSO -- THERE HAPPENS TO BE -- AS PART OF THE

20     FACTORS THAT YOUR HONOR SHOULD CONSIDER, UP THE ROAD ON TAZMAN

21     THERE IS THE SAMSUNG SEMICONDUCTOR, INC., HEADQUARTERS FOR

22     THEIR AMERICAN OPERATION.

23          THIS IS NOT A JURISDICTION THAT -- EXCUSE ME.  THIS IS NOT

24     A COMPANY THAT IS SIMPLY ABSENT FROM THE JURISDICTION.

25          SO, YOUR HONOR, UNLESS YOU HAVE FURTHER QUESTIONS, WE'VE

```
 1    TAKEN A TREMENDOUS AMOUNT OF YOUR TIME.

 2            THE COURT:  I APPRECIATE YOUR COMMENTS,

 3     MR. BORNSTEIN, AND THOSE OF THE OTHER SIDE AS WELL.

 4            THANK YOU FOR THESE ARGUMENTS.  THEY WERE EXCELLENT AND

 5     VERY HELPFUL TO ME.  IT WILL NOT SURPRISE ANYONE, I SUSPECT,

 6     THAT I NEED TO CONSIDER THEM FURTHER.

 7            I WILL WORK MY HARDEST TO GET AN ORDER OUT AS QUICKLY AS I

 8     CAN.  I APPRECIATE TIME IS OF THE ESSENCE FOR EVERYBODY.

 9            I WISH YOU ALL A VERY GOOD EVENING.  THANK YOU.

10            MR. BORNSTEIN:  THANK YOU VERY MUCH, YOUR HONOR.

11            MR. SELWYN:  THANK YOU, YOUR HONOR.

12            MR. MUELLER:  THANK YOU, YOUR HONOR.

13        (THE PROCEEDINGS WERE CONCLUDED AT 4:08 P.M.)

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3                       CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____

17    LEE-ANNE SHORTRIDGE, CSR, CRR
      CERTIFICATE NUMBER 9595

18         DATED:  FEBRUARY 12, 2016

19

20

21

22

23

24

25