UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF QUALCOMM INCORPORATED,<br><br>               Applicant. | Case No. 5:16-mc-80002-PSG<br><br>**ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**<br><br>**(Re:  Docket No. 1)** |
| IN RE EX PARTE APPLICATION OF QUALCOMM INCORPORATED,<br><br>               Applicant. | Case No. 5:16-mc-80003-PSG |
| IN RE EX PARTE APPLICATION OF QUALCOMM INCORPORATED,<br><br>               Applicant. | Case No. 5:16-mc-80004-PSG |
| IN RE EX PARTE APPLICATION OF QUALCOMM INCORPORATED,<br><br>               Applicant. | Case No. 5:16-mc-80005-PSG |

1

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG, 5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

| | |
|---|---|
| IN RE EX PARTE APPLICATION OF QUALCOMM INCORPORATED, Applicant. | Case No. 5:16-mc-80006-PSG |
| IN RE EX PARTE APPLICATION OF QUALCOMM INCORPORATED, Applicant. | Case No. 5:16-mc-80007-PSG |
| IN RE EX PARTE APPLICATION OF QUALCOMM INCORPORATED, Applicant. | Case No. 5:16-mc-80008-PSG |

A few months back, Applicant Qualcomm Incorporated received an Examiner's Report from the Korean Fair Trade Commission. The news was not good: the Examiner charged Qualcomm and its licensing of standard-essential patents with violating South Korean antitrust law. The KFTC has set a date for Qualcomm to respond, but Qualcomm must do so without access to any materials the Examiner considered or even cited that were supplied by third parties. Deprived of this access in Korea, Qualcomm now turns to this court for help pursuant to 28 U.S.C. § 1782.[1]  Constrained in its discretion by the factors set forth by the Supreme Court,[2] the court

---

[1] *See* Docket No. 1 (all docket references are to Case No. 5:16-mc-80002-PSG unless otherwise specified); Case No. 5:16-mc-80003-PSG, at Docket No. 1; Case No. 5:16-mc-80004-PSG, at Docket No. 1; Case No. 5:16-mc-80005-PSG, at Docket No. 1; Case No. 5:16-mc-80006-PSG, at Docket No. 1; Case No. 5:16-mc-80007-PSG, at Docket No. 1; Case No. 5:16-mc-80008-PSG, at

2

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG, 5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  must DENY Qualcomm's application, as set forth below.

2  **I.**

3      A curious quirk of our law is that American courts are not limited to American disputes.  If

4  foreign tribunals and parties to their proceedings need evidence from third parties located in the

5  United States, they may take discovery of such evidence through a court-supervised procedure

6  enacted by Congress.  If the third party is willing to turn over the evidence, no problem.  United

7  States law "does not preclude a person within the United States from voluntarily giving his

8  testimony or statement, or producing a document or other thing, for use in a proceeding in a

9  foreign or international tribunal before any person and in any manner acceptable to him."[3]  But if

10  the third party is not so eager, relief is available from the federal courts in the form of an order

11  authorizing the issuance of a subpoena.[4]

12      To that end, Section 1782(a) holds that "[t]he district court of the district in which a person

13  resides or is found may order him to give his testimony or statement or to produce a document or

14  other thing for use in a proceeding in a foreign or international tribunal, including criminal

15  investigations conducted before formal accusation."  The statute adds that "[t]he order may be

16  made . . . upon the application of any interested person and may direct that the testimony or

17  statement be given, or the document or other thing be produced, before a person appointed by the

18  court."  A further provision adds that "[t]he order may prescribe the practice and procedure, which

19  may be in whole or part the practice and procedure of the foreign country or the international

20  

21  _____

22  Docket No. 1.

23  [2] *See Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

24  [3] 28 U.S.C. § 1782(b).

25  [4] 28 U.S.C. § 1782(a).  Additional relief may be available by request under the Hague Evidence
Convention, but that alternative is not at issue here.

26  3

27  Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
28  5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS

1    tribunal, for taking the testimony or statement or producing the document or other thing. To the

2    extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and

3    the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."

4           The KFTC is an administrative agency that enforces compliance with the Republic of

5    Korea's Monopoly Regulation and Fair Trade Act.[5]  MRFTA investigations are led by Examiners

6    from the KFTC's administrative staff and case teams from the KFTC's Anti-Monopoly Bureau.[6]

7    When conducting an investigation, the KFTC is empowered to request production of documents

8    and materials and interview individuals associated with both the target of the investigation or any

9    interested parties.[7]  Like many of its international counterparts, the KFTC often depends on the

10   cooperation of third parties when investigating alleged antitrust violations.[8]  To encourage third

11   parties to provide complete submissions and protect their sensitive and confidential information,

12   Article 62 of the MRFTA mandates that third party submissions be kept confidential.[9]  If a

13   preliminary investigation shows that there is reason to believe that an examinee's conduct violated

14   the MRFTA, an Examiner's Report is sent to the KFTC General Counsel's office and the

15   examinee.[10]  The General Counsel then dockets the case for hearing before the KFTC Committee,

16   which makes the final ruling on whether there has been an antitrust violation.[11]

17   _____

18   [5] *See* Docket No. 25-4 at ¶ 5.

19   [6] *See id.* at ¶ 6.

20   [7] *See* Docket No. 22-6 at ¶ 5.

21   [8] *See id.* at ¶ 6.

22   [9] *See* Docket No. 22-6 at ¶¶ 6, 11-15, 22; MRFTA, Art. 62 ("No commissioner, public official
23   who performs or has performed his/her duties under this Act . . . shall divulge any confidential
     information of an enterpriser or an enterprisers' organization which he/she learned in the course of
24   carrying out his/her duties, or use it for the purpose, other than to enforce this Act.").

25   [10] *See id.* at ¶ 7, 9.

26   [11] *See id.* at ¶ 9.

27                                                          4

28   Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
     5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
     ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
     FOREIGN PROCEEDINGS

United States District Court
Northern District of California

United States District Court
Northern District of California

The Examiner's Report is akin to a statement of charges, and it must include what is known as appended data, or evidence supporting the Examiner's position.[12]  Although the examinee receives a copy of the Examiner's Report, it does not automatically receive all of the appended data.  The KFTC Case Handling Procedures allow an examinee to request access to any withheld exhibits, but they also allow appended data exhibits to be redacted or withheld from the examinee to prevent the disclosure of a third party's confidential or competitively sensitive information.[13]  Even if the exhibits contain confidential information, the examinee may nonetheless ask the KFTC to allow it access.[14]  Following such a request, the Lead Commissioner will weigh the countervailing interests to determine whether to allow such access or the copying of such materials.[15]  Confidential materials also may be delivered to the examinee with the consent of the submitting party.[16]  An Examiner's Report's appended data does not necessarily contain all of the third-party documents acquired by the Examiner during an investigation, since only documents supporting the Examiner's position are included in appended data.[17]  In other words, it is possible for a third party to give the Examiner documents exculpating the examinee and for these documents to not be provided to the examinee or the Committee.[18]

After the Report is issued, the examinee may present a written response and defend itself at

---

[12] *See* Docket No. 25-4 at ¶ 10.

[13] *See id.*

[14] *See* Docket No. 22-6 at ¶ 14.

[15] *See id.*; KFTC Rules, Art. 29-2.

[16] *See* Docket No. 22-6 at ¶ 13; KFTC Rules, Art. 29 ¶ 10.

[17] *See id.* at ¶ 11.

[18] *See id.*

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG, 5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

United States District Court
Northern District of California

a hearing.[19]  The KFTC Committee oversees these hearings, and both the Examiner and the examinee present their positions.[20]  At the hearing, the Examiner and the examinee are in adversarial roles.[21]  The Committee then makes a final determination whether the examinee violated antitrust regulations, and if necessary, issues a binding order imposing monetary sanctions or remedial measures.[22]  The Committee's written ruling is appealable to the Seoul High Court and then to the Supreme Court of Korea.[23]

Qualcomm is in the business of selling chips used in mobile phone and other devices that run on cellular networks.  Qualcomm also licenses its vast portfolio of cellular-related patents to others who make these phones and other devices.  Late last year, KFTC Examiner Gyu-Ha Chai, who serves as Director General of the Anti-Monopoly Bureau, issued an Examiner's Report against Qualcomm.[24]  The Report alleges that Qualcomm's practices regarding standard-essential patent licensing[25] violate MRFTA, and recommends that the KFTC impose monetary penalties and order Qualcomm to modify its business practices,[26] based on statements and documents either

---

[19] *See id.* at ¶¶ 8-9.

[20] *See id.* at ¶ 9.

[21] *See* Docket No. 25 at 2.

[22] *See* Docket No. 25-4 at ¶ 9.

[23] *See* Docket No. 22-6 at ¶ 10.

[24] *See* Docket No. 25 at 2.

[25] A "standard" is a collection of technical specifications that allow mobile devices from various sources to interoperate on a cellular network.  Patents are essential to a standard if they must be practiced in order to comply with the standard's requirements.  *See Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304 (Fed. Cir. 2015).

[26] *See* Docket No. 1 at 3.

6

obtained from or concerning Respondents.[27]  Qualcomm initially received a portion of the Report's appended data, requested access to the material it had not received and received some more of the appended data, but with redactions.[28]  Qualcomm's request for the remaining appended data is still pending.[29]

Qualcomm now applies ex parte under Section 1782 for leave to take discovery from Respondents to prepare its response to the Examiner's Report and for hearing before the KFTC Committee.[30]  The discovery Qualcomm seeks includes both a broad set of documents and deposition testimony.  Qualcomm's justification for these demands is straightforward:  it needs the documents and testimony to defend its licensing practices before the full KFTC Committee.  Five of the Respondents—Apple, Intel, MediaTek, Samsung Entities and Texas Instruments—oppose.[31]  Significantly, the KFTC itself, as amicus curiae, also opposes Qualcomm's applications.[32]  Qualcomm has filed an omnibus reply brief, and the court heard oral argument on February 9, 2016.[33]

---

[27] *See id.*; Case No. 5:16-mc-80003-PSG, at Docket No. 1 at 3; Case No. 5:16-mc-80004-PSG, at Docket No. 1 at 3; Case No. 5:16-mc-80005-PSG, at Docket No. 1 at 3; Case No. 5:16-mc-80006-PSG, at Docket No. 1 at 4; Case No. 5:16-mc-80007-PSG, at Docket No. 1 at 3; Case No. 5:16-mc-80008-PSG, at Docket No. 1 at 4.

[28] *See* Docket No. 25 at 3.

[29] *See id.*

[30] *See* Docket No. 1; Case No. 5:16-mc-80003-PSG, at Docket No. 1; Case No. 5:16-mc-80004-PSG, at Docket No. 1; Case No. 5:16-mc-80005-PSG, at Docket No. 1; Case No. 5:16-mc-80006-PSG, at Docket No. 1; Case No. 5:16-mc-80007-PSG, at Docket No. 1; Case No. 5:16-mc-80008-PSG, at Docket No. 1.

[31] *See* Docket No. 22; Case No. 5:16-mc-80003-PSG, at Docket No. 25; Case No. 5:16-mc-80005-PSG, at Docket No. 21; Case No. 5:16-mc-80006-PSG, at Docket No. 16; Case No. 5:16-mc-80007-PSG, at Docket No. 19.

[32] *See* Docket No. 16.

[33] *See* Docket Nos. 25, 27.

7

**II.**

This court has subject matter jurisdiction over Qualcomm's applications under Section 1782. Although these applications may be sought ex parte under Civ. L.R. 7-10, this court exercised its discretion to allow briefing at this stage by the targets of interest.[34]

One question—among many—raised by Qualcomm's applications is who bears the burden of proof on the many issues of fact disputed by the parties. Normally that burden falls on the moving party, but no appellate court to the undersigned's knowledge has established this explicitly in the specific context of Section 1782 applications. This court need not resolve that question here because, even if the burden on these disputed facts lies entirely with the targets of the proposed subpoenas, those targets have established that the *Intel* factors collectively weigh against granting the applications.

**III.**

When considering a Section 1782 application, the court must first determine whether Section 1782's three statutory requirements are satisfied, and then whether the four factors laid out in *Intel* support issuing a subpoena. Section 1782 first requires that "the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made."[35] When applied to corporations, the word "found" "'may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence.'"[36] The second requirement is that "the discovery is for use in a proceeding before a foreign tribunal."[37]

---

[34] *See* Docket No. 15; Case No. 5:16-mc-80003-PSG, at Docket No. 16; Case No. 5:16-mc-80005-PSG, at Docket No. 16; Case No. 5:16-mc-80007-PSG, at Docket No. 16.

[35] 28 U.S.C. § 1782(a).

[36] *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (quoting Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 10 (1998)).

[37] 28 U.S.C. § 1782(a).

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG, 5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

United States District Court
Northern District of California

Congress' use of the term "tribunal" was intended to "ensure that 'assistance is not confined to proceedings before conventional courts,' but extends also to 'administrative and quasi-judicial proceedings.'"[38]  The third requirement is that "the application is made by a foreign or international tribunal or any interested person."[39]  If these factors are satisfied, then the "court may grant [the] application."[40]

However, simply because a court has the authority under Section 1782 to grant an application does not mean that it is required to do so.[41]  In *Intel*, the Supreme Court identified several factors that a court must take into consideration in ruling on a Section 1782 request, once the statutory requirements are satisfied:

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests.[42]

Applying the above standards, while Qualcomm's applications satisfy Section 1782's statutory requirements, the *Intel* considerations weigh against granting Qualcomm's requested subpoenas.

***First***, taking the statutory requirements in order, the first factor is satisfied: all of the Respondents reside or are found in this district.  Apple and Intel are headquartered in this district.

---

[38]  *Intel*, 542 U.S. at 249 (quoting S. Rep. No. 1580, 88th Cong., 2d Sess., 7 (1964), U.S. Code Cong. & Admin. News 1964, pp. 3782, 3788).

[39]  28 U.S.C. § 1782(a).

[40]  *Id.*

[41]  *See Intel*, 542 U.S. at 264.

[42]  *In re Republic of Ecuador*, Case No. C-10-80225, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010) (citing *Intel*, 542 U.S. at 264-65).

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG, 5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

United States District Court
Northern District of California

1  MediaTek acknowledges that it is found in this district.[43]  Broadcom is headquartered in Irvine, in

2  the Central District, but it maintains offices in San Jose, Santa Clara and Sunnyvale, which are

3  within the Northern District.[44]  Texas Instruments is headquartered in Texas but maintains an

4  office in Sunnyvale.[45]  VIA Technologies is similarly headquartered outside this district but

5  maintains an office in Fremont, also in the Northern District.[46]  Through these in-district offices,

6  Broadcom, Texas Instruments and VIA Technologies conduct "systematic and continuous local

7  activities" and thus may be found within the Northern District for the purposes of Section 1782.[47]

8

9  [43] *See* Case No. 5:16-mc-80005-PSG, at Docket No. 21 at 6.  MediaTek argues that while
   MediaTek USA is found here, its foreign affiliates are not, and that MediaTek USA does not
10  possess any relevant documents.  *See Four Pillars Enterprises Co., Ltd. v. Avery Dennison Corp.*,
   308 F.3d 1075 (9th Cir. 2002) (acknowledging support for the view that § 1782 was not intended
11  to support discovery of material located outside the United States); *In re Judicial Assistance
   Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, Case No. 2:14-CV-00797-GMN, 2015 WL
12  3439103, at *10, *reconsideration denied sub nom. Matter of A Petition for Judicial Assistance
   Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, Case No. 214CV00797GMNNJK, 2015
13  WL 7258483 (D. Nev. Nov. 17, 2015) ("[t]he legislative history to § 1782 indicates that it was
   intended to aid in obtaining oral and documentary evidence in the United States and some of its
14  drafters have expressed policy concerns with applying it more broadly, which together have given
   courts reason to think that Congress intended to reach only evidence located within the United
15  States.") (quotation marks omitted); *Norex Petroleum Ltd. v. Chubb Ins. Co. of Canada*, 384 F.
   Supp. 2d 45, 57 (D.D.C. 2005) (concluding that the location of the documents outside of the
16  United States strongly "militate[s] against ordering that the requested documents . . . be
   produced").  Because the *Intel* factors weigh against granting Qualcomm's subpoena, the court
17  does not reach the issue of whether it may authorize discovery of documents held outside the
   United States.
18

19  [44] *See Locations*, Broadcom.com, https://www.broadcom.com/contact/locations.php (last visited
   Jan. 20, 2016).
20

21  [45] *See* Case No. 5:16-mc-80007-PSG at Docket No. 1 at 5.
22

23  [46] *See Sales Offices*, VIA, http://www.viatech.com/en/about/sales-offices/ (last visited Jan. 20,
   2016).
24

25  [47] *In re Godfrey*, 526 F. Supp. 2d at 422 (citing Hans Smit, *American Assistance to Litigation in
   Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse
   J. Int'l L. & Com. 1, 10 (1998)).
26

27                                          10

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
28  5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
   ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
   FOREIGN PROCEEDINGS

United States District Court
Northern District of California

1    As for the Samsung Entities—the only Respondent to seriously contest this factor—while

2    they do not reside here,[48] they conduct systematic and continuous local activities in this district

3    and thus are found here.  Even a quick look at this court's docket shows they have availed

4    themselves of the jurisdiction of this court in many protracted lawsuits.[49]  What's more, SEA is

5    and STA was registered and authorized to do business in California and SEC's wholly-owned

6    subsidiary, Samsung Research America, Inc., is a California corporation headquartered in this

7    district.[50]

8    The Samsung Entities argue that none of these facts is sufficient to render them found in

9    this district.[51]  It is true that courts have held that each of these contacts when taken alone may be

10   insufficient to establish a systematic and continuous presence in a district.[52]  What the Samsung

11   Entities do not address, however, is whether the combined effect of all of these activities and

12   contacts adds up to systematic and continuous local activities in this district.  The court finds that

13   it does.  After all, the Samsung Entities brought suit against Apple here as plaintiff and

14   counterclaimant, rather than being haled into this forum as a defendant.[53]  And in contrast to many

16   [48] SEC is headquartered in Korea, SEA is headquartered in New Jersey and STA was merged into
     SEA last year.  *See* Case No. 5:16-mc-80006-PSG at Docket No. 16 at 1.

18   [49] *See, e.g., Samsung Electronics Co., Ltd. v. Apple Inc.*, Case No. 5:11-cv-02079-LHK (N.D. Cal.
     filed Apr. 27, 2011); *Apple Inc. v. Samsung Electronics Co. Ltd. et al*, Case No. 5:11-cv-01846-
19   LHK (N.D. Cal. filed Apr. 15, 2011); *Apple Inc. v. Samsung Electronics Co., Ltd. et al*, Case No.
     5:12-cv-00630-LHK (N.D. Cal. filed Feb. 8, 2012).

20   [50] *See* Docket No. 25 at 23.

21   [51] *See* Case No. 5:16-mc-80006-PSG at Docket No. 16 at 7.

23   [52] *See, e.g., Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. App'x. 86, 96 (10th Cir. 2012); *Soma
     Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999); *King v. Am. Family
24   Mut. Ins. Co*., 632 F.3d 570, 579 (9th Cir. 2011); *Senne v. Kan. City Royals Baseball Corp*., 105 F.
     Supp. 3d 981 (N.D. Cal. May 20, 2015); *Godfrey*, 526 F. Supp. 2d at 421 n.1.

25   [53] *See* Case No. 5:16-mc-80006-PSG at Docket No. 1 at 6; *Samsung Electronics Co., Ltd. v. Apple
26   Inc.*, Case No. 5:11-cv-02079-LHK (N.D. Cal. filed Apr. 27, 2011); *Apple Inc. v. Samsung*

11

28   Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
     5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
     ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
     FOREIGN PROCEEDINGS

of the cases the Samsung Entities cite,[54] here, part of the discovery Qualcomm seeks relates to Samsung's position in those very same lawsuits.[55]  Put another way, the lawsuits are not an unrelated pretext for Section 1782 jurisdiction.  The combination of the Samsung Entities' deliberate choice of this forum for its litigation with the relatedness of that litigation to the Section 1782 application, SEA and STA's registration to do business in California[56] and the presence of a

_Electronics Co. Ltd. et al_, Case No. 5:11-cv-01846-LHK (N.D. Cal. filed Apr. 15, 2011); _Apple Inc. v. Samsung Electronics Co., Ltd. et al_, Case No. 5:12-cv-00630-LHK (N.D. Cal. filed Feb. 8, 2012).  The Samsung Entities cite _AstraZeneca Pharms. LP v. Mylan Pharms. Inc. (In re Rosuvastatin Calcium Patent Litig.)_, Case No. MDL No. 08-1949, 2009 U.S. Dist. LEXIS 117355 (D. Del. Dec. 11, 2009).  _See_ Case No. 5:16-mc-80006-PSG at Docket No. 16 at 8.  The court in that case found it relevant that the company had been haled into the forum as a defendant, but here, Samsung was both a plaintiff and counterclaimant in its litigation with Apple.

[54] _See, e.g._, _Soma Med. Int'l v. Standard Chartered Bank_, 196 F.3d at 1296 (finding that filing suit to "recover monies and/or foreclose on trust deeds" did not render the company subject to general jurisdiction in a breach of contract case); _Mobius Risk Grp., LLC v. Glob. Clean Energy Holdings, Inc._, Case No. CIV.A. H-10-1708, 2012 WL 590926, at *4 (S.D. Tex. Feb. 22, 2012) ("[A]ctively participat[ing] in recent, unrelated litigation" is "insufficient . . . to make a nonresident defendant subject to general jurisdiction in the forum state"); _Blackwell v. Marina Assocs._, Case No. Civ.A. 05-5418, 2006 WL 573793, at *5 (E.D. Pa. Mar. 9, 2006) ("[T]he fact that defendant has brought suit in Pennsylvania . . . is immaterial" because "there is no allegation that Blackwell's personal injury claim has any relationship with any of these other actions"); _Travelers Cas. & Sur. Co. v. Interclaim (Berm.) Ltd._, 304 F. Supp. 2d 1018, 1025 (N.D. Ill. 2004) ("Travelers . . . has not carried its burden by providing any authority whatsoever for the dubious proposition that general jurisdiction may be asserted on the basis of involvement in an unrelated lawsuit.").

[55] _See_ Docket No. 25 at 24.

[56] Other cases have recognized that designating an agent for service of process and holding a license support a finding of continuous and systematic contacts. _See, e.g._, _Bancroft & Masters, Inc. v. Augusta National Inc._, 223 F.3d 1082, 1086 (9th Cir. 2000); _Hirsch v. Blue Cross, Blue Shield of Kansas City_, 800 F.2d 1474, 1478 (9th Cir. 1986).  Under California law in particular, registering to do business manifests a company's intent to engage in repeated and successive business activities in this state.  _See_ Cal. Corp. Code § 2105(a) ("A foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification"); Cal. Corp. Code § 191(a) ("For the purposes of Chapter 21 (commencing with Section 2100), 'transact intrastate business' means entering into repeated and successive transactions of its business in this state . . . .").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Samsung subsidiary in this district[57] makes it clear that the Samsung Entities engage in systematic

2    and continuous activities in this district.  Any one activity standing alone might be insufficient, but

3    these activities do not stand alone, and taken as a whole, they are systematic and continuous local

4    activity.[58]

5            Section 1782's second and third statutory requirements also are satisfied.  As to the second

6    requirement, the discovery sought is for use in a proceeding before the KFTC, which is a foreign

7    administrative agency.  *Intel* held that Section 1782 "authorizes, but does not require, a federal

8    district court to provide assistance to a complainant in a European Commission proceeding that

9    leads to a dispositive ruling, *i.e.*, a final administrative action both responsive to the complaint and

10   reviewable in court."[59]  Like the European Commission, the KFTC is an administrative agency

11   empowered to render a "final administrative action," and its rulings are reviewable in court.[60]  As

12   for the third requirement, the application is made by Qualcomm, which qualifies as an interested

13

14   _____

15   [57] Samsung acknowledges that one of its subsidiaries maintains a permanent headquarters in this
     District, but cites cases to show that the presence of a wholly-owned subsidiary within a district is
16   insufficient to establish that the parent is "found" there.  *See* Case 5:16-mc-80006-PSG at Docket
     No. 16 at 9.  However, one court rejected that factor only to the extent it was the sole reason the
17   court could decide that the parent was "found" in the district, *see In re Application of Nokia Corp.*,
     Case No. 1:07-MC-47, 2007 WL 1729664, at *4 n.3 (W.D. Mich. June 13, 2007) ("Nokia does not
18   suggest that the Court may conclude that Bosch resides in or is present in this district merely
     because a Bosch subsidiary is present here."), and another disregarded a local office because the
19   subsidiaries were not headquartered or incorporated in the District. *See In re Certain Funds,*
     *Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, Case No. 14 CIV.
20   1801 NRB, 2014 WL 3404955, at *5 (S.D.N.Y. July 9, 2014).

21   [58] *See Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F. Supp. 2d 1013, 1024 (N.D. Cal. 2005)
22   ("[E]ven though AtomicPark's contacts with California taken individually would not sustain
     general jurisdiction, the Court concludes that, based on the totality of the contacts, they are
23   sufficiently substantial, continuous, and systematic so as to support a finding of general
     jurisdiction.").
24

25   [59] *Intel*, 542 U.S. at 255.

26   [60] *See* Docket No. 2 at ¶¶ 5, 9.

                                                    13

27

28   Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
     5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
     ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
     FOREIGN PROCEEDINGS

person because it is the subject of the KFTC proceeding.[61]  All three statutory requirements thus are satisfied as to each Respondent.

**Second**, the *Intel* factors nonetheless collectively weigh against granting Qualcomm's applications.  The first factor, "whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid,"[62] is neutral.  The Supreme Court has noted that

> [w]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.  In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.[63]

Apple, MediaTek and the Samsung Entities argue that they are participants in the KFTC proceedings because they gave documents and information to the KFTC's investigatory team.[64]  Intel argues that it has provided most of the discovery that Qualcomm seeks to the KFTC, and that because it cooperated with the agency's requests, it is within the KFTC's reach.[65]  Texas Instruments makes the related argument that it gave documents and information to the KFTC investigators.[66]

---

[61] *See In re Ex Parte Application of Glob. Energy Horizons Corp*., Case No. 5:15-MC-80078-PSG, 2015 WL 1325758, at *2 (N.D. Cal. Mar. 24, 2015) ("there can be no real dispute that GEHC qualifies as an interested person because it is a party to the foreign proceeding").

[62] *In re Republic of Ecuador*, 2010 WL 3702427, at *2 (citing *Intel*, 542 U.S. at 264-65).

[63] *Intel*, 542 U.S. at 264.

[64] *See* Docket No. 22 at 7; Case No. 5:16-mc-80005-PSG, at Docket No. 21 at 9; Case No. 5:16-mc-80006-PSG, at Docket No. 19 at 5.

[65] *See* Case No. 5:16-mc-80003-PSG at Docket No. 25 at 9, 11.

[66] *See* Case No. 5:16-mc-80007-PSG at Docket No. 19 at 5.

14

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG, 5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

United States District Court
Northern District of California

1      It is unclear from the information available to the court, however, whether cooperating

2  with the Examiner's investigation makes these Respondents participants in the KFTC proceedings.

3  The KFTC Committee makes the final ruling whether an antitrust violation has occurred, and both

4  Qualcomm and the Examiner will appear before the Committee to argue their positions.  None of

5  the Respondents argues that it will be appearing before the Committee, or that it bears any relevant

6  relation to either Qualcomm or the Examiner.  In that light, Qualcomm and the Examiner are the

7  participants in the KFTC proceedings, and so cooperating with the Examiner's investigation does

8  not mean that the Respondents are participants before the foreign tribunal responsible for

9  adjudicating the dispute.[67]

10     The issue of whether an entity is a participant, however, is not dispositive; *Intel* puts it in

11  the context of whether the foreign tribunal has the authority to order an entity to produce the

12  disputed evidence.  Other courts have interpreted this to focus on whether the evidence "is

13  available to the foreign tribunal," because in some circumstances, evidence may be available to a

14  foreign tribunal even if it is held by a non-participant to the tribunal's proceedings.[68]  Qualcomm

16  [67] *See In re Kreke Immobilien KG*, Case No. 13 Misc. 110 NRB, 2013 WL 5966916, at *4-5
17  (S.D.N.Y. Nov. 8, 2013) (rejecting application to take U.S. discovery from Deutsche Bank when
proposed defendant in foreign proceedings was Deutsche Bank's wholly owned subsidiary); *In re*
18  *Cathode Ray Tube (CRT) Antitrust Litig.*, Case No. C-07-5944-SC, 2013 WL 183944, at *2 (N.D.
Cal. Jan. 17, 2013) (noting that "it is obvious that Sharp actually seeks information about [other]
19  Defendants, some of whom are subject to Korean discovery rules as parties to the Korean
Litigation"); *In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use*
20  *in a Foreign Proceeding*, Case No. M 19-99(RJS), 2009 WL 3335608, at *5-7 (S.D.N.Y. Oct. 15,
2009) (rejecting application to take U.S. discovery of corporate secretary and director of Yukos
21  companies when other Yukos directors were plaintiffs in the action and could produce the
22  requested discovery).

23  [68] *In re Microsoft*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006); *see also In re Judicial Assistance*
24  *Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, 2015 WL 3439103 at *6 ("Although the case
law at times refers to whether the 'person' is within the foreign tribunal's jurisdictional reach, the
25  key issue is whether the material is obtainable through the foreign proceeding"); *In re Ex Parte*
*LG Elecs. Deutschland GmbH*, Case No. 12CV1197-LAB MDD, 2012 WL 1836283, at *2 (S.D.
26  Cal. May 21, 2012) (first *Intel* factor weighed against applicant where target was not a party to

15

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS

states that there is no means for it to compel production of the evidence from Respondents,[69] but it is unclear whether the Committee can do so, such that the evidence is available to it. This *Intel* factor thus is neutral.

The second *Intel* factor, which is "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,"[70] strongly favors Respondents. Courts conducting this analysis focus on the utility of the evidence sought and whether the foreign tribunal is likely to receive the evidence.[71] The KFTC's amicus brief asks this court "to deny Qualcomm's applications in their entirety as a matter of comity" and states that "the KFTC has no need or use for the requested discovery."[72] It may be true that the KFTC's views are not dispositive,[73] but the KFTC is clear that it is not at all receptive to U.S. federal-court judicial assistance in this matter.[74]

_____

foreign lawsuit because the information could be requested from the other parties to that proceeding); *In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, 2009 WL 3335608 at *5 ("it is the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application, on which the district court should focus"); *In re Application of Microsoft Corp.*, 428 F. Supp. 2d at 194 ("While IBM and Cleary Gottlieb are not 'participants,' per se, in the underlying antitrust proceeding, all of the documents sought by Microsoft are within the Commission's reach.").

[69] *See* Docket No. 25-4 at ¶ 11.

[70] *Intel*, 542 U.S. at 264.

[71] *See, e.g., In re Ex Parte Application of Nokia Corp.*, Case No. 513MC80217EJDPSG, 2013 WL 6073457, at *3 (N.D. Cal. Nov 8, 2013); *Ex Parte Rigby*, Case No. 13-cv-0271 MMA (MDD), 2013 WL 622235, at *3 (S.D. Cal. Feb 19, 2013).

[72] Docket No. 16 at 1, 3.

[73] *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2010).

[74] *See In re Application of Microsoft Corp.*, Case No. C 06-80038 JF (PVT), 2006 WL 825250, at *2-3 (N.D. Cal. Mar. 29, 2006) (denying a request where "it appears that the European Commission is *not* receptive to U.S. federal court judicial assistance in this case") (emphasis

16

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG, 5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1   Qualcomm argues that the court should disregard the information in the amicus brief,

2   because it "does not come from the General Counsel's office responsible for administration of the

3   hearing phase of the proceedings or from the KFTC Committee that will make the ultimate

4   decision."[75]  In fact, the brief was written by the Examiner leading the Qualcomm investigation.[76]

5   Qualcomm thus implies that the brief states only the Examiner's views, and so while the Examiner

6   might not want the requested discovery, the Committee, which is a separate entity, might be

7   receptive to it.[77]  In not so many words, Qualcomm's argument is that the amicus brief does not

8   represent the views of the KFTC or the KFTC Committee, but Qualcomm's adversary in the

9   KFTC proceedings.

10   Be that as it may, the court must take the amicus brief at face value.  While it is true that

11   the brief is signed by Gyu-Ha Chai, the Examiner investigating Qualcomm, there is no indication

12   that it represents his own views and not the KFTC's as a whole, or that he is speaking only in his

13   capacity as an Examiner and not for the KFTC.  The brief is on KFTC letterhead.  The first

14   paragraph states that "[t]he Korea Fair Trade Commission (the "KFTC") respectfully submits this

15   letter," and the brief repeatedly states the positions of "the KFTC."[78]  Qualcomm cites no previous

16

17   original); *see also Advanced Micro Devices, Inc. v. Intel Corp.*, Case No. C 01-7033, 2004 WL
2282320, at *2 (N.D. Cal. Oct. 4, 2004) ("[T]he EC is not receptive to judicial assistance in this

18   case."); *In re Application of Microsoft Corp.*, 428 F. Supp. 2d at 194 (finding second *Intel* factor
"cuts sharply against" a request where "the [European] Commission has explicitly stated that it

19   opposes the discovery sought by Microsoft and is not receptive to U.S. judicial assistance," and
that "[g]ranting discovery in the face of opposition from the foreign tribunal would undermine the

20   spirit and purpose of the statute by discouraging . . . other foreign tribunals from heeding similar
sovereignty concerns posited by our governmental authorities to foreign courts.").

21

22   [75] Docket No. 25 at 9.

23   [76] *See id.* at 10; Docket No. 25-4 at ¶ 6.

24   [77] *See* Docket No. 25 at 9-10.

25   [78] Docket No. 16 at 1-3 (*e.g.*, "The KFTC opposes Qualcomm Incorporated's applications . . . The
26   KFTC asks the Court to deny Qualcomm's applications . . . the KFTC has no need for the

17

27

28   Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  case where a court disregarded the stated position of the tribunal that it did not want the discovery

2  sought.  Without any concrete reasons to reject these markers of authenticity, the court must

3  accept the amicus brief as representing the KFTC's position.  This *Intel* factor thus strongly favors

4  Respondents.

5      The third *Intel* factor, which is whether an applicant seeks "to circumvent foreign proof-

6  gathering restrictions or other policies of a foreign country or the United States," also favors

7  Respondents.  The KFTC states that it has procedures for requesting "copies of documents and

8  data supporting" the Examiner's Report and that Qualcomm has a pending request for those

9  materials.[79]  Given that there is an existing procedure in Korea, the KFTC believes that

10  Qualcomm's Section 1782 applications "seek[] to improperly bypass Korean legal procedures for

11  obtaining documents submitted to the KFTC by third parties."[80]  The consequences of allowing

12  Qualcomm to do this would be grave:

> [p]ermitting Qualcomm to sidestep Korean legal procedures and obtain these materials directly from the Companies under U.S. law would subvert the KFTC's power to control when and how confidential investigatory materials are released. Currently, the KFTC can balance Korean policy goals and the privacy and confidentiality rights of third parties against the target of the investigation's potential need for the information . . . . This balancing would be impossible, however, if the target of an investigation into a potential violation of Korean law could run to the U.S. courts and obtain all materials provided to the KFTC (along [sic] with other materials) by third parties with some connection to the U.S.[81]

18      Qualcomm argues that its applications do not circumvent the KFTC's Case Handling

19  Procedures because it seeks more discovery under its Section 1782 applications than it can obtain

22  requested discovery.").

23  [79] *Id.* at 2.

24  [80] *Id.* at 1.

25  [81] *Id.* at 2.

26                                            18

27  Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
28  5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
    ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
    FOREIGN PROCEEDINGS

1    through the Case Handling Procedures.[82]  These procedures allow Qualcomm to request only the

2    materials in the appended data, which are the documents that the Examiner chose to attach to the

3    Report as evidence supporting the allegations of anticompetitive behavior.[83]  Any documents that

4    Respondents produced to the KFTC that would support Qualcomm's defense are unlikely to be in

5    the appended data, and any documents that Respondents did not give to the KFTC would not be in

6    the appended data.  Qualcomm needs these documents to defend itself, and to obtain these

7    documents, Qualcomm argues, it needs a Section 1782 subpoena.

8         It is true that the KFTC's existing procedures provide Qualcomm a narrower set of

9    documents than it could discover under U.S. law, and that to a large extent Qualcomm seeks

10   documents not discoverable through the KFTC's procedures.  But Qualcomm's applications raise

11   additional concerns.  According to the KFTC, allowing Qualcomm to do an end run around

12   existing Korean procedures is problematic not just because it colors outside the lines, but because

13   it may discourage third parties from cooperating with future KFTC investigations and hinder the

14   KFTC's ability to enforce antitrust law.  "The KFTC relies heavily on third parties to gain

15   information," and so "the KFTC and Korean law have measures in place to protect the identities of

16   cooperating companies and the confidentiality of the information they provide."[84]  "Exposing the

17   Companies and other third parties to discovery under U.S. law would . . . discourage them from

18   cooperating with the KFTC in future investigations and from reporting anticompetitive conduct to

19   the KFTC."[85]  In essence, the KFTC states that it has a system for protecting its investigatory

20   enforcement capabilities, third party interests, and a target's right to obtain information to defend

21

22   _____

     [82] *See* Docket No. 25 at 11-12.

23   [83] *See id.* at 12.

24   [84] *Id.*

25   [85] *Id.*

26

                                                  19

27   Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
     5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
28   ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
     FOREIGN PROCEEDINGS

1  itself, and allowing U.S. discovery would upset that delicate balancing act.  Even if Qualcomm's

2  applications only seek to circumvent KFTC procedures as to a portion of the requested discovery,

3  these real concerns weigh against granting the applications.  Qualcomm argues that there are

4  methods for addressing the KFTC's policy concerns,[86] but principles of comity direct this court

5  not to substitute its own judgment for the KFTC's on how to best manage its affairs.[87]

6      The fourth *Intel* factor, which is "whether the subpoena contains unduly intrusive or

7  burdensome requests,"[88] also favors Respondents.  Requests are unduly intrusive and burdensome

8  where they are not narrowly tailored, request confidential information and appear to be

---

[86] *See id.* at 12-16.

[87] *See In re Application of Microsoft Corporation*, 2006 WL 825250 at *3; *see also In re
Application of Microsoft Corp.*, 428 F. Supp. 2d at 195-96 (quoting *Pravin Banker Assocs., Ltd. v.
Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997)) (granting Section 1782 application
"would contravene the purpose of § 1782 by pitting this Court against the Commission, rather than
fostering cooperation between them, and would violate established principles of comity, under
which 'United States courts ordinarily refuse to review acts of foreign governments and defer to
proceedings taking place in foreign countries.'").  Only recently, the United States and Korea
affirmed this principle of comity.  In September 2015, the U.S. Department of Justice and Federal
Trade Commission signed a "Memorandum of Understanding on Antitrust Cooperation" with the
KFTC.  Among other provisions, the agencies agreed to "give careful consideration to the
enforcement objectives and important interests of the other country's competition authority or
authorities in conducting its enforcement activities." Memorandum of Understanding on Antitrust
Cooperation Between the United States Department of Justice and the United States Federal Trade
Commission, of the One Part, and the Korea Fair Trade Commission, of the Other Part (Sept. 8,
2015), § 1.3, *available at*
https://www.ftc.gov/system/files/documents/cooperation_agreements/150908kftc-ftc-dojmou.pdf;
Docket No. 22-1 at ¶ 13; Docket No. 22-5.  *Cf. In re Rubber Chemicals Antitrust Litig.*, 486 F.
Supp. 2d 1078 (N.D. Cal. 2007) (under Rule 26, plaintiff is not entitled to discover
communications made pursuant to the EC's Leniency Program between a defendant's affiliate and
the EC, based upon principles of comity); *In re Degitechnic*, Case No. C07-414-JCC, 2007 WL
1367697, at *5 (W.D. Wash. May 8, 2007) (Section 1782 "application seeking discovery never
sought in France certainly appears to be a circumvention attempt"); *In re Application of OOO
Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, 2009 WL
3335608 at *9 ("granting the [§ 1782] Application would only frustrate the careful balance struck
by the Dutch courts in the underlying Dutch Proceedings").

[88] *Intel*, 542 U.S. at 265.

20

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS

a broad "fishing expedition" for irrelevant information.[89]  In the more recent parlance of the December 1, 2015 Amendments to the Federal Rules of Civil Procedure, requests must be "proportional" "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[90]

From Apple, Qualcomm seeks the following:

- All documents provided by Apple to the KFTC in connection with any investigation or proceeding from January 1, 2011 to the present, concerning "Qualcomm, Mobile Devices, Modem Chipsets, and/or Cellular IPR, and all documents quoted, cited or referenced therein."[91]

- Documents from January 1, 2005, to the present, sent by Apple to Qualcomm "sufficient to show any request by Apple to Qualcomm for a license *only* to Cellular IPR or any response by Qualcomm to such a request."[92]

- Documents provided by Apple to Qualcomm "sufficient to show any request by Apple for a list of any Qualcomm IPR or any response by Qualcomm to such a request."[93]

- All documents filed or served by Samsung in several cases between Samsung and Apple.[94]

---

[89] See *Matter of Application of O2CNI Co., Ltd.*, Case No. C 13-80125 CRB (LB), 2013 WL 5826730, at *15-16 (N.D. Cal. Oct. 29, 2013).

[90] Fed. R. Civ. P. 26(b)(1).

[91] Docket No. 1-1 at ECF p. 9.

[92] *Id.*

[93] *Id.*

[94] *See id.*

21

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG, 5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

United States District Court
Northern District of California

- A deposition related to these topics.[95]

From Intel, Broadcom, MediaTek, Samsung, Texas Instruments and VIA Technologies, Qualcomm requests the following:

- "All documents You have provided to the KFTC in connection with any investigation or proceeding from January 1, 2011 to the present," concerning "Qualcomm, Mobile Devices, Modem Chipsets, and/or Cellular IPR, and all documents quoted, cited or referenced therein."[96]

- "Documents received by You from January 1, 2005 to the present" from a Modem Chipset customer or potential customer "sufficient to show any concerns on the part of such customer or potential customers regarding Your lack of an exhaustive license from Qualcomm to Cellular IPR."[97]

- "Documents from January 1, 2005 to the present sufficient to show any decision by You to limit Your sales or development of Modem Chipsets or any components of a Modem Chipset due to Your lack of an exhaustive license from Qualcomm to Cellular IPR."[98]

---

[95] *See id.* at ECF p. 17.

[96] Case No. 5:16-mc-80003-PSG at Docket No. 1-1 at ECF p. 9; Case No. 5:16-mc-80004-PSG at Docket No. 1-1 at ECF p. 9; 5:16-mc-80005-PSG at Docket No. 1 at ECF p. 22; 5:16-mc-80006-PSG at Docket No. 1-1 at ECF p. 9; 5:16-mc-80007-PSG at Docket No. 1-1 at ECF p. 9; 5:16-mc-80008-PSG at Docket No. 1 at ECF p. 22.

[97] Case No. 5:16-mc-80003-PSG at Docket No. 1-1 at ECF p. 9; Case No. 5:16-mc-80004-PSG at Docket No. 1-1 at ECF p. 9; 5:16-mc-80005-PSG at Docket No. 1 at ECF p. 22; 5:16-mc-80006-PSG at Docket No. 1-1 at ECF p. 10; 5:16-mc-80007-PSG at Docket No. 1-1 at ECF p. 9; 5:16-mc-80008-PSG at Docket No. 1 at ECF p. 22.

[98] Case No. 5:16-mc-80003-PSG at Docket No. 1-1 at ECF p. 9; Case No. 5:16-mc-80004-PSG at Docket No. 1-1 at ECF p. 9; 5:16-mc-80005-PSG at Docket No. 1 at ECF p. 22; 5:16-mc-80006-PSG at Docket No. 1-1 at ECF p. 9; 5:16-mc-80007-PSG at Docket No. 1-1 at ECF p. 9; 5:16-mc-80008-PSG at Docket No. 1 at ECF p. 22.

22

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG, 5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

United States District Court
Northern District of California

1    • Depositions related to these topics.[99]

2    From Samsung, Qualcomm also requests "[a]ll documents filed or served by" Samsung in or with

3    respect to five different lawsuits.[100]

4    Qualcomm's requests are not narrowly tailored temporally, geographically or in their

5    subject matter.  They are not limited to documents or information connected to the KFTC

6    proceedings at issue or to activity in or affecting Korea;[101] they cover a span of five to eleven

7    years;[102] they include documents that Qualcomm should already have[103] or that were served by

8    other parties; and they contain confidential information.[104]  In particular, many of the documents

9

10   [99] Case No. 5:16-mc-80003-PSG at Docket No. 1-1 at ECF p. 16; Case No. 5:16-mc-80004-PSG

11   at Docket No. 1-1 at ECF p. 16; 5:16-mc-80005-PSG at Docket No. 1 at ECF p. 29; 5:16-mc-
     80006-PSG at Docket No. 1-1 at ECF p. 17; 5:16-mc-80007-PSG at Docket No. 1-1 at ECF p. 16;

12   5:16-mc-80008-PSG at Docket No. 1 at ECF p. 29.

13   [100] Case No. 5:16-mc-80006-PSG at Docket No. 1-1 at ECF p. 9.

14   [101] *See Advanced Micro Devices, Inc. v. Intel Corp.*, 2004 WL 2282320 at *2-3 (finding the
     requested documents unduly intrusive and overbroad where § 1782 applicant "made no attempt to

15   tailor its application to the subject matter of the EC complaint. For example, [applicant's]
     document requests do not contain the words 'Europe' or 'European,' the name of any European

16   country, or the name or description of any European OEM or retailer."); *In re Veiga*, 746 F. Supp.
     2d 8, 25-26 (D.D.C. 2010) (finding lack of geographic limitation caused fourth *Intel* factor to

17   weigh against applicant).

18   [102] *See Thompson v. Doel*, Case No. 5:13-mc-80088-EJD (PSG) (N.D. Cal.), ECF No. 2 (Order

19   Denying Without Prejudice Ex Parte Application Pursuant to 28 U.S.C. § 1782 at 3-4) (denying
     application for "extraordinary" overbreadth where applicant sought "over five years of activity

20   from the [email] account at issue without explaining at all why such a wide swath is necessary").

21   [103] *See Matter of Application of O2CNI Co., Ltd.*, 2013 WL 5826730 at *15-16 (suggesting that

22   the requesting party has an obligation to conduct its own review before it may request information
     of others); *see also Chevron Corp. v. Donziger*, Case No. 12-MC-80237 CRB (NC), 2013 WL

23   4536808, at *11 (N.D. Cal. Aug. 22, 2013) (stating, with respect to a motion to quash under Fed.
     R. Civ. P. 45, that "the court must limit the extent of the discovery sought . . . if it can be obtained

24   from a source that is more convenient or less burdensome").

25   [104] *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, Case No. C-07-5944-SC, 2012 WL

26   6878989, at *4 (discussing confidentiality concerns in the context of intrusiveness and burden); *In*

27                                                     23

28   Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
     5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
     ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
     FOREIGN PROCEEDINGS

United States District Court
Northern District of California

1    responsive to Qualcomm's requests for documents filed or served by Samsung in the five lawsuits

2    between Samsung and Apple contain information designated as confidential by Apple, Samsung

3    or third parties and subject to protective orders issued by this court and the United States

4    International Trade Commission.[105]  Those protective orders bar Apple or Samsung from

5    unilaterally producing many of the documents designated as confidential, and responding to

6    Qualcomm's request would require significantly time-consuming measures to comply with the

7    redaction protocols and protective orders in place.[106]

8         Qualcomm argues that its requests are not unduly burdensome or intrusive for several

9    reasons.  Most importantly, while production may be burdensome or intrusive, the inquiry is

10   whether it is unduly so in light of the relevance of the information, and these documents are, in

11   Qualcomm's view, highly relevant.[107]  It also argues that the Respondents would have collected

12   the responsive documents when assisting the Examiner in his investigation[108] and the documents

13   are directly relevant to whether Qualcomm's licensing practices adversely affected chipset

14   manufacturers' ability to compete.[109]  Additionally, with respect to the requests for "documents

15   sufficient to show" customer concerns or whether a Respondent made decisions about Modem

16   Chipset sales and development, Qualcomm believes that those events never occurred, and so the

17

18

19   _re Application of Microsoft Corporation_, 428 F. Supp. 2d at 196 (stating that Microsoft's
     "discovery request remains unduly  intrusive and burdensome in that it seeks documents that may
20   be protected as confidential by the Commission's rules on access to file and that are privileged
     under U.S. law").

21   [105] _See_ Docket No. 22 at 16.

22   [106] _See id._

23   [107] _See In re Republic of Ecuador_, 2010 WL 3702427, at *5.

24   [108] _See_ Docket No. 25 at 17-18.

25   [109] _See id._ at 18.

26                                        24

27   Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
     5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
28   ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
     FOREIGN PROCEEDINGS

Respondents will not be put to the burden of producing any responsive documents because none exist.[110]

Qualcomm's arguments are unpersuasive, however, because when weighed against the relevance of the information sought, the requests are overbroad.  It specifically seeks more documents than those that Respondents collected and gave to the Examiner; indeed, one purpose of pursuing discovery under Section 1782 rather than the KFTC's Case Handling Procedures is that the Procedures give Qualcomm access to a more limited range of material than Section 1782 does.  As for the "documents sufficient to show" requests, even if Qualcomm believes that no responsive documents exist, the requests for production and deposition nonetheless require Respondents to search through troves of material spanning over a decade.  These requests are not narrowly tailored.

## IV.

The *Intel* factors strongly weigh against granting Qualcomm's requests for Section 1782 subpoenas.  Qualcomm's applications are DENIED.

**SO ORDERED.**

Dated: February 18, 2016

PAUL S. GREWAL
United States Magistrate Judge

---

[110] *See id.* at 19.

25

Case Nos. 5:16-mc-80002-PSG, 5:16-mc-80003-PSG, 5:16-mc-80004-PSG, 5:16-mc-80005-PSG,
5:16-mc-80006-PSG, 5:16-mc-80007-PSG, 5:16-mc-80008-PSG
ORDER DENYING APPLICATIONS FOR LEAVE TO OBTAIN DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS